# EXHIBIT 1

JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 13 CV 6016

————————————————————— x

YU BAI, Individually and on Behalf of All    :   Civil Action No.
Others Similarly Situated,                   :
                                             :  COMPLAINT FOR VIOLATIONS OF THE
                             Plaintiff,       :  FEDERAL SECURITIES LAWS
                                             :
        vs.                                   :  DEMAND FOR JURY TRIAL
                                             :
LIGHTINTHEBOX HOLDING CO., LTD.,             :
QUJI (ALAN) GUO and XHENG                     :
(RICHARD) HUE,                                :
                                             :
                             Defendants.      :
                                             :
————————————————————— x

FILED
U.S. DISTRICT COURT
S.D. OF N.Y.
13 AUG 27 AM 11:07

Plaintiff Yu Bai ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by LightInTheBox Holding Co., Ltd. ("LightInTheBox" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of the American Depository Shares ("ADSs") of LightInTheBox between its June 6, 2013 initial public stock offering ("IPO") and August 19, 2013, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against LightInTheBox and two of its most senior executives under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and §27 of the Exchange Act.

3.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as the Company's agent of service of process is headquartered in this District, the Company's ADSs traded in the form of American Depository Shares are traded on the New York

- 1 -

Stock Exchange ("NYSE"), the underwriters who conducted the IPO of LightInTheBox's ADSs did so in this District, and the alleged misconduct was transacted in and emanated from this District.

4.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

5.      Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased securities of LightInTheBox during the Class Period and has been damaged thereby.

6.      Defendant LightInTheBox, organized under the laws of the Cayman Islands and headquartered in Beijing, China, is a global online retail company that sells directly to consumers via the Internet. The Company offers products in three core categories: apparel (including wedding dresses), small accessories and gadgets, and home and garden. ADSs, representing two shares of the Company's ordinary stock, are now listed (post-IPO) on the NYSE, an efficient market, under the ticker symbol "LITB" and, as of June 21, 2013, the Company had more than 9.5 million ADSs issued and outstanding.

7.      Defendant Quji (Alan) Guo ("Guo") is, and was throughout the Class Period, LightInTheBox's Chief Executive Officer ("CEO").

8.      Defendant Xheng (Richard) Hue ("Hue") is, and was throughout the Class Period, LightInTheBox's Chief Financial Officer ("CFO").

9.      The Defendants referenced above in ¶¶7-8 are referred to herein as the "Individual Defendants." LightInTheBox and the Individual Defendants are referred to herein, collectively, as "Defendants," and according to the prospectus used to conduct the IPO of LightInTheBox ADSs, LightInTheBox and the Individual Defendants' "agent for service of process in the United States is

- 2 -

Law Debenture Corporate Services Inc., 400 Madison Avenue, 4th Floor, New York, New York 10017."

## CLASS ACTION ALLEGATIONS

10.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the ADSs of LightInTheBox during the Class Period (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

11.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, LightInTheBox ADSs and other publicly-traded securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by LightInTheBox, its transfer agent, and/or BNY Mellon, which was appointed as the depositary bank for LightInTheBox's ADS program, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

12.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

13.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

- 3 -

14.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the Exchange Act was violated by Defendants as alleged herein;

(b)    whether statements made by Defendants misrepresented material facts about the business, operations and management of LightInTheBox; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

15.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS**

16.    The Class Period starts on June 6, 2013. On that day, following an intense, multi-month roadshow, LightInTheBox, its senior executives, assisted by investment banks Credit Suisse (USA) LLC and Stifel, Nicolaus & Company, Incorporated, which underwrote and helped the Company market the offering, completed the IPO, selling more than 9.5 million ADSs at $9.50 each and raising $90.7 million in gross proceeds for LightInTheBox and its senior executives. LightInTheBox issued and sold the first 8.3 million shares, along with another 192,368 shares sold as part of the underwriters' overallotment. Defendant Guo and other LightInTheBox directors and executives sold another 1,052,632 shares as part of the underwriters' overallotment.

- 4 -

17.     The registration statement, and the prospectus that formed part of the registration statement used to conduct the IPO (collectively, the "Registration Statement"), contained false and misleading statements, including, in pertinent part, the following:

(a)     "We believe that by offering more variety and personalization *we will be able to create and capture new consumer demand*,"[1] when Defendants then knew at the time of the IPO – occurring more than two-thirds through the Company's second quarter of 2013, the period ended June 30, 2013 – that falling demand, especially in the Company's important apparel division, and particularly in wedding and prom gowns, had already caused the Company's overall second quarter 2013 sales growth to decline rather than increase, and that this had already caused a quarter-over-quarter decline in apparel sales;

(b)     "We have developed *a large global customer base* since we launched our first website," "[t]he number of *our customers* increased from approximately 0.5 million in 2010 to approximately 2.5 million in 2012," and "[t]he number of *our customers* was approximately 1.1 million in the three months ended March 31, 2013," when Defendants knew that most of LightInTheBox's sales to persons/entities were one-time sales, with very little repeat business;

(c)     "We expect to continue to focus on the growth in sales of apparel and expect that sales of apparel will continue to contribute significantly to our total net revenues in the near future," when Defendants knew that demand for LightInTheBox's wedding and prom dresses had already fallen in the second quarter of 2013, driving down sales revenues in the Company's apparel division and decreasing its overall sales growth;

(d)     "*We expect our net revenues to grow in the future* as we continue to introduce new products and deepen our penetration of various geographic markets around the world"

---

[1]     All emphasis in bold and italics is added, unless otherwise noted.

and "expand our customer base and increase sales to each customer to *drive our growth*," when Defendants knew demand for LightInTheBox's products had already fallen in the second quarter of 2013, driving down sales revenues; and

(e)     "[W]e expect our selling and marketing expenses as a percentage of our net revenues *to continue to decrease* in the long term as we achieve economies of scale and utilize our selling and marketing channels more efficiently," and "[w]e expect our general and administrative expenses as a percentage of our net revenues *to decrease* in the future as we achieve economies of scale," when Defendants knew that LightInTheBox's costs had already grown disproportionately compared to sales growth in the second quarter of 2013, ultimately reducing profits/increasing losses in the second quarter of 2013.

18.     As would later be reported by *Barrons* on August 20, 2013, during the IPO roadshow, Defendants also "gave a 64% revenue growth target in 2013."

19.     The price of the Company's ADSs spiked on Defendants' strong statements in the Registration Statement and in the multi-week roadshow used to conduct the IPO, increasing approximately 30% above the IPO price in the first day of open market trading, and closing at $11.61 per share on June 6, 2013, on unusually high trading volume of more than 8.8 million shares trading. As the *Wall Street Journal's Money Beat* reported that day, in pertinent part, in a report entitled "First Chinese IPO of 2013 Delivers Decent Pop":

> LightInTheBox — the first Chinese company to list in the U.S. this year, and also the first online retailer — has made a solid public-market debut, jumping 17.5% in its first trade on the New York Stock Exchange.
>
> The stock is being closely watched for signs that U.S. investors are ready to buy Chinese companies again, and whether U.S. banks would be wise to bring more of them (Credit Suisse and Stifel Financial are backing LightInTheBox). Early indications are positive, and if that impression holds up, other potential listers are waiting in the wings.

- 6 -

The Beijing-based company, which sells inexpensive Chinese-made goods like fishing rods and wedding dresses to customers mostly in other countries, often with free shipping, had priced its IPO at $9.50, the middle of its projected range. It raised $79 million and marked its initial stock-market valuation at $465 million.

The debut was the end of a long journey, both literal and figurative, according to co-founder and chief executive Alan Guo, a former Google China executive. The company actually first filed confidentially, as foreign filers for U.S. listings have long been able to do, back in 2011, he said. Regulatory filings show that the company even began with a different lead investment bank.

***When it finally launched its IPO last week, Mr. Guo said he and his team traveled to London and several U.S. cities over the course of two weeks — longer than the typical one-week roadshow. Mr. Guo said that involved many individual meetings.***

***"A lot of one-on-one, face-to-face meetings gave us the chance to clarify questions they may have with the company," he said. Part of what was discussed was the company's governance practices and accounting procedures — which has been a problem for some Chinese firms in the past.***

"We do get questions around corporate governance. ***As a publicly traded company, we need to prove to investors with our performance,*** and we also need to be very strict and keep on improving on all aspects of corporate governance," he said. ***"We need to keep open and transparent communications channels with investors."***

If that initial pop were to hold up – the stock has traded as high as $12.50, but as low as $11.09 this morning – it would beat the average U.S. listing. . . .

*       *       *

The market for U.S. listings of Chinese stocks collapsed last year amidst a host of concerns, including accounting and governance practices, growth in China, and a potential bubble among growth-starved U.S. investors.

Mr. Guo, for one, believed that his experience with investors suggested the market was ready again for more Chinese companies, at least in the tech and internet space.

***"In the long run, China, with a lot of innovative, entrepreneurial internet companies. . . will be a good match to the U.S. public stock markets that understand the internet as an industry," he said.***

As for other online retail companies looking to list, ***Mr. Guo said: "I tend to echo [Amazon CEO] Jeff Bezos, that this is only day one for e-commerce. There's still going to be a journey as a lot more consumers come to buy more products online, and buy more frequently online."***

- 7 -

20.     On July 22, 2013, IPO underwriter Credit Suisse issued a research report initiating coverage and setting a $16.50 price target on the Company's ADSs, saying the ADSs, then trading at approximately the target price, were "fairly valued" and that, based on Defendants' statements (and individual interviews with the Company's management), Credit Suisse then "expect[ed] LITB's non-GAAP net earnings to turn positive to US$14.7 mn in 2013E and grow 132% to US$34.1 mn in 2014E." Credit Suisse also lauded LightInTheBox's business acumen, high margin and profitability, again citing its conversations with LightInTheBox management:

> Management sees LITB as a company which connects the small-size (or even mini-size) manufacturers in China with global customers overseas. Therefore, it has strong bargaining power when negotiating with its suppliers. At the same time, it has a price advantage compared with the offline market overseas because it sources from China and sells mainly to overseas customers. It retails a wide variety of products including customized apparel, home and garden products, accessories and gadgets, electronics, etc.

*     *     *

> We interviewed LITB's key management one by one and have reached a conclusion that they have a clear understanding of where they are and where they want to be in a few years' time. We believe they are committed to the business and that was a main driver that the company could deliver solid business execution. Their past experience in related industries and positions has helped.

*     *     *

> We expect LITB to achieve 63% YoY revenue growth in 2013E and 57% in 2014E. Our revenue forecast is mainly driven by the increase in the number of orders.

> As shown in Figure 38, we expect the company's total orders to rise 95% in 2013E to 6.3 mn, or on average, 17,157 packages of delivery per day. In 2014E, we estimate another 55% YoY rise in the total number of orders to 9.7 mn, or 26,571 packages of delivery on an average daily basis.



Figure 38  No. of orders



Figure 39: Quarterly order estimates

Source  Company data. Credit Suisse estimates

Source  Company data  Credit Suisse estimates

21.     The Credit Suisse report also stated it "expect[ed] admin expenses to come down gradually alongside improving operating leverage and economy of scale in the next few years, as shown in Figure 48," thus increasing its profit estimates for LightInTheBox:



Figure 46  Fulfilment expenses forecast



Figure 47  Sales and marketing expenses forecast

Source  Company data  Credit Suisse estimates

Source  Company data  Credit Suisse estimates

- 9 -



Figure 48. Admin expenses forecast

Source: Company data, Credit Suisse estimates



Figure 49: Quarterly non-GAAP net profit estimates

Source: Company data, Credit Suisse estimates

***We expect the company's non-GAAP operating margin to improve significantly in 2013E to 5.3%,*** and gradually increase in the coming few years. ***We expect LITB's non-GAAP net earnings to turn positive to US$14.7 mn in 2013E*** and grow 132% to US$34.1 mn in 2014E.  Our forecast three-year earnings CAGR for 2014-16E is 82%.  ***The diluted earnings per ADS is expected to reach US$0.40 in 2013E*** and US$0.69 in 2014E.  Its three-year CAGR in 2014-16E is estimated to be 65%.

22.     On August 6, 2013, LightInTheBox issued a release entitled "LightInTheBox Holding Co., Ltd. Announces Reporting Date for Second Quarter 2013 Financial Results," stating the Company "plan[ned] to release its second quarter 2013 financial results on Monday, August 19, 2013 after the US stock market close."

23.     Based on Defendants' strong Class Period statements, and those statements being analyzed, relied upon and reiterated by the financial media and stock analysts, the Company's stock price continued spiraling, trading above $23 per share by August 14, 2013.  For instance, in an August 6, 2013 report, *Investors Business Daily* noted that the Company's ADS's "were up as much as 10% intraday," emphasizing that "[t]he [C]ompany lost money in the past few years, ***but is expected to turn a profit of 36 cents a share this year.***"  *Bloomberg's* report that same day noted that despite the "Bloomberg China-US Equity Index of the most traded Chinese shares in the U.S. [falling] 0.7 percent to 93.36 in New York" that day, "LightInTheBox Holding Ltd. (LITB), the first

Chinese company to have an initial public offering in the U.S. this year, jumped after saying second-quarter earnings will be released Aug. 19," noting that "[t]he average forecast of three analysts surveyed by *Bloomberg* was for adjusted earnings of 6 cents per share, compared with 2 cents in the first quarter." On August 12, 2013, stock blogger Rick Munarriz published a report entitled "Is This Online Retailer the New Amazon.com?," reiterating Defendants' strong statements that LightInTheBox's "[r]evenue [had] rose from $58.7 million in 2010 to $116.2 million in 2011, to more than $200 million last year," that "Wall Street's holding out for $325 million in net sales this year," and that "LightInTheBox is also profitable," with "Analysts see[ing] the Web-based merchants earning $0.36 a share this year and $0.68 a share come 2014."

24.     The true facts, which were known by Defendants, but concealed from the investing public during the Class Period, were as follows:

(a)     LightInTheBox's sales growth had already dramatically decreased during the second quarter of 2013, the period ended June 30, 2013;

(b)     LightInTheBox's costs had already grown more than its sales during the second quarter of 2013; and

(c)     As a result of the foregoing, the Company was not on track to achieve the financial results Defendants had led the market to expect during the Class Period.

25.     On August 19, 2013, after the close of trading, the Company issued a press release announcing its actual second quarter 2013 financial results for the quarter that had ended June 30, 2013, *less than one month after the IPO*.  Rather than the earnings of $.06 per share on revenues of $75.8 million the investment community had been led to expect based on Defendants' bullish Class Period statements, LightInTheBox reported revenues of just $72.2 million and profits (excluding items) of $.05 per share.  Damaging profitability, revenues rose only 52.6% while operating costs

- 11 -

rose 57%. The Company also forecast revenues of just $68 million to $70 million for the third quarter 2013 (ending just a little more than a month away, on September 30, 2013), whereas analysts had been led to expect $75.8 million, according to *Thomson Reuters I/B/E/S*. Conceding that demand for the Company's wedding and prom dresses in particular was much weaker during the second quarter of 2013 than Defendants had stated in the Registration Statement and during the roadshow, causing apparel sales to actually decline 5.4% in the second quarter, Defendant Guo stated during the conference call held with investors on the morning of August 20, 2013, in pertinent part, that LightInTheBox had "concluded that [it] placed too much emphasis on higher-end (apparel) and not enough focus on lower-end products that traditionally sell very well."

26.    As emphasized by *Barrons* in a report issued on August 20, 2013:

*According to the prospectus filed at the SEC, sales at LightInTheBox grew almost 100% in the first quarter this year. In the second quarter, revenue grew at a much slower 53%. Third-quarter is expected to perform even worse: Guidance translates into a mere 33-37% year-on-year increase, or a 3-6% quarter-to-quarter decline.*

*Investors rightly ask: what happened?*

*A source familiar with the company tells me: during the IPO road show, LightInTheBox gave a 64% revenue growth target in 2013. Unless LightInTheBox can register a 90% year-on-year growth in the fourth quarter, it is going to miss its so-called target.*

27.    On this news, the price of LightInTheBox ADSs, which had traded as high as $23.38 per share in intraday trading during the Class Period (on August 14, 2013), plummeted *approximately 40%* from their close on August 19, 2013, to close below $12 per share on August 20, 2013, *erasing more than $100 million in market capitalization from the stock's Class Period high*.

28.    The market for LightInTheBox ADSs was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, LightInTheBox ADSs traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired LightInTheBox ADSs

- 12 -

relying upon the integrity of the market price of LightInTheBox ADSs and market information relating to LightInTheBox, and have been damaged thereby.

29.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of LightInTheBox ADSs, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

30.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about LightInTheBox's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of LightInTheBox and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing LightInTheBox ADSs at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of LightInTheBox ADSs was removed and the price of LightInTheBox ADSs declined dramatically, causing losses to Plaintiff and the other members of the Class.

## ADDITIONAL SCIENTER ALLEGATIONS

31.     As alleged herein, LightInTheBox and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding LightInTheBox, their control over, and/or receipt and/or modification of LightInTheBox's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning LightInTheBox, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

32.     LightInTheBox's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.  *See* 15 U.S.C. §78u-5(b)(2)(A).

33.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of LightInTheBox who knew that the FLS was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future

- 14 -

economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

### APPLICATION OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

34.     Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(a)     The omissions and misrepresentations were material;

(b)     The Company's securities traded in an efficient market;

(c)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(d)     Plaintiff and other members of the Class purchased LightInTheBox securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

35.     At all relevant times, the market for LightInTheBox securities was efficient for the following reasons, among others:

(a)     As a regulated issuer, LightInTheBox filed periodic public reports with the SEC; and

(b)     LightInTheBox regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

- 15 -

## LOSS CAUSATION/ECONOMIC LOSS

36.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of LightInTheBox ADSs and operated as a fraud or deceit on Class Period purchasers of LightInTheBox ADSs by misrepresenting the value of the Company's business and prospects by overstating its earnings and concealing the significant defects in its internal controls. As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of LightInTheBox ADSs fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of LightInTheBox ADSs during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## COUNT I

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

37.     Plaintiff incorporates ¶¶1-36 by reference.

38.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of LightInTheBox securities during the Class Period.

- 16 -

40.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for LightInTheBox securities. Plaintiff and the Class would not have purchased LightInTheBox securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

### For Violations of §20(a) of the Exchange Act
### Against Defendant LightInTheBox and the Individual Defendants

41.    Plaintiff incorporates ¶¶1-40 by reference.

42.    The Individual Defendants acted as controlling persons of LightInTheBox within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, and their ownership of LightInTheBox securities, the Individual Defendants had the power and authority to cause LightInTheBox to engage in the wrongful conduct complained of herein. LightInTheBox controlled the Individual Defendants and all of the Company's employees. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

- 17 -

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 27, 2013                          ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                SAMUEL H. RUDMAN



                                                _____
                                                        SAMUEL H. RUDMAN

                                                58 South Service Road, Suite 200
                                                Melville, NY  11747
                                                Telephone:  631/367-7100
                                                631/367-1173 (fax)
                                                srudman@rgrdlaw.com

                                                *Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| LITB | 08/19/13 | 635 | 15645 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| LITB | 08/22/13 | 635 | 12835 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _22_ day of _Aug_, 2013 in _San Diego_, _CA_.
  City    State

(Signature) X_____

(Print Name)_____

2