# APPENDIX A

## A.    Alleged False Statements or Omissions Related to Shelf Space and Market Share

| No. | Challenged Statement/Omission[1] | Failure to Allege an Actionable False or Misleading Statement[2] | Other Reasons Why Not Actionable | Alleged Violation[3] |
|---|---|---|---|---|
| 1 | Demand for Oatly products has grown at an incredible rate.  To date, production capacity has been a major constraint on our growth, and we have made substantial investments to scale our production capacity and address supply shortages.  (¶¶ 50, 131.)<br><br>(Offering Documents – May 17, 2021)[4]<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure* | • Plaintiffs fail to allege particularized facts substantiating their sweeping, conclusory allegations regarding losses in shelf space and market share.  *See* pp. 12–14.<br><br>• Plaintiffs fail to allege a duty to disclose because Defendants' statement did not put declines in shelf space and market share "in play."[6]  *See* pp. 17–18.<br><br>• A reasonable investor would not infer that growing demand is always accompanied by ever-increasing (or even stable) shelf space | • Part of a large block quote constituting impermissible puzzle pleading.  *See* p. 30.<br><br>• Puffery.  *See* pp. 30–31. | EA and SA |

---

[1] Quotation marks, brackets, omissions, and emphases are reproduced as they appear in the Second Consolidated Complaint (the "Complaint"). Paragraph citations ("¶") are to the Complaint.

[2] All page citations ("*see* pp.") are to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Consolidated Complaint.

[3] Entries in this column indicate whether Plaintiffs allege a statement is the basis for their claims under the Securities Exchange Act of 1934 ("EA"), their claims under the Securities Act of 1933 ("SA"), or both

[4] "Offering Documents" are defined in the Complaint as: "The IPO Registration Statement and Prospectus materials incorporated therein." (¶ 4.)  The final amended Form F-1 was filed with the SEC on May 17, 2021.

[6] *See In re Omega Healthcare Investors, Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 272–73 (S.D.N.Y. 2021) (where omitted facts are not sufficiently related to challenged statements so as to put them "in play" for disclosure, there is no duty to disclose).

| | | | | |
|---|---|---|---|---|
| | *to disclose alleged losses in shelf space and market share.*[5]  *(¶¶ 53–54, 134–35.)* | and market share across all regions, segments, and products, especially in light of the fully disclosed production challenges.  *See* pp. 18–19.<br><br>• Oatly's disclosures regarding production constraints obviated any possible duty to disclose losses in shelf space and market share because a reasonable investor would have inferred the existence of such losses based on those disclosures.  *See* p. 19.<br><br>• Plaintiffs fail to allege that the purportedly omitted facts regarding shelf space and market share would have been material to a reasonable investor, because any such losses only occurred in certain regions and time periods and were minor declines compared to Oatly's overall financial performance.  *See* pp. 21–22. | | |
| 2 | We also believe that global demand for Oatly products has far outpaced our supply.  *As we continue to scale, we have a significant opportunity to satisfy unmet demand and leverage our brand success to expand our product portfolio.*  (¶¶ 50, 131.) | Same as Row 1.  Additionally:<br><br>• Not only did Plaintiffs fail to allege a duty to disclose because Defendants' statement did not put declines in shelf space and market share "into play," but also because the part of the statement that is bolded and | • Part of a large block quote constituting impermissible puzzle pleading.  *See* p. 30. | EA and SA |

---

[5] For all of the challenged statements in Section A, Plaintiffs make boilerplate allegations that the statements were "materially untrue" (¶¶ 53–54) and "materially false" (¶¶ 134–35, 140), but for all but Statements 10 and 13, they never follow up on those conclusory assertions to plead with particularity that anything in the statements was false and the factual basis for such an allegation.  Their primary argument as to each statement is that it contained omissions.

| | | | | |
|---|---|---|---|---|
| | (Offering Documents – May 17, 2021)<br><br>*Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share. (¶¶ 53–54, 134–35.)* | italicized is about future opportunities, to which past declines in shelf space or market share are not relevant. *See* pp. 17–18. | • Puffery. *See* pp. 30–31.<br><br>• Opinion. *See* pp. 31–32. | |
| 3 | Retail sales data shows that **Oatly is the driving force** behind the increasing consumer demand for oat-based dairy products. (¶¶ 50, 131.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share. (¶¶ 53–54, 134–35.)* | Same as Row 1. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30.<br><br>• Puffery. *See* pp. 30–31. | EA and SA. |
| 4 | The Offering Documents also touted Oatly's "demonstrated global commercial success through [its] expansion," claiming that in Oatly's "core markets of Sweden, the United Kingdom, Germany and the United States [Oatly's] brand contributed the most sales growth to the plant-based milk category in 2020" and to Oatly's increasing sales velocity in the Company's "Core Markets" in the United States and Europe[.] (¶ 132.)<br><br>(Offering Documents – May 17, 2021) | Same as Row 1. Additionally:<br><br>• Oatly's accurate characterization of past results cannot create a duty to disclose as a matter of law.[7] *See* pp. 18–19 n.10. | • Puffery. *See* pp. 30–31. | EA |

---

[7] *See In re Omega Healthcare Investors, Inc. Sec. Litig.*, 563 F. Supp. 3d 272–73.

3

| | | | | |
|---|---|---|---|---|
| | *Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share.  (¶¶ 53–54, 134–35.)* | | | |
| 5 | We will leverage the significant demand for Oatly products to grow in new and existing markets.  ***Our accelerating performance in Germany, the United Kingdom and the United States***, where we have consistently increased velocity, is indicative of the potential we see across each of our international markets, including China.  Furthermore, there is significant whitespace to expand our foodservice and food retail locations within our existing markets.  ***The food retail channel, in particular, has welcomed Oatly on shelves*** as we have driven incremental profit, traffic and premiumization in a milk category that was shifting towards private label.  Our TDP share, which represents our brand's total distribution points ("TDP") as a percentage of the total oatmilk category distribution points, of 40%, 32% and 13% in the United Kingdom, Germany and the United States, respectively, indicates the significant upside in our existing markets.  (¶¶ 51, 132.) | Same as Row 1.  Additionally:<br><br>• Oatly's accurate characterization of past results cannot create a duty to disclose as a matter of law.  *See* pp. 18–19 n.10.<br><br>• At the end of the statement, the word "upside" refers to the potential for growth; it does not describe past growth.[8]  A statement about potential for growth could not have misled a reasonable investor to believe Oatly had not experienced any past losses in shelf space or U.S. retail market share (across all regions, segments, and products).  *See* pp. 17–18. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30.<br><br>• Puffery.  *See* pp. 30–31. | EA and SA |

---

[8] *See* Upside Definition, INVESTOPEDIA,
https://www.investopedia.com/terms/u/upside.asp#:~:text=What%20Is%20Upside%3F,an%20investment%2C%20particularly%20stock%20pr
ices (last visited Aug. 25, 2022).

| | | | | |
|---|---|---|---|---|
| | (Offering Documents – May 17, 2021)<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share.  (¶¶ 53–54, 134–35.)* | | | |
| 6 | ***If*** we fail to meet demand for our products and, as a result, ***consumers who have previously purchased our products buy other brands <u>or our retailers allocate shelf space to other brands</u>***, our business, financial condition and results of operations could be adversely affected.  (¶¶ 52, 133.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share.  (¶¶ 53–54, 134–35.)* | Same as Row 1.  Additionally:<br><br>• Oatly's risk disclosure was not misleading just because the risk of shelf space and market share losses had in some ways materialized.[9]  *See* p. 20.<br><br>• Oatly's risk disclosure was too general to be rendered misleading by the omission of alleged minor losses in shelf space and market share in discrete regions and time periods.  *See* pp. 20–21. | | EA and SA |
| 7 | 2021 represents the most transformational year in our Company's history with the completion of our successful IPO in May, which has provided us with the capital to fuel new production capacity globally as we scale our business across three continents to meet ***the robust consumer demand for our leading oat-based brand***.  (¶ 136.) | Same as Row 1. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30.<br><br>• Puffery (in part). *See* pp. 30–31. | EA |

[9] *See In re Noah Ed. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010).

| | | | | |
|---|---|---|---|---|
| | (August 2021 Release – August 16, 2021)[10]<br><br>*Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share. (¶ 140.)* | | | |
| 8 | EMEA revenue increased $18.8 million, or 31.6%, to $78.5 million for the second quarter of 2021 compared to $59.7 million in the prior year period. This increase was primarily due to higher production compared to the same period prior year, with ***growth in foodservice and retail channels*** across oatdrink, oatgurt and other food product offerings, partially offset by lower fill rates due to ***the robust consumer demand*** and continued capacity constraints. (¶ 137.)<br><br>(August 2021 Release – August 16, 2021)<br><br>*Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share. (¶ 140.)* | Same as Row 1. Additionally:<br><br>• Even if the reference to "growth in . . . retail channels" put shelf space and retail market share "in play," this statement was not misleading or material to a reasonable investor because Oatly's sales are distinct and independent of its shelf space and market share. For example, at one U.K. retailer, Oatly drives 27% of sales from 7% of shelf space. *See* pp. 18–19, 21–22.<br><br>• Oatly's accurate characterization of past results cannot create a duty to disclose as a matter of law. *See* pp. 18–19 n.10. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30.<br><br>• Puffery (in part). *See* pp. 30–31. | EA |
| 9 | Americas revenue increased $16.3 million, or 65.0%, to $41.3 million for the second quarter of 2021 compared to $25.1 million in the prior year period. This increase was primarily due to | Same as Row 1. Additionally:<br><br>• Even if the reference to "growth in . . . retail channels" put shelf space and retail market share "in play," this statement was not | • Part of a large block quote constituting impermissible | EA |

---

[10] "August 2021 Release" is defined in the Complaint as Oatly's "August 16, 2021 press release announcing the Company's second quarter 2021 financial results (which was also filed with the SEC on a Form 6-K later that day[])."

| | | | |
|---|---|---|---|
| | higher production compared to the same period prior year with ***growth in*** both new and existing foodservice and ***retail channels across oatdrink***, oatgurt and frozen product offerings, partially offset by lower fill rates due to the ***robust consumer demand*** and continued capacity constraints.  (¶ 137.)<br><br>(August 2021 Release – August 16, 2021)<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share.  (¶ 140.)* | misleading or material to a reasonable investor because Oatly's sales are distinct and independent of its shelf space and market share.  For example, at one U.K. retailer, Oatly drives 27% of sales from 7% of shelf space.  *See* pp. 18–19, 21–22.<br><br>• Oatly's accurate characterization of past results cannot create a duty to disclose as a matter of law.  *See* pp. 18–19 n.10. | puzzle pleading. *See* p. 30.<br><br>• Puffery (in part). *See* pp. 30–31. | |
| 10 | The ***following factors*** and trends in our business ***have driven net revenue growth*** over prior periods and are expected to be key drivers of our net revenue growth going forward:<br>• Grow within retail channels globally by increasing our distribution points with existing and new customers, ***capturing greater shelf space*** and continue to drive velocity increases.  (¶ 138.)<br><br>(Q2 2021 Financials – August 16, 2021)<br><br>*Alleged omission <u>and affirmative misstatement</u>: Plaintiffs challenge this statement as "misleading" and "false" in light of alleged losses in shelf space and market share.  (¶ 140.)* | Same as Row 1.<br><br>With respect to the falsity allegation:<br><br>• Plaintiffs fail to allege any facts suggesting that expanding shelf space was not actually a key driver of revenue for Oatly in prior time periods.  *See* p. 25.<br><br>• Plaintiffs fail to allege that Oatly did not truly "expect[]" those strategies to drive future revenue growth.  *See* p. 25. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30.<br><br>• Puffery. *See* pp. 30–31. | EA |

| 11 | Defendant Petersson also touted "robust customer demand for [Oatly's] leading brand" and stated that "global demand for Oatly products continued to outpace our supply, with capacity constraining our growth in the second quarter."  (¶ 139.)  (Q2 Earnings Call – August 16, 2021)  *Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share.  (¶ 140.)* | Same as Row 1. | • Puffery. *See* pp. 30–31. | EA |
| 12 | And as we continue to scale, **_we have significant opportunity to satisfy unmet demand and leverage our brand success to expand across geographies, sales channels and product categories._**  (¶ 139.)  (Q2 Earnings Call – August 16, 2021)  *Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose alleged losses in shelf space and market share.  (¶ 140.)* | Same as Row 1. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30.  • Puffery (in part). *See* pp. 30–31. | EA |
| 13 | Any recent pressures on our **_market share velocity_** measured channel is expected and **_directly correlated with the capacity constraints and less of inventory to fulfill demand across sales channels._**  As we've seen in the past, once supply improves, we can | Same as Row 1.  With respect to the falsity allegation:  • Plaintiffs fail to account for obvious typos in the transcript of Defendant Petersson's statement in the Q2 2021 Earnings Call, | | EA |

| increase velocities and growth as well as backlog of orders to fulfill.  (¶ 139.)<br><br>(Q2 Earnings Call – August 16, 2021)<br><br>*Alleged omission <u>and affirmative misstatement</u>: Plaintiffs challenge this statement as "misleading" and "false" in light of alleged losses in shelf space and market share.  (¶ 140.)* | where the terms, "market share," "velocity," and "measured channel" should have been separated by commas or other connectors; these are separate concepts.  *See* pp. 25– 26.<br><br>• Even if Petersson had implied Oatly's market share was growing, Plaintiffs fail to allege facts establishing that Oatly's market share was not growing generally, even if Oatly's U.S. retail market share for oat milk was decreasing.  *See* p. 26. | | |

## B.    Alleged Omissions Related to Rising Ingredient Costs

| No. | Challenged Statement/Omission | Failure to Plead False or Misleading with Particularity / Duty to Disclose | Other Reasons Why Not Actionable | Alleged Violation |
|---|---|---|---|---|
| 14 | **Sourcing oats.**  We source oats from regional millers, and we secure regional supply and capacity while minimizing transportation distance and expenses. Within our regions, we work with farmers to implement sustainable agricultural strategies for oat cultivation, as well as actively seek to aid meat and dairy farmers to increase the amount of crops they grow for human consumption. . . .  (¶¶ 63, 149.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a* | • Plaintiffs fail to allege a duty to disclose because Defendants' statement did not put potential increases in ingredient prices "in play."  *See* pp. 17–18.<br><br>• Plaintiffs fail to allege Oatly had a duty to disclose readily available public information relating to the price of oats.  *See* p. 23.<br><br>• Plaintiffs fail to allege Oatly had a duty to disclose the terms of commercially sensitive and confidential contracts.  *See* p. 23. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |

| | | | | |
|---|---|---|---|---|
| | *failure to disclose increases in prices for oats and rapeseed oil.*[11] *(¶¶ 67, 153.)* | • Oatly disclosed the risk of rising ingredient costs. *See* pp. 23–24.<br><br>• Even if Oatly had a duty to disclose rising ingredient prices (which it did not), and had not disclosed the risk of rising ingredient prices (which it did), this statement would not lead a reasonable investor to believe that ingredient prices were stable or decreasing. *See* pp. 17–18, 24. | | |
| 15 | *Rapeseed oil and other strategic ingredients.* We source non-GMO rapeseed oil. For our products produced in EMEA, we source from Sweden, and for products produced in the United States, we source from Canada. . . . (¶¶ 63, 149.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil. (¶¶ 67, 153.)* | Same as Row 14. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |
| 16 | We currently work closely with five oat suppliers to source our oats – we have one supplier in Belgium, one in Malaysia, two in Sweden and one in the United States. | Same as Row 14. | • Part of a large block quote constituting impermissible | EA and SA |

---

[11] For all of the challenged statements in this Section B, Plaintiffs make boilerplate allegations that the statements were "materially untrue" (¶ 67) and "materially false" (¶ 153), but they never follow up on those conclusory assertions to plead that anything in the statements was false. Their primary argument as to each statement is that it contained omissions.

| | | | | |
|---|---|---|---|---|
| | We have agreements in place with each of these suppliers and believe that the terms contained in these agreements are customary for such suppliers in our industry.  Under each of these agreements, we are required to provide forecasts of our anticipated needs for certain periods of time to assess the supply we will require for the upcoming term, and the oats supplied under each of these agreements are subject to certain quality control and sustainability requirements.  (¶¶ 63, 149.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil.  (¶¶ 67, 153.)* | | puzzle pleading. *See* p. 30.<br><br>• Opinion.  *See* pp. 31–32. | |
| 17 | The Offering Documents further described how Oatly's supply agreements with its Belgian, Malaysian and U.S. suppliers had "terms of three years, which began on January 1, 2019, January 1, 2019 and October 1, 2019, respectively, with an automatic renewal for an additional two years thereafter," that its agreement with one of its Swedish suppliers was "a framework agreement . . . that remains in effect until further notice and may be terminated by either party [on] six months' notice," and that its agreement with its other Swedish supplier "remains in effect | Same as Row 14. | | EA and SA |

| | | | | |
|---|---|---|---|---|
| | until either party provides at least 24 months' notice." (¶¶ 64, 150.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil.  (¶¶ 67, 153.)* | | | |
| 18 | Our future business, results of operations and financial condition may be adversely affected by reduced or limited availability of oats and other raw materials that our limited number of suppliers are able to sell to us that meet our quality standards.  (¶¶ 65, 151.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission:  Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil.  (¶¶ 67, 153.)* | Same as Row 14.  Additionally:<br><br>• Even if this statement put ingredient prices "in play," Oatly's risk disclosure was not misleading just because the risk of increasing ingredient prices had begun to materialize.  *See* p. 24. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |
| 19 | Our ability to ensure a continuing supply of high-quality oats and other raw materials for our products **_at competitive prices_** depends on many factors beyond our control.  In particular, we rely on a limited number of regional suppliers that supply us with high-quality oats and maintain controls and procedures in order to meet our standards for quality and | • Plaintiffs fail to allege Oatly had a duty to disclose readily available public information relating to the price of oats.  *See* p. 23.<br><br>• Plaintiffs fail to allege Oatly had a duty to disclose the terms of commercially sensitive and confidential contracts.  *See* p. 23. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |

| | | | |
|---|---|---|---|
| sustainability. ***Our financial performance depends in large part on our ability to arrange for the purchase of raw materials in sufficient quantities <u>at competitive prices.</u>*** We are not assured of continued supply or adequate pricing of raw materials. Any of our suppliers could discontinue or seek to alter their relationship with us. . . (¶¶ 65, 151.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil. (¶¶ 67, 153.)* | • Oatly disclosed the risk of rising ingredient costs. *See* pp. 23–24.<br><br>• Oatly's risk disclosure was not misleading just because the risk of increasing ingredient prices had begun to materialize. *See* p. 24.<br><br>• Even if Oatly had a duty to disclose rising ingredient prices (which it did not), and had not disclosed the risk of rising ingredient prices (which it did), this statement would not lead a reasonable investor to believe that ingredient prices were stable or decreasing. *See* pp. 17–18, 24. | | |
| 20 | In addition, we also compete with other food companies in the procurement of oats and other raw materials, and this competition may increase in the future if consumer demand increases for these items or products containing them or if competitors increasingly offer products in these market sectors. ***<u>If</u>*** supplies of oats and other raw materials that meet our quality standards are reduced or are in greater demand, ***we may not be able to obtain sufficient supply to meet our needs <u>on favorable terms</u>, or at all.*** (¶¶ 65, 151.)<br><br>(Offering Documents – May 17, 2021) | Same as Row 19. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |

| | | | | |
|---|---|---|---|---|
| | *Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil. (¶¶ 67, 153.)* | | | |
| 21 | ***Ingredient and packaging costs are volatile and <u>may</u> rise significantly, which may negatively impact the profitability of our business.*** *(¶¶ 66, 152.)*<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission: Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil. (¶¶ 67, 153.)* | Same as Row 19. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |
| 22 | ***. . . Volatility in the prices of raw materials and other supplies we purchase <u>could</u> increase our cost of sales and reduce our profitability. Moreover, we may not be able to implement price increases for our products to cover any increased costs, and any price increases we do implement may result in lower sales volumes. <u>If</u> we are not successful in managing our ingredient and packaging costs or the higher costs of sustainable materials, if we are unable to increase our prices to cover increased costs or if such price increases reduce our sales volumes, then such increases in costs will adversely*** | Same as Row 19. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |

| | | | |
|---|---|---|---|
| *affect our business, financial condition and results of operations.* (¶¶ 66, 152.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged omission:* Plaintiffs challenge this statement as "misleading" in light of a failure to disclose increases in prices for oats and rapeseed oil. (¶¶ 67, 153.) | | | |

## C.    Alleged False Statements Related to Product Demand within Asia

| No. | Challenged Statement/Omission | Failure to Plead False or Misleading with Particularity / Duty to Disclose | Other Reasons Why Not Actionable | Alleged Violation |
|---|---|---|---|---|
| 23 | Our growth in China demonstrates the effectiveness of this expansion strategy. . . . Within approximately two years of entering the Chinese market, we had over 9,500 foodservice and retail points of sale in total with a growth rate of over 450% as of December 31, 2020. (¶¶ 55, 141.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged affirmative misstatement:* Plaintiffs challenge this statement as affirmatively false because "demand for Oatly products in China was already stagnating if not decreasing, as evidenced by . . . the fact that . . . by December 2021 | • Oatly's statement says nothing about past, present, or future demand (nor does it put the dynamics of Oatly's consumer demand in China "in play"). *See* pp. 17–18.<br><br>• Plaintiffs have not alleged facts that could establish the reliability of Confidential Witness No. 2 ("CW2"), from whom the allegations about production slow-downs at the Singapore facility are sourced. *See* pp. 27–28.<br><br>• CW2's allegations do not contradict Oatly's statement or establish demand in China was low or declining. *See* p. 28. | • Part of a large block quote constituting impermissible puzzle pleading. *See* p. 30. | EA and SA |

15

| | | | | |
|---|---|---|---|---|
| | *Oatly had already started to reduce production hours at the Singapore manufacturing facility."*[12]  *(¶¶ 56, 142.)* | • The Spruce Point report's allegations do not contradict Oatly's statement or establish demand in China was low or declining.  *See* pp. 28–29 . | | |
| 24 | In 2018, we entered China, focusing again on penetrating specialty coffee and tea shops and quickly generating a powerful brand resonance with consumers.  We have since used premier foodservice partnerships to rapidly expand across the broader Asian region and facilitate market education for consuming plant-based milks as alternatives to dairy products, particularly with coffee and tea.  In Asia, as of December 31, 2020, we had a presence in approximately 11,000 coffee and tea shops and approximately more than 6,000 retail and specialty shops, including an exclusive, branded partnership with Starbucks China in over 4,700 stores.  (¶¶ 55, 141.)<br><br>(Offering Documents – May 17, 2021)<br><br>*Alleged affirmative misstatement: Plaintiffs challenge this statement as affirmatively false' because "demand for Oatly products in China was already stagnating if not decreasing, as evidenced* | Same as Row 23. | • Part of a large block quote constituting impermissible puzzle pleading.  *See* p. 30.<br><br>• Puffery.  *See* pp. 30–31. | EA and SA |

[12] For the challenged statements in this Section C, Plaintiffs make boilerplate allegations that the statements were "misleading and incomplete" (¶¶ 56, 142), but their challenge is phrased to indicate they believe Oatly's statement was directly contrary to reality, *e.g.*, "demand for the Company's products was actually weak across Asia."  Their primary argument as to each statement is that it was affirmatively false.

16

| | | | |
|---|---|---|---|
| | *by . . . the fact that . . . by December 2021 Oatly had already started to reduce production hours at the Singapore manufacturing facility."* (¶¶ 56, 142.) | | |