**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE OATLY GROUP AB SECURITIES LITIGATION | Consolidated Civil Action No. 1:21-cv-06360 (AKH)(SLC)<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE SECOND CONSOLIDATED COMPLAINT**

LATHAM & WATKINS LLP
Christopher J. Clark
William O. Reckler
Benjamin Naftalis
Kalana Kariyawasam
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Elizabeth R. Marks
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000

*Attorneys for Defendants*

Dated:   December 5, 2022

**TABLE OF CONTENTS**

Preliminary Statement.................................................................................................................1

Argument ...................................................................................................................................3

I.      The Opposition fails to show that Plaintiffs' Securities Act Claims can avoid the
        Heightened Pleading Standards for Fraud. ...........................................................................3

II.     The Opposition Fails to Identify an Actionable Omission or Misstatements......................5

        A.      The Opposition Does Not Identify Actionable Omissions Regarding Shelf
                Space and Market Share.........................................................................................5

        B.      The Opposition Does Not Identify Actionable Omissions Regarding
                Ingredient Prices. .................................................................................................17

        C.      The Opposition Does Not Resolve the Complaint's Failure to Plead
                Affirmatively False Misstatements Regarding Shelf Space and Market
                Share. ....................................................................................................................19

        D.      The Opposition Does Not Resolve the Complaint's Failure to Plead
                Affirmatively False Misstatements Regarding Historical Sales in China. ............21

III.    The Opposition Does Not Identify Allegations of a Strong Inference of Scienter,
        as Required by the Exchange Act. ......................................................................................22

IV.     The Opposition Fails to Rebut Clear Authority regarding the Complaint's failure
        to Allege Loss Causation. ...................................................................................................24

Conclusion ..............................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*60223 Tr. v. Goldman, Sachs & Co.*,
 540 F. Supp. 2d 449 (S.D.N.Y. 2007)....................................................................................25

*In re Adelphia Communications Corp. Securities and Derivative Litigation*,
 2007 WL 2615928 (S.D.N.Y. 2007)........................................................................................4

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*,
 404 F.3d 566 (2d Cir. 2005).................................................................................................21

*In re All. N. Am. Gov't Income Tr., Inc. Sec. Litig.*,
 1996 WL 551732 (S.D.N.Y. Sept. 27, 1996).........................................................................13

*In re BioScrip, Inc. Sec. Litig.*,
 95 F. Supp. 3d 711 (S.D.N.Y. 2015)........................................................................................4

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
 750 F.3d 227 (2d Cir. 2014).................................................................................................25

*Chapman v. Mueller Water Products, Inc.*,
 466 F. Supp. 3d 382 (S.D.N.Y. 2020)......................................................................................7

*City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
 450 F. Supp. 3d 379 (S.D.N.Y. 2020)...............................................................................4, 22

*City of Warwick Mun. Emps. Pens. F. v. Rackspace Hosting, Inc.*,
 2019 WL 452051 (S.D.N.Y. 2019).....................................................................................14, 17

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
 986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................................................7, 16

*Fresno County Employees' Retirement Association v. comScore, Inc.*,
 268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................................3

*Ganino v. Citizens Utilities Co.*,
 228 F.3d 154 (2d Cir. 2000).................................................................................................15

*Glickman v. Alexander & Alexander Servs., Inc.*,
 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996).............................................................................23

*Halperin v. eBanker USA.com, Inc.*,
 295 F.3d 352 (2d Cir. 2002)...................................................................................................7

*Hutchins v. NBTY, Inc.*,
 2012 WL 1078823 (E.D.N.Y. Mar. 30, 2012)........................................................................22

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)...........................................................................................22, 23

*Kinsey v. Cendant Corp.,*
    2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005).........................................................................23

*Klamberg v. Roth,*
    473 F. Supp. 544 (S.D.N.Y. 1979).................................................................................12, 13

*Lau v. Opera Ltd.,*
    527 F. Supp. 3d 537 (S.D.N.Y. 2021)............................................................................15, 17

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp.,*
    902 F. Supp. 2d 329 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr.
    Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383 (2d Cir. 2015) ..............4

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC,*
    797 F.3d 160 (2d Cir. 2015).............................................................................................26

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.,*
    568 F. Supp. 2d 349, 364 (S.D.N.Y. 2008)..............................................................................25

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
    540 F.3d 1049 (9th Cir. 2008) ..........................................................................................26

*Meyer v. Jinkosolar Holdings Co.,*
    761 F.3d 245 (2d Cir. 2014)................................................................................................8

*In re Noah Educational Holdings, Ltd. Securities Litigation,*
    2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) .........................................................................7

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.,*
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)..............................................................................15, 17

*Okla. Law Enforcement Ret. Sys. v. Papa John's Int'l, Inc.,*
    517 F. Supp. 3d 196 (S.D.N.Y. 2021)................................................................................12

*Oklahoma Firefighters Pension & Retirement System v. Lexmark International,*
    367 F. Supp. 3d 16 (S.D.N.Y. 2019)...............................................................................11, 12

*In re Omega Healthcare Investors, Inc. Sec. Litig.,*
    563 F. Supp. 3d 259 (S.D.N.Y. 2021)...................................................................................6, 9

*Ong v. Chipotle Mexican Grill, Inc.,*
    294 F. Supp. 3d 199 (S.D.N.Y. 2018)..................................................................................6, 19

*In re Oxford Health Plans, Inc.,*
    187 F.R.D. 133 (S.D.N.Y. 1999) ......................................................................................23

*In re Pareteum Securities Litigation*,
  2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)..........................................................................23

*Pearlstein v. BlackBerry Ltd.*,
  93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd sub nom. Cox v. Blackberry Ltd.*, 660 F. App'x 23
  (2d Cir. 2016)...........................................................................................................................12

*Plumbers & Pipefitters National Pension Fund v. Davis*,
  2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020)..........................................................................10

*In re Refco, Inc. Securities Litigation*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007)........................................................................................4

*Reilly v. U.S. Physical Therapy, Inc.*,
  No. 17 CIV. 2347 (NRB), 2018 WL 3559089 (S.D.N.Y. July 23, 2018) ................................22

*Sable v. Southmark/Envicon Cap. Corp.*,
  819 F. Supp. 324 (S.D.N.Y. 1993)...........................................................................................13

*In re Sec. Cap. Assur. Ltd. Sec. Litig.*,
  729 F. Supp. 2d 569 (S.D.N.Y. 2010)......................................................................................25

*Set Capital LLC v. Credit Suisse Grp. AG*,
  996 F.3d 64 (2d Cir. 2021)..........................................................................................................7

*In re Smith Barney*,
  290 F.R.D. 42 (S.D.N.Y. 2013) ...............................................................................................20

*Stadnick v. Vivint Solar, Inc.*,
  861 F.3d 31 (2d Cir. 2017)........................................................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................................24

*In re Van der Moolen Hldg. N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005).........................................................................................7

## STATUTES

15 U.S.C.
  §77a, Securities Act of 1933 ................................................................................................1, 3, 4
  §78a, Securities Exchange Act of 1934 .........................................................................1, 3, 4, 24

## RULES

Fed. R. Civ. P. 9(b) ..........................................................................................................................4

Fed. R. Civ. P. 10b-5........................................................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs' Opposition doubles down on their implausible core theory that Oatly's poor stock performance during the Class Period was caused by small declines in shelf space and market share in the U.S. and Europe during certain quarters before the IPO.  Plaintiffs argue that Defendants made material omissions by failing to disclose these small, regional shelf space and market share declines, or by fraudulently covering them up.  But the Complaint does not allege any duty to disclose, let alone particularized facts to support such a claim under either the Securities Act or the Exchange Act.

Moreover, the Opposition acknowledges that Defendants disclosed Oatly's significant production constraints, which had hampered its ability to meet consumer demand.  (Opp. at 20.) Yet Plaintiffs treat production constraints as entirely unrelated to shelf space and market share. That is illogical and blind to reality.  Common sense dictates that to the extent there were declines in shelf space / market share, they would be driven at least in part by the production constraints.  No reasonable investor would assume otherwise, especially given Oatly's frequent and transparent disclosures about the production constraints and its inability to meet demand.

In short, the Opposition does nothing to rebut the fatal flaws identified in Defendants' Motion to Dismiss (the "Motion"): the failures to allege any actionable omission or false statement, scienter, or loss causation.[1]

In searching for a duty to disclose declines in shelf space and market share, the Opposition focuses on statements about consumer demand, and on a few statements that happen

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion (Dkt. 78).  Citations in the format "Ex.__" are to the October 3, 2022 Declaration of Kalana Kariyawasam in Support of the Motion (Dkt. No. 79) (Exs. A-I) or the Declaration of Kalana Kariyawasam filed herewith (Exs. J-K).

to reference in general terms Oatly's presence on shelves or in existing markets. However, the law is clear that there is no duty to disclose when general statements are insufficiently related to allegedly omitted facts. Plaintiffs do not—because they cannot—claim that Defendants' statements about consumer demand said anything about shelf space or market share; and those statements were accompanied by clear disclosures that supply might not be able to meet demand. The few statements that do happen to mention the words "shelf" or "market" are not about the *amount* of shelf space or market share that Oatly had, so even those statements do not put declines into play.

The Opposition also claims that a duty to disclose loss of shelf space / market share arose out of Oatly's disclosure of a risk of such losses. But the law is clear that risk disclosures do not create a duty to disclose that the risk may already have materialized. Nor can Plaintiffs find a duty in Item 303, because the Complaint does not adequately plead that there were actually negative trends with a material adverse impact on Oatly's financial condition.

Plaintiffs' secondary arguments about Oatly's supposed failure to disclose rising ingredient prices are similarly unavailing. The Complaint alleges only that the prices for rapeseed oil and oat futures *on public exchanges* were rising at the time of the IPO. Defendants' Motion explained how that information was equally accessible to investors and Defendants, and therefore cannot be the basis of an omission claim. (Mot. at 23.) The Opposition moves the goalposts and claims that Oatly did not disclose the "nature and extent of the impact" of the publicly observable trend. But the Complaint never alleges facts establishing an adverse impact from the ingredient prices that could or should have been disclosed. Nor could it have, because Oatly's earnings calls—which are incorporated into the Complaint—made clear that increases in

2

Oatly's cost of goods sold were minimal and did not significantly affect key metrics like profit margins.

The Complaint also challenges statements Oatly made about its growth in China from 2018 to 2020 on the basis that a Singapore manufacturing facility reduced production hours in December 2021.  The Opposition entirely ignores that reduced production hours in late December 2021—after the Class Period ended—has no bearing on the truth or falsity of statements about revenue growth years earlier.  (Mot. at 27–28.)

The Opposition also fails to meaningfully address the shortcomings in the Complaint's inadequate pleading of scienter and loss causation.  Instead, Plaintiffs resort to inferring scienter based on (1) wholly unremarkable stock sales at the time of the IPO ; and (2) a theory consistently rejected by courts that scienter can be imputed to defendants because the subject matter of the alleged misstatements involved a company's "core operations."  Similarly, the Opposition fails to distinguish case law establishing that the Complaint's allegations do not support the necessary element of loss causation.

## ARGUMENT

### I.  THE OPPOSITION FAILS TO SHOW THAT PLAINTIFFS' SECURITIES ACT CLAIMS CAN AVOID THE HEIGHTENED PLEADING STANDARDS FOR FRAUD.

The Opposition cites two cases for the proposition that a complaint separating Securities Act claims from Exchange Act claims can escape the heightened pleading standards for fraud. (Opp. at 17–18.)  But those cases confirm that repeating the same substantive allegations under a different header, which is all the Complaint has done here, does not "separate" claims.  In *Fresno County Employees' Retirement Association v. comScore, Inc.*, 268 F. Supp. 3d 526 (S.D.N.Y. 2017), the complaint's Securities Act claims were put forth by a separate plaintiff based on entirely separate statements and facts.  *See* Att. 1, Second Cons. Am. Compl., No. 1:16-cv-01820

3

(S.D.N.Y. Jan. 13, 2017). And *In re Adelphia Communications Corp. Securities and Derivative Litigation*, 2007 WL 2615928 (S.D.N.Y. 2007), held that the heightened standard *was* applicable to the Securities Act claims but quoted another case that decided differently, *In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007). In *Refco*, "the substance of the allegations [kept] the distinction . . . clear," *id.* at 632, and the claims themselves were based on completely separate facts and statements. *See* Att. 2, First Am. Cons. Compl., No. 1:05-cv-08626 (S.D.N.Y. May 5, 2006).

In this District, courts "uniformly apply Rule 9(b) to Complaints that separate allegations, so long as the theories of liability are the same under both statutes." *City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 402 (S.D.N.Y. 2020); *see also In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 742 (S.D.N.Y. 2015) ("In this case, Plaintiffs have staked their Securities Act claims upon the same factual allegations as their Rule 10b-5 claims and accordingly Rule 9(b) applies."); *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp.*, 902 F. Supp. 2d 329, 339 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383 (2d Cir. 2015) ("Although Plaintiffs claim that they should not be held to the higher standard for their '33 Act claims because they took the trouble to separate their claims into separate sections, the false and misleading statements and omissions alleged for both sets of claims pertain to the exact same underlying events.").

Plaintiffs may have alleged their Securities Act and Exchange Act claims in separate sections of the Complaint, but the factual allegations and alleged misstatements are exactly the same. (Mot. at 41.) The Court should therefore apply the heightened pleading standard to all of Plaintiffs' claims.

4

II.    **THE OPPOSITION FAILS TO IDENTIFY AN ACTIONABLE OMISSION OR MISSTATEMENTS.**

    A.    <u>**The Opposition Does Not Identify Actionable Omissions Regarding Shelf Space and Market Share.**</u>

        1.    **Plaintiffs Fail to Plead a Duty to Disclose Based on any Purportedly Incomplete Statements by Defendants.**

Plaintiffs challenge three categories of statements as misleading for failing to disclose losses in shelf space and market share:  (1) statements about Oatly's shelf presence or intended future growth in in that regard; (2) risk disclosures that shelf space or market share could decline; and (3) general statements regarding strong consumer demand and failure to meet that demand due to production and supply constraints.  (Opp. at 24–25.)  However, Plaintiffs fail to identify a duty to disclose shelf space or market share declines for any of these categories.[2]

        a.    <u>General Statements About Oatly's Presence on Shelves and In Markets, and Plans for Growth</u>

The Opposition identifies three statements that mention in general terms Oatly's presence on shelves or in markets:

- "We believe we can continue to build on industry-leading food retail performance by growing velocity and expanding ***on-shelf presence***,"

- "The food retail channel, in particular, has welcomed Oatly ***on shelves***."

- "We will leverage the significant demand for Oatly products to grow in new and ***existing markets***."

(Opp. at 24 (emphasis in Opp.), full quotes from Final Am. F-1, Ex. B at 12, 103.)  None of these broad statements is sufficient to create a duty to disclose losses in shelf space or market share.

More specifically, none of these statements are incomplete statements about the amount of Oatly's shelf space / market share nor do they suggest that Oatly's shelf space / market share

---

[2] Additionally, as detailed in the Motion, many of the challenged statements are inactionable because they constitute puzzle pleading, puffery, or opinions.  (*See* Mot. at 29–32.)

was expanding prior to the IPO, such that further disclosure about declines was necessary to make them complete. Rather, the first statement—an opinion— reflects Oatly's belief that it could expand shelf space in the future. The second statement—a general statement of puffery— merely says that Oatly was on shelves and does not speak to the amount of shelf space. The third statement—a general statement about demand—is about Oatly's future intention to grow in new markets but says nothing about Oatly's current or past market share. It is not enough that the statements happen to include the word "shelf" or "market." A general reference to a certain topic is insufficient to put a specific issue "in play" such that disclosure is required to avoid misleading investors. *See In re Omega Healthcare Investors, Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 272–73 (S.D.N.Y. 2021); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 219, 233 (S.D.N.Y. 2018) (no duty to disclose inability to trace ingredients through suppliers, even though SEC filings discussed suppliers and the corresponding risk of food-borne illnesses).

<b>b.</b>   <u>Risk Disclosures Regarding Shelf Space and Market Share</u>

The only other statements challenged in the Complaint that even mention shelf space or market share are risk disclosures. For example, Oatly's Offering Documents stated, "If we fail to meet demand for our products and, as a result, consumers who have previously purchased our products buy other brands or our retailers allocate shelf space to other brands, our business, financial conditions and results of operations could be adversely affected." (Opp. at 24–25, 29, full quote from Final Am. F-1, Ex. B at 31.) The Opposition claims that such statements created a duty to disclose because the risks were already coming to fruition. (Opp. at 24–25, 29.) However, risk disclosures are not misleading (and do not put facts "in play") just because the risk may have in some way already materialized. (Mot. at 20.)[3] Instead of addressing the

---

[3] The Complaint does not even adequately allege that the risk Oatly warned of had "already transpired."

6

precedent cited by Defendants—*In re Noah Educational Holdings, Ltd. Securities Litigation*, 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) and *Chapman v. Mueller Water Products, Inc.*, 466 F. Supp. 3d 382 (S.D.N.Y. 2020)—the Opposition ignores *Chapman* and claims without support that *Noah* "is plainly not good law." (Opp. at 28–29.)[4]

This case is just like *Chapman*. That court recognized that "[s]ome courts in this Circuit have held that a risk disclosure can itself constitute a material misrepresentation when it presents as a risk an event that has already transpired." 466 F. Supp. 3d at 405–06. But *Chapman* further held that "the main inquiry is whether a 'reasonable investor could have been misled about the nature of the risk when he invested.'" *Id.* (quoting *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002)). *Chapman* further found that a disclosure that "new products *may* have quality or other defects or deficiencies" was not misleading, because when "read in context . . . [it] would have been evident to the ordinary investor that [the defendant] was not warranting that every one of its newer technologies was defect-free." *Id.* Here, no reasonable investor would have read Oatly's risk disclosures as warranting that Oatly was *not* currently experiencing any shelf space or market share setbacks, particularly given Oatly's repeated disclosures about production constraints and its inability to meet demand. (*See e.g.*, Final Am. F-1, Ex B at 75 ("To date, our growth has been constrained by limitations in our production capacity.")

---

(Opp. at 29.) The risk was that market share or shelf space losses could cause adverse impacts on Oatly. (*Id.* (citing ¶ 52).) The Complaint does not allege facts establishing a causal connection between any such losses and adverse impacts. *See* Section II.A.4, *infra*.

[4] None of the Opposition's cases suggest that a risk disclosure creates a duty to disclose merely because it warns of a risk that has already materialized. Each involved additional context that made the risk disclosures misleading. *See Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85–86 (2d Cir. 2021) (risk disclosure asserted defendants had "no reason to believe" a risk would materialize, but defendants allegedly "knew with virtual certainty" it would); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 515–18 (S.D.N.Y. 2013) (risk disclosure misleading where offering documents included misleading "positive statements[] that clashed with the Company's risk warnings on the same issues"); *In re Van der Moolen Hldg. N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400 (S.D.N.Y. 2005) (misleading to merely warn of potential regulatory risk where ongoing regulatory violations resulted in significant fines).

The Opposition relies on a footnote in *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014) for the proposition that risk disclosures always put an issue in play.  (Opp. at 24, 26.)  But *Meyer* held that the risk disclosure in that case was actionable because it discussed not only "the risks of pollution inherent in [the] business" but also the "practices [defendant] had implemented to cabin this risk," which could have misled investors about the extent to which the risk had already materialized.  761 F.3d at 250 n.3.  Oatly did not make statements implying it had *not* experienced shelf space or market share declines.[5]  It is thus different than *Meyer*, where "the description of pollution-preventing equipment and 24-hour monitoring teams gave comfort to investors that reasonably effective steps were being taken to comply with applicable environmental regulations," when the company in fact knew it was experiencing significant pollution.  *See Meyer*, 761 F.3d at 251.

c.      <u>Statements About Strong Consumer Demand</u>

The Complaint also alleges that statements about high consumer demand for Oatly's products, and Oatly's difficulty in meeting demand due to production constraints and supply chain disruptions, were misleading because they failed to disclose declines in shelf space / market share.  (¶¶ 53–54; 134–35.)

Plaintiffs generally argue that "contrary to the Offering Documents' rosy assertions that Oatly was only being held back by a lack of 'production capacity,' those materials nowhere disclosed that, in reality, Oatly's operations and future performance were already being seriously jeopardized by ongoing declines in shelf space and market share in its core markets."  (Opp. at 21.)  There are several flaws with Plaintiffs' argument.  As an initial matter, no reasonable

---

[5] As discussed in section (a) above, the only three statements (aside from the risk disclosures) identified in the Opposition as mentioning shelf space and market share were not about the *amount* of shelf space and market share, nor about the quarters preceding the IPO.

8

investor would consider Oatly's disclosures about its production constraints and supply chain disruptions to be "rosy." The opposite is true—those statements, on their face, disclosed the challenges Oatly was facing in expanding and meeting consumer demand. (Mot. at 17–19.)

Moreover, although Plaintiffs argue that Defendants created the impression that Oatly was already "expanding" (Opp. at 20), none of statements about demand or production constraints even imply that Oatly was already expanding, and they do not reference market share or shelf space at all. Thus, those statements did not create a duty to disclose specific facts about market share and shelf space, including any alleged declines. *See In re Omega Healthcare Investors*, 563 F. Supp. 3d at 272–73.

As the Motion explained—and the Opposition does not dispute—declines in shelf space and market share are not necessarily evidence of declines in consumer demand. (Mot. at 21.) When a market is growing (as was the case with oat milk), a company may have strong demand and even increased sales despite declining shelf space or market share due to an influx of new competitors or an in ability to meet demand. (*See id.*) Plaintiffs do not plead otherwise. Even assuming Oatly's shelf space / market share declined, Plaintiffs never expressly allege that those declines were caused by decreasing consumer demand. Although Plaintiffs argue that "Oatly's operations and future performance were already being seriously jeopardized by ongoing declines in shelf space and market share" (Opp. at 21), that is conclusory. In fact, Oatly's revenues increased throughout the Class Period, despite any declines in shelf space or market share. (*See* Final Am. F-1, Ex. B at 82; Q2 2021 Release, Ex. D at 2, 5; Q3 2021 Release, Ex. F at 2, 5.)

The Opposition also focuses on Oatly's inventory of finished goods, claiming that increases are "corroborative of Plaintiffs' allegations of declining retail shelf space and market share, as it confirms that Oatly was having a hard time selling its products." (Opp. at 23.) But

9

Defendants never stated that Oatly was having an easy time selling its products—it expressly disclosed serious distribution challenges, especially due to COVID-19.  (Mot. at 18–19, 26 n.14.)  Plaintiffs argue that those barriers to distribution are "outside the record" and irrelevant "because regardless of the reasons for Oatly's ability [sic] to distribute its products, the fact remains that the Offering Documents failed to disclose [losses in shelf space and market share]."  (Opp. at 23.)  First, Oatly's distribution challenges are not "outside the record." They were discussed in the Offering Documents and earnings calls, on which the Complaint relies.  (*See* Mot. at 4–6, 26 n.14.)  Second, Plaintiffs cannot simultaneously argue that inventory increases are corroborative of their allegations and that the cause of the inventory increases is irrelevant.  The fact that distribution issues caused Oatly's increases in inventory shows that inventory increases were not caused by declining shelf space, market share, or customer demand.

Plaintiffs cite *Plumbers & Pipefitters National Pension Fund v. Davis*, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) as an example of statements about strong demand triggering a duty to disclose.  (Opp. at 24.)  *Davis* has no relevance to this case, because that plaintiff's allegations were significantly more detailed and included specifically enumerated facts.  The defendants in *Davis* publicly claimed they had strong demand, while internal emails, documents, executive presentations, and board presentations cited in the complaint revealed abusive sales practices to "flood[]the market with discounted inventory to increase its short-run sales figures", "'extreme discounting'", and "'dumping products at below cost to make quarterly numbers.'" *Id.* at *1–4.  The court found that plaintiffs sufficiently pleaded that the "whole truth" about demand was deliberately hidden from investors.  Here, Plaintiffs do not even allege that demand was weak, let alone make particularized allegations to support such a claim.  (*See* Mot. at 26.)  Plaintiffs only allege omissions on a different topic—shelf space / market share—which are not

directly correlated with demand.  Accordingly, there was no duty to disclose any declines in shelf space or market share, because Defendants' statements were complete as stated.

### 2.    Plaintiffs Fail to Plead a Duty to Disclose Based on Item 303.

The Opposition relies on *Oklahoma Firefighters Pension & Retirement System v. Lexmark International*, 367 F. Supp. 3d 16 (S.D.N.Y. 2019), to argue that Item 303 created a duty to disclose known trends regarding declining shelf space and market share.  The *Lexmark* plaintiffs pled the three essential elements of an Item 303 claim, alleging:  (1) a sustained nine-month negative trend affecting the company; (2) that the trend would inevitably have a material adverse effect on the company, which did in fact occur; and (3) that the defendants had specific knowledge of the trend.  *Id.* at 35.  Here, however, Plaintiffs fail to plead all three elements for shelf space declines, and the second and third element for market share declines.

First, Plaintiffs fail to allege a sufficiently lengthy "trend" of declining shelf space.  (Mot. at 16.)  The Opposition asserts vaguely that the Complaint "plainly alleges a long[] and sustained trend," but the Complaint does not specify the length of the supposed trend.  (Opp. at 30.)  The only alleged shelf space decreases are that (1) in Europe, Oatly started 2021 with less shelf space than prior years; and (2) in the U.S., Oatly lost shelf space "before and after" the May 2021 IPO.  (*Id.*; Mot. at 12–13.)  The former does not establish a "trend," reflecting only a comparison between points in time.[6]  The latter is nebulous—"before and after" could be days, weeks, or months—and therefore not a sufficient allegation of a lengthy trend.  (*Id.*)  Plaintiffs also claim

---

[6] The Opposition tries to imply that shelf space losses in Europe continued into Q1 and Q2 2021, but it quotes only general statements about "growth rates" and "strained relationships with retailers," not shelf space.  (Opp. at 23.)  It also asserts that the Motion improperly raises a "factual discrepancy" in noting that Petersson confirmed on the Q3 Earnings Call that Oatly did not lose European shelf space in 2021 while Hanke previously said that Oatly "started 2021 with less shelf space than in prior years [in Europe]."  (Opp. at 23 n.6 (citing Mot. at 13).)  That is not a discrepancy.  It is entirely consistent for Oatly to have started 2021 with less shelf space than in prior years *and* to not lose shelf space in 2021.

that whether an occurrence is sufficiently lengthy to constitute a trend should not be resolved on a motion to dismiss. (Opp. at 31.)  But *Lexmark* itself cites multiple cases where courts found "trends" too short to be actionable as a matter of law.  *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015), *aff'd sub nom. Cox v. Blackberry Ltd.*, 660 F. App'x 23 (2d Cir. 2016).

Second, as further discussed below, the Complaint does not allege that the omitted facts about shelf space / market share had a material adverse impact on Oatly's business.  (*See generally* Opp. at 29-33.)  That is not surprising because these declines were not material and thus would not have had a material adverse impact.  *See* Section II.A.4; s*ee also* Mot. at 15–17.

Third, even if Plaintiffs had sufficiently pleaded that there was a material adverse trend in shelf space or market share, they fail to allege management's knowledge of it.  (Mot. at 17.) Unlike in *Lexmark*, the Complaint here includes no specific allegations regarding knowledge. *C.f. Lexmark*, 367 F. Supp. 3d at 35 (citing documents, presentations, and meetings at which the "trends" were discussed).  The Opposition instead asks the Court to infer knowledge.  (Opp. at 31–32.)  That is not sufficient.  *Okla. Law Enforcement Ret. Sys. v. Papa John's Int'l, Inc.*, 517 F. Supp. 3d 196, 212–13 (S.D.N.Y. 2021).

### 3.    Oatly's Disclosures Regarding Production Constraints and Supply Challenges Also Obviated Any Duty to Disclose.

Oatly's frequent disclosure of production and supply problems obviated any duty to disclose losses in shelf space or market share.  (Mot. at 19.)  After all, if a company is struggling to fill orders and deliver products to shelves, it can reasonably be inferred that the company may experience losses in shelf space and market share (regardless of demand remaining high).  (*Id.*) The Opposition questions Defendants' reliance on *Klamberg v. Roth*, 473 F. Supp. 544 (S.D.N.Y. 1979).  (Opp. at 25.)  But the Plaintiffs interpret *Klamberg* too narrowly, focusing on

the court's statement that "it is not deceptive to fail to 'characterize' [ ] facts with 'perjorative nouns and adjectives.'" 473 F. Supp. at 551. Plaintiffs quote but fail to acknowledge the import of *Klamberg's* broader holding that, "[a]s a general rule, so long as material facts are disclosed or already known, it is not deceptive to. . . fail to verbalize all adverse inferences expressly." *Id.*

Here, Oatly disclosed facts regarding the production constraints and supply challenges that were affecting its ability to meet high demand. Under *Klamberg*, Defendants were not required to verbalize all adverse inferences that could arise from the production and supply challenges, including loss of shelf space and/or market share due to difficulties in getting product onto shelves. Reasonable investors would not have been deceived because they could infer such declines from Defendants' disclosures. Many courts have applied *Klamberg* to find that "[a] reasonable investor will not be deceived by nondisclosure of inferences if he or she can draw whatever inferences might be appropriate based on disclosed facts." *Sable v. Southmark/Envicon Cap. Corp.*, 819 F. Supp. 324, 334 (S.D.N.Y. 1993); *see also In re All. N. Am. Gov't Income Tr., Inc. Sec. Litig.*, 1996 WL 551732, at \*12 n.13 (S.D.N.Y. Sept. 27, 1996).

### 4.    The Complaint Fails to Plead That the Allegedly Omitted Facts Would Have Been Material to a Reasonable Investor.

Even if the Complaint had sufficiently alleged an omission with respect to shelf space or market share, it fails to plead that any such declines were material. (Mot. 21–22.) The alleged declines were small and were limited to certain regions or time periods, and would not have been material to investors when compared to Oatly's overall performance worldwide.

The Opposition argues that the Motion misrepresents the amount of shelf space losses alleged in the Complaint by "fixati[ng] on CW1's references to 'Target and Sprouts Farmers Market.'" (Opp. at 22.) It asserts that CW1 said Oatly was generally suffering from declining shelf space in the U.S., not just at Target and Sprouts. (Opp. at 21–22.) But the Complaint never

13

quotes CW1 as saying there was a "broader trend in declining shelf space" (*compare* Opp. at 22

*with* ¶ 54(b)), and is ambiguous about what CW1 actually said versus what Plaintiffs may have

extrapolated.  (*See* ¶ 54(b).)  In any event, even if Oatly suffered shelf space losses at retailers

across the U.S., the Complaint still fails to allege the magnitude of those losses (individually or

in aggregate) or their effect on Oatly's business.[7]  Nor does it allege a timeframe for the

declines— saying "both before and after the IPO" is not sufficiently specific.[8]  (Opp. at 8.)

The Opposition also argues that the Complaint alleges lost market shares in both Europe

and the U.S., not just in the U.S.  (Opp. at 21–22.)  But the Complaint never alleges that Oatly

lost market share in Europe.  (*See, e.g.,* ¶¶ 53, 134 (Oatly "had already begun to lose significant

market share to its competitors, including the all-important U.S. market"); ¶¶ 54(d), 135(d)

("Oatly was also losing market share in the U.S.").)  The Opposition's reliance on Defendants'

references to "lost market shares" and "losing 12 markets in 2020" is not compelling, because it

unclear on the face of the Complaint what "lost market shares" or "12 markets" the Defendants

were referring to, and it is unclear that "losing 12 markets" is the same thing as lost market share.

(Opp. at 21-22; ¶ 77.)  But, again, even if Oatly lost market share in Europe in 2020 or early

2021, the Complaint does not allege the magnitude or effect of that decline on Oatly's business.

Plaintiffs allege the magnitude of only one decline in either shelf space or market share:

a decline in U.S. retail oat milk market share from 32% in 2019, to 28% in 2020, to 26% by

---

[7] While the Opposition cites allegations in the Complaint purporting to describe the importance of shelf space to retailers generally (Opp. at 38 n.12), that does not constitute a sufficiently specific allegation that Oatly's financial condition was adversely affected.  *City of Warwick Mun. Emps. Pens. F. v. Rackspace Hosting, Inc.*, 2019 WL 452051, at *8 (S.D.N.Y. 2019) (dismissing complaint were "Plaintiffs have failed to plead facts with sufficient particularity to explain how or why the [event] would necessarily have a material, detrimental effect on [the defendant's] financials and operations).

[8] Plaintiffs' failure to allege a sufficiently definite timeframe for shelf space losses is discussed in detail in Section II.A.2, *supra*.

2021.  (¶ 9.)  But an alleged decline of 6% from 2019 to 2021 is not sufficient to plead materiality as that time period is far broader than the class period (May 2021 to Nov. 2021).  The Complaint does not allege the market share loss during the Class Period or in the quarters immediately preceding the IPO, and the decline from 2020 to 2021 was only 2%.  (*See* ¶ 9.)

Moreover, Plaintiffs concede that retail sales for oat milk in the U.S. implicates only 10% of Oatly's business.  (Opp. at 22.)  So, what Plaintiffs really are alleging is that, at most, Oatly suffered a 2% market share decline for 10% of its business (retail oat milk in the U.S.).  A 2% decrease in market share affecting 10% of Oatly's business could *at most* result in a revenue impact of 0.2%, assuming zero market growth and holding all other factors constant.[9]  Even assuming a 6% decrease, the impact on revenue would be just 0.6%.  That is not be material to an average investor, and is far less than even the 1.7% of total revenue that the Opposition incorrectly asserts was found material in *Ganino v. Citizens Utilities Co.*, 228 F.3d 154 (2d Cir. 2000).  (Opp. at 37–38.)[10]  It is particularly immaterial in light of Oatly's continued revenue growth.[11]  *See Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 552 (S.D.N.Y. 2021) (dismissing Item 303 claim because "loss of market share does not necessarily imply a loss of revenue when the market is rapidly growing").[12]

---

[9] As explained above, the market for oat milk was (and is) growing, and so were Oatly's revenues.  (*See* Section II.A.1.c, *supra*.)

[10] In reality, the court in *Ganino* determined that the misrepresentations accounted for 8% to 17.7% of the relevant figures before finding materiality was adequately alleged.  *Id.* at 166.

[11] Oatly's revenues increased throughout the Class Period.  (*See* Final Am. F-1, Ex. B at 82; Q2 2021 Release, Ex. D at 5; Q3 2021 Release, Ex. F at 5.)

[12] In an attempt to make up for the lack of allegations regarding the magnitude of shelf space or market share declines outside the U.S. retail market share for oat milk, the Opposition argues that these declines "impacted at least oatmilk," which accounts for 90% of Oatly's business, and that the declines must therefore be material.  (Opp. at 36–37.)  However, the question is not whether a company's important products are impacted, but whether the impact is material.  *See, e.g.*, *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 408 (S.D.N.Y. 2006).

15

The Opposition further argues that Oatly's disclosure of declines in retail shelf space and market share in the Q3 Results is itself an indication of materiality, citing *In re Facebook, Inc.*, 986 F. Supp. 2d 487 (S.D.N.Y. 2013). (Opp. at 36.)  But *Facebook* found the omitted information material for a variety of reasons, including that the trend at issue directly drove a significant decline in advertising revenue, which was "Facebook's most significant financial metric." *Id.* at 519–20.  Moreover, "Facebook's most senior executives determined that the change was so significant that it warranted disclosure" to analysts pricing the shares of Facebook's highly anticipated IPO. *Id.* at 501, 520.  The court found sufficient pleading of materiality because "Defendants' actions to disclose the nonpublic information to IPO-critical parties undermine their contention that the information was not material." *Id.* at 520.  Here, the facts are very different.  There was no disclosure of nonpublic information to critical parties in advance of the IPO.  Rather, Defendants mentioned shelf space and market declines in passing, largely in response to questions on the earnings call. (Q3 Earnings Tr., Ex. G at 10, 14.) But Defendants never stated that these declines were the driving cause for the revision to Oatly's 2021 revenue projections (and the Complaint does not contain any such allegation).  (*See generally*, Q3 Earnings Tr., Ex. G.)  There is no authority suggesting that the fact of disclosure alone is sufficient to plead materiality.  If that were true, the requirement that plaintiffs plead materiality would be toothless in every case where the allegedly omitted facts were subsequently revealed in a public disclosure.

Accordingly, even assuming that Defendants made misleading statements that failed to disclose declines in shelf space / market share, the Complaint failed to plead that the declines were material because they do not allege the magnitude of the declines (outside of a 2% market share decline for retail U.S. oat milk from 2020 to 2021) or how they had a material impact on

16

Oatly.  *See City of Warwick*, 2019 WL 452051, at *8; *Nokia*, 423 F. Supp. 2d at 408 (dismissing securities claims where complaint did "not even attempt, to approximate the magnitude or degree of the alleged misstatements in relation to [the defendant's] total financial picture").[13]

> **B.      The Opposition Does Not Identify Actionable Omissions Regarding Ingredient Prices.**

> **1.      The Opposition's Assertions Go Beyond the Facts Pleaded in the Complaint.**

The Opposition asserts that Oatly failed to disclose (1) "that prices for delivery of oats and rapeseed oil in the post-IPO period had already increased dramatically," and (2) "the material adverse impact that such significant increases would almost certainly have on Oatly's business and margins." (Opp. at 27.)  The Complaint does not plead either with particularity.

With respect to the Opposition's first assertion, the Complaint focuses solely on commodities futures prices for key ingredients.  It never alleges that *Oatly's* cost of obtaining oats or rapeseed oil from its suppliers had materially increased, nor does it allege what Oatly's costs were for the ingredients either before or after the rise in futures prices.  (¶¶ 57–67; 143–54.) Similarly, with respect to the second assertion, the Complaint never alleges what "material adverse impact" Oatly suffered due to a rise in the increases in key ingredient prices.  Moreover, Oatly's second and third quarter disclosures explain that any impact of rising prices or inflation would be minimal, offset or delayed, and describe the factors that *actually* caused Oatly's decline in gross profit margins:

- "To date, we have experienced limited material cost inflation compared to the prior year period as we benefited from volume growth, except for rapeseed oil, which accounts for approximately 3 to 4 percentage points of our total cost of goods sold.  We expect

---

[13] Plaintiffs note this Court's prior holding that materiality is "usually a matter reserved for the trier of fact."  (Opp. at 35–36.)  However, ample precedent makes clear that where, as here, plaintiffs have failed to allege facts establishing materiality, or allege facts that affect a very minor part of the business, the case is not a "usual" case, and dismissal is warranted. *See, e.g.*, *Lau*, 527 F. Supp. 3d at 552; *City of Warwick*, 2019 WL 452051, at *8; *Nokia*, 423 F. Supp. 2d at 408.

rapeseed oil prices to continue to increase during the second half of 2021, offset by other anticipated cost efficiencies."  (Q2 Earnings Tr. at 11.)

- "The gross margin decline . . . was primarily due to higher logistics expenses . . . as well as higher container rates for shipments . . .; a change in segment channel and customer mix; [and] short-term challenges related to scaling up our production capacity."  (Q3 Earnings Tr. at 9.)

- "Going into 2022, we expect inflationary pressure to impact our cost of goods sold more broadly . . . .  [O]ats account for 8% to 9% of our total cost of goods sold[, and] . . . [e]ven with oat drought conditions, we are well positioned with adequate oats supply to meet our anticipated growth this year and for financial year 2022."  (*Id.*)

- "Rapeseed oil, which accounts for approximately 3 to 4 percentage points of our total cost of goods sold continued to be higher[, but w]e expect the geographical localization of our production capacity . . . to provide some offset to inflationary pressures.  We also expect increased price of [Oatly] products . . . to help offset some of the commodity and logistical inflationary headwinds."  (*Id.*)

Thus, even if the Complaint had alleged that Oatly was paying the futures prices for oats and rapeseed oil, Oatly's Q2 and Q3 Results undermine any argument that rising futures prices had a materially negative impact on the company.

### 2. Oatly Had No Duty to Disclose Rising Prices, Either Under Item 303 or to Make Its Statements Complete.

Defendants had no duty to disclose rising ingredient costs under Item 303.  The Opposition asserts that that Defendants "concede" rising ingredient prices were a trend.  (Opp. at 32.)  But the only thing that Defendants concede is that futures prices were rising on public exchanges.  That is all the Complaint alleges, and that was public information equally accessible to investors and Oatly.  (*See* Mot. at 23; Section II.B.1.a, *supra*.)  The Complaint does not allege what price Oatly was paying for ingredients.  The Opposition also argues that it is not enough that the exchange prices were public knowledge because Oatly did not disclose "Oatly's *knowledge* of price risks that had already materialized and the likely *magnitude* of the resulting

18

adverse impact." (Opp. at 32–33 (emphasis in original).)[14] But the Complaint never alleges what impact rising prices on public exchanges would have on Oatly's financial condition or operations. (*See* Section II.B.1.a.) Nor does the Complaint contain any allegations about Oatly's "knowledge" of such negative impacts—nor could it, since such impacts did not exist. (*Id.*)

Defendants also had no duty to disclose rising ingredient costs to make their statements complete. The Opposition argues that Oatly's description of how it sources its ingredients triggered a duty to disclose rising prices. (Opp. at 26.) The idea that any reference to raw materials requires disclosure of all information relating to those raw materials—including pricing—is contradicted by precedent. *See Chipotle*, 294 F. Supp. 3d at 233 (statements about suppliers did not create obligation to disclose all other information about those suppliers).

Furthermore, the risk disclosures the Opposition argues relate to ingredient pricing do not actually discuss risks that the Complaint alleges had already materialized. The risk disclosures are about "obtain[ing sufficient supply to meet our need on favorable terms," and whether volatile costs could negatively impact the company's profitability. (*See* Opp. at 29.) Whether or not ingredient prices on futures exchanges had already risen or not is irrelevant, given Plaintiffs' failure to plead either that Oatly could no longer obtain sufficient supply on favorable terms or that its profitability was negatively impacted by volatile costs.

### C. The Opposition Does Not Resolve the Complaint's Failure to Plead Affirmatively False Misstatements Regarding Shelf Space and Market Share.

The Opposition claims that Defendants ignore most of the statements alleged to be affirmatively false, "including the Offering Documents' misleading 'risk warnings' about shelf

---

[14] Oatly did disclose risks relating to price increases for ingredients, and those disclosures were not misleading merely because the risk already may have begun to materialize, as discussed in Section II.A.1.b, *supra*. An additional disclosure that Oatly was currently subject to rising prices would not be material, as it would not have altered the total mix of information available to investors. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38 (2d Cir. 2017).

space and ingredient prices." (Opp. at 33–34.) But the Motion discussed not only those risk disclosures about shelf space and ingredient prices (Mot. at 19–21, 24) but also every statement challenged in the Complaint (*See* Mot. at 9–32; Appendix A).[15] If Plaintiffs' argument is that Defendants treated certain statements as omissions when they were alleged, in boilerplate fashion, to be not only "incomplete" but also "materially untrue," that is unavailing.[16] "A statement is misleading when it omits the truth. Thus, in most securities fraud cases, an affirmative misstatement can be cast as an omission and vice versa. Differentiating misstatements from omissions is a futile logomachical exercise." *In re Smith Barney*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013). For the same reasons Oatly's statements were not misleading omissions, they were not affirmatively misleading.[17]

The Opposition raises only one substantive argument regarding an affirmatively misleading misstatement about shelf space and market share. It claims that the Motion's argument about a transcription error in the Q3 Earnings Call Transcript is inappropriate for a motion to dismiss.[18] (Opp. at 45–46.) According to the transcript, Oatly's CEO said, "Any recent pressures on our market share[,] velocity[, or] measured channel is expected and directly correlated with the capacity constraints." (Q2 Earnings Tr., Ex. F at 7.) The transcript did not include the bracketed alterations, but "market share velocity measured channel" is not a single

---

[15] Plaintiffs also claim "Oatly nowhere contends that any of the shelf-space related statements in the **Offering Documents** are inadequately pled." (Opp. at 34 (emphasis in original).) Not so. (*See* Mot. at 11–22, 25, 29–32; Appendix A.)

[16] The lack of clarity on whether Plaintiffs are pleading an omission or affirmative misstatement is emblematic of the problematic "puzzle pleading" in the Complaint. (*See* Mot. at 30.)

[17] If Plaintiffs actually believe the risk disclosures were affirmatively false and not just misleading by omission, that would contradict many of their other allegations. The risk disclosure would only be affirmatively false if the risk of shelf space and market share losses did not actually exist, which would belie Plaintiffs' allegations that Oatly was suffering from lost shelf space and market share.

[18] Plaintiffs provide no response to Defendants' explanation of why Oatly's reference to "capturing greater shelf space" (as a strategy) was not misleading. (*See* Mot. at 25.)

concept.  Rather, "market share," "velocity," and "measured channels" are three separate metrics.  Plaintiffs elevate form over substance, ignore the reference to "measured channel," and argue that the statement improperly suggests that Oatly's market share *had* velocity, which they then interpret as "was increasing."  (Opp. at 46 n.16.)  That interpretation is nonsensical.  Regardless, the Court can determine whether Oatly's statement was misleading as a matter of law, and the statement is not ambiguous just because "one party's view strains the . . . language beyond its reasonable and ordinary meaning."  *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 598 (2d Cir. 2005) (internal quotations omitted).

The Opposition further argues that Petersson's statement was "highly misleading (if not downright false)" because he stated that Oatly's market share pressures were "recent" when market share declines had begun earlier.  (Opp. at 46.)  But "recent" is vague and could refer to several years, and Petersson did not imply that Oatly had never previously lost market share.

**D.      The Opposition Does Not Resolve the Complaint's Failure to Plead Affirmatively False Misstatements Regarding Historical Sales in China.**

The Opposition argues that Oatly's statements about demand in China were "materially untrue because 'demand for Oatly products in China was already stagnating if not decreasing' by the time of the IPO."  (Opp. at 34.)  First, Oatly's statements about China did not discuss demand.  Rather they discussed Oatly's 2018 entry into the Chinese market and Oatly's sales in China through 2020.  (Mot. at 27–28.)  Second, Plaintiffs have not actually alleged that demand for Oatly's products was actually stagnating or decreasing in China at the time of the IPO (or in the time period addressed by the statements—2018 to 2020).  (*Id.*)  The fact that a single production facility reduced production hours at the very end of 2021 does not suggest anything about demand between 2018 and 2020.  (*Id.*)

21

**III.    THE OPPOSITION DOES NOT IDENTIFY ALLEGATIONS OF A STRONG INFERENCE OF SCIENTER, AS REQUIRED BY THE EXCHANGE ACT.**

Plaintiffs' Exchange Act claims fail for the further reason that the Complaint fails to plead scienter, and nothing in the Opposition fixes that.

*First*, the Opposition does not identify any allegations establishing that Defendants had the motive and opportunity to engage in fraud.  (Opp. at 47–48; *see also* Mot. at 32.)  Instead, it argues that certain Defendants' stock sales were "suspiciously timed to coincide with the IPO." (Opp. at 47–48.)  But stock sales "only in public offerings cuts *against* an inference of scienter, because it suggests a motive that is 'generally possessed by most corporate directors and officers.'" *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 419–20 (S.D.N.Y. 2020) (emphasis added) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)).  Critically, the Complaint does not allege that Defendants engaged in any further trades in the weeks or months leading up to the Q3 2021 earnings call.  "Indeed, courts in this Circuit are frequently skeptical that stock sales are indicative of scienter where no trades occur in the months immediately prior to a negative disclosure."  *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *14 (S.D.N.Y. July 23, 2018) (collecting cases).

The cases that Plaintiffs cite highlight that Petersson's and Hanke's one-time sales of 13.5% of their stock warrants are inadequate to establish scienter.  For example, *Hutchins v. NBTY, In*c. found that the plaintiff pleaded unusual stock sales where the defendants' sales during a five-and-a-half month class period were 24 times the total amount of sales in the prior 12-month period.  2012 WL 1078823, at *2 (E.D.N.Y. Mar. 30, 2012).  Here, the IPO was

22

Petersson's and Hanke's first opportunity to sell publicly tradable stock and they did not make any other sales during the Class Period.[19]

*Second*, the Opposition does not identify any allegation that Defendants engaged in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care," *Kalnit*, 264 F.3d at 142. (Opp. at 48–49; *see also* Mot. at 33.) The Opposition only asserts in conclusory fashion that Defendants had "access to information" they were either "actively monitoring" or "at least reckless in ignoring." (Opp. at 48–49.) That assertion is based solely on the fact that Oatly's public documents reference "retail sales data" and note the "volatility" of prices of ingredients. (*Id.*) However, allegations of scienter based merely on an executive's position and access to information are insufficient. *Kinsey v. Cendant Corp.*, 2005 WL 1907678, at *5 (S.D.N.Y. Aug. 10, 2005); *Glickman v. Alexander & Alexander Servs., Inc.*, 1996 WL 88570, at *14 (S.D.N.Y. Feb. 29, 1996) (access to information "is an inadequate basis for scienter" given that it "would expose virtually any CEO, by virtue of his or her position alone, to liability").[20]

The Opposition also argues that the core operations doctrine supports an inference of scienter. (Opp. at 49.) But even *Pareteum* confirms that the doctrine does not provide an independent basis for scienter. 2021 WL 3540779 at *17 n.4. Because the Complaint fails to

---

[19] *In re Oxford Health Plans, Inc.* 187 F.R.D. 133 (S.D.N.Y. 1999) is equally unavailing as Plaintiffs are incorrect when they claim it found that "insider sales as low as 11% were 'not insignificant.'" (Opp. at 47.) In reality, the court declined to dismiss the complaint because it could not "evaluate the true value of the options exercised by the Individual Defendants" and because the stock sales it could evaluate were large, ranging from 17% to 67% of the defendants' holdings one month *and* 11% to 100% in another month. 187 F.R.D. at 140 (emphasis added). Defendants here sold just 13.5% of their holdings, and the values of their sales are easily discernable because the Complaint does not allege any sales of derivatives.

[20] Plaintiffs cite *In re Pareteum Securities Litigation*, 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021), which found scienter where the defendants "knew, because they were advised by the Company's auditors, that the Company's internal controls were 'inadequate and ineffective' to make the[ challenged] representations with any degree of belief that they were accurate." *Id.* at *16. The Complaint here does not allege any meetings, presentations, or documents sent to Defendants that would show knowledge.

23

otherwise plead a sufficient inference of scienter, the core operations doctrine does not save its Exchange Act claims.

*Finally*, the Opposition attempts to rebut the contention that more plausible non-fraudulent inferences defeat any inference of scienter.  (Opp. at 50; Mot. at 34–35.)  Plaintiffs must "plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 311 (2007).  They have not done so here.  For example, Plaintiffs argue that "investing in expanding production is not incompatible with misleading investors about 'shelf space losses, retail market losses, and rising ingredient prices.'" (Opp. at 50.)  However, the more plausible inference is that it would have been economically irrational for Oatly to invest in expanding production if Defendants did not believe that production constraints (not lost shelf space / market share) were limiting its ability to meet high demand.  (Mot. at 34–35.)

Thus, the Opposition does not save the Complaint's failure to plead facts giving rise to a strong inference of scienter, and Plaintiffs' Exchange Act claims must be dismissed.

## IV.    THE OPPOSITION FAILS TO REBUT CLEAR AUTHORITY REGARDING THE COMPLAINT'S FAILURE TO ALLEGE LOSS CAUSATION.

The Opposition contends that the Complaint adequately alleges two partial corrective disclosures: (1) the July 14, 2021 Spruce Point Report, and (2) the November 15, 2021 Q3 Results.  (Opp. at 51.)  Neither is sufficient.

July 14, 2021 Spruce Point Report.  Oatly's 2.8% stock drop on the day the Report was released was unremarkable and not indicative of a price impact.  Indeed, Oatly's stock fell significantly more on the days before and after the report was released.  (Mot. at 37.)  The Opposition does not engage with that point, and instead argues that the Complaint alleges an 8.8% price drop.  (Opp. at 51.)  But the 8.8% figure is for a two-day trading window, which is

24

inappropriate given that the Report was released before the market opened and, as the Complaint alleges, the market for Oatly ADSs was efficient. (Mot. at 38.) Accordingly, the Complaint fails to allege a correlation between the Report and a price decline. (Mot. at 37–38 (citing *In re Sec. Cap. Assur. Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 599 (S.D.N.Y. 2010) ("*SCA*").)

The Opposition fails to distinguish the cases cited by the Motion. It argues that *SCA* is limited to cases where a plaintiff alleged revelations other than those made through public disclosures. (Opp. at 52.) But *SCA* never suggests that how such facts are revealed is relevant. *SCA*, 729 F. Supp. 2d at 599 (holding just that the complaint at issue failed to "demonstrate a correlation between 'revealed' facts and a decline in SCA's stock price.") The Opposition also notes that the stock in *60223 Tr. v. Goldman, Sachs & Co.*, 540 F. Supp. 2d 449 (S.D.N.Y. 2007), had lost most of its value by the time of the alleged corrective disclosures. (Opp. at 52.) But *Goldman*'s holding did not rely on that fact. *Id.* at 460 ("As to loss causation, the question is: when, if ever, did the [ ] stock lose its value, and *was that loss causally related* to the claimed misrepresentation?") (emphasis added).[21]

November 15, 2021 Q3 Results. The Opposition fails to address the most plausible explanation for the stock drop on the day Oatly issued its Q3 Results on November 15, 2021: Oatly issued revised growth projections due to supply challenges. (Mot. at 38–39.) Plaintiffs cite *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC* to argue that they "need not demonstrate on a motion to dismiss that the corrective disclosure was the *only* possible cause for a decline in the stock price." 750 F.3d 227, 233 (2d Cir. 2014) (emphasis in original). They

---

[21] *See also In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 364 (S.D.N.Y. 2008) ("the present Complaint does not address the ten-month decline of CMGI's stock price and does not attempt to explain how the decline of the stock price following the issuance of the October 4, 2000 report was attributable to the alleged fraud, rather than simply a continuation of the loss in value that afflicted CMGI during the Internet sector's collapse.").

similarly cite *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities*, *LLC*[22] to argue that a complaint "must simply give Defendants 'some indication' of the actual loss suffered and of a plausible causal link between that loss and the alleged misrepresentation."  797 F.3d 160, 187 (2d Cir. 2015).  Defendants do not dispute either of these contentions.  However, the connection between the misrepresentation and the price decline must be plausible on its face considering any "more plausible reason[s]" for a drop in stock price.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1065 (9th Cir. 2008).  Here, the most plausible reason for Oatly's stock price drop is its revised growth projections in light of supply challenges.  In light of that disclosure of the downward revision, the Complaint fails to plead that any "corrective disclosures" about shelf space / market share, rising ingredient prices, or demand in China are plausible causes of the loss.  (Mot. at 39.)

Accordingly, the Complaint does not plead facts establishing the necessary element of loss causation, and Plaintiffs' Exchange Act claims must be dismissed.

### <u>CONCLUSION</u>

The Court should grant Defendants' Motion and dismiss the Complaint with prejudice.

---

[22] Plaintiffs mistakenly attribute this quote to "*Lentell*, 396 F. 3d at 174" on page 54 of their Opposition.

Dated: December 5, 2022

**LATHAM & WATKINS LLP**

By: /s/ William O. Reckler
Christopher J. Clark
William O. Reckler
Benjamin Naftalis
Kalana Kariyawasam
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: chris.clark@lw.com
Email: william.reckler@lw.com
Email: benjamin.naftalis@lw.com
Email: kalana.kariyawasam@lw.com


Elizabeth R. Marks
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
Email: betsy.marks@lw.com

*Attorneys for Defendants*