UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re OATLY GROUP AB SECURITIES LITIGATION | x<br>:<br>:<br>:<br>x | Consolidated Civil Action No.<br>1:21-cv-06360-AKH |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS

SCOTT+SCOTT ATTORNEYS AT LAW LLP
David R. Scott
William C. Fredericks
The Helmsley Building
230 Park Ave, 17th Floor
New York, NY 10169

SCOTT+SCOTT ATTORNEYS AT LAW LLP
Jacob B. Lieberman
156 South Main Street
Colchester, CT  06415

*Lead Counsel for Federal Plaintiffs and the Proposed Class*

**ROBINS GELLER RUDMAN & DOWD LLP**
Samuel H. Rudman
Michael G. Capeci
58 South Service Road, Suite 200
Melville, NY  11747

*Additional Counsel for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ........................................................................ 3

II.   BACKGROUND OF THE LITIGATION.........................**Error! Bookmark not defined.**

III.  ARGUMENT............................................................................................ 7

    A.    The Court Should Grant Preliminary Approval of The Proposed Settlement ............................................................................................... 7

        1.    The Settlement Is The Product Of Several Months of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel And A Mediator ............................................................... 9

        2.    The Proposed Settlement Falls Well Within The Range of Approval .......................................................................................... 10

        3.    The Settlement Treats All Settlement Class Members Fairly................... 14

        4.    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel ................................................................................ 15

    B.    The Proposed Settlement Class Satisfies Rule 23.................................... 17

        1.    The Settlement Class Satisfies The Requirements Of Rule 23(a) .......................................................................................... 18

            a)    The Settlement Class Is So Numerous that Joinder Is Impracticable............................................................ 18

            b)    There Are Common Questions of Law and Fact ......................... 19

            c)    Plaintiffs' Claims Are Typical Of Those Of The Settlement Class.................................................................. 20

            d)    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class ............................................. 21

        2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ....................................................................................... 22

            a)    Common Legal And Factual Questions Predominate................... 22

            b)    A Class Action Is Superior To Other Methods Of Adjudication................................................................... 23

IV.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ............................................................................ 23

V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................... 25

VI.   CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................18, 22, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..................................................................................................21

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)......................................................................................20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).........................................................................................9

*City of Providence v. Aeropostale*,
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N,Y. May 9, 2014)........................24

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).........................................................................................18

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).......................................................................................18

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ..............................................................................18

*Ferraiori v. Triterras, Inc.*,
    No. 7:20-cv-10795-CS (S.D.N.Y. Sept. 8, 2022), ECF No. 82 .............................................16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ..............................................................................17

*In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................21

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992).......................................................................................21

*In re Genworth Fin., Inc. Sec Litig*,
    No. 1:14 Civ. 02392 (AKH) (S.D.N.Y. Nov. 16, 2017) ...........................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ..............................................................................18

iii

*In re Globalstar,*
  No. 01 Civ. 1748(PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ...................................19

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29 2003)................................10

*In re Initial Pub. Offering Sec. Litig.,*
  243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................................8

*In re Initial Pub. Offering Sec. Litig.,*
  260 F.R.D. 81 (S.D.N.Y. 2009) .................................................................................................18

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..................................20

*In re MF Glob. Holdings Ltd. Inv. Litig.,*
  310 F.R.D. 230 (S.D.N.Y. 2015) ..............................................................................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
  176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................................10

*In re Oxford Health Plans, Inc.,*
  191 F.R.D. 369 (S.D.N.Y. 2000) ..............................................................................................19

*In re Pareteum Sec. Litig.,*
  No. 1:19-cv-09767-AKH-GWG (S.D.N.Y. May 3, 2023) .......................................................16

*In re Pfizer Inc. Sec. Litig.,*
  282 F.R.D. 38 (S.D.N.Y. 2012) ...........................................................................................19, 20

*In re Polaroid ERISA Litig.,*
  240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................................21

*In re Sadia, S.A. Sec. Litig.,*
  269 F.R.D. 298 (S.D.N.Y. 2010) ..............................................................................................20

*In re Signet Jewelers Ltd. Sec. Litig.,*
  No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................5

*In re Tal Educ. Grp. Sec. Litig.,*
  No. 1:18-cv-5480-LAP-KHP (S.D.N.Y. Nov. 30, 2021) .........................................................16

*In re Twinlab Corp. Sec. Litig.,*
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ........................................................................................20

iv

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................20, 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)..............................25

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................23

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010)..........................................................................25

*Pa. Ave. Funds v. Inyx Inc.*,
    No. 08 Civ. 6857(PKC), 2011 WL 2732544 (S.D.N.Y. July 5, 2011) ..............................18, 19

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)............................................................................22

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)......................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................8, 24

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)............................................................................17

**OTHER AUTHORITIES**

E. Flores & S. Starykh, *Recent Trends In Securities Class Action Litig.: 2023
    Full-Year Review,* NERA ECON. CONSULTING at 29, fig. 25 (Jan. 23, 2024)........................16

Fed. R. Civ. P.
    23(a)(3) ...............................................................................................20
    23(a)(4) ...............................................................................................21
    23(e)(1) ................................................................................................8
    23(e)(1)(B) .........................................................................................8, 17
    23(e)(2) ..............................................................................................8, 9

L. Bulan & L. Simmons, *Securities Class Action Settlements: 2022 Review and
    Analysis*, CORNERSTONE RSCH. (2023) ...................................................................2

## PRELIMINARY STATEMENT[1]

Plaintiffs Mario Bello, Mark D. Hayden, and Kai Jochim ("Plaintiffs") submit this brief in support of their Motion for Preliminary Approval of the proposed $9,250,000 settlement of this class action (the "Action"), pursuant to a Stipulation of Settlement (copy attached to accompanying Declaration of Jacob B. Lieberman ("Lieberman Decl.")). The proposed Settlement, which has been reached on behalf of a class of investors (the "Settlement Class," as defined below) in the securities of Oatly Group AB ("Oatly" or the "Company") was reached only after arm's-length negotiations conducted under the auspices of a highly experienced mediator, and if approved would settle all claims at issue in both this Action and a related class action, *Hipple v. Oatly Group AB, et al.*, Index No. 151432/2022 (Supr. Ct. N.Y. Cnty.), that is pending in New York state court (the "State Action").[2]

More specifically, Plaintiffs respectfully request that the Court enter the parties' accompanying [Proposed] Order Granting Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), which is being separately filed herewith (and which is also included as Exhibit A to the Stipulation). Attached to the proposed Preliminary Approval Order as Exhibits 1, 2, and 3 thereto are, respectively: (1) the proposed Notice of Settlement (the "Notice"), to be mailed to all Settlement Class members and their nominees (*e.g.*, brokerage firms) who can be identified and located with reasonable effort; (2) the proposed Proof of Claim and Release form ("Proof of Claim"), which would also be mailed with the Notice to all

---

[1]    All capitalized terms not otherwise defined in this memorandum have the meanings given them in the Stipulation of Settlement dated February 15, 2024 (the "Stipulation"), which is attached as Exhibit 1 accompanying Lieberman Decl.

[2]    By order of the State Court dated May 19, 2022, proceedings in the State Action (which assert only claims under the Securities Act) have been stayed pending resolution of the parallel Securities Act claims in this Action.

Settlement Class members and nominees; and (3) the proposed Summary Notice ("Summary Notice"), which would be published in the print edition of *The Wall Street Journal* and on the internet via a national newswire service. The proposed Preliminary Approval Order (at pp. 4-10) would also approve the Parties' proposed notice plan ("Notice Plan"), and the appointment of Gilardi & Co LLC ("Gilardi") as Claims Administrator to disseminate the notices and administer the claims process. The Motion also asks the Court to set a date for a final approval hearing to consider granting final approval of the proposed Settlement and Plan of Allocation, to review Plaintiffs' Counsel's Fee and Expense Application, and to rule on any objections or "opt-out" requests that may be received from Settlement Class members (the "Settlement Fairness Hearing"). The Preliminary Approval Order would also set customary deadlines for the submission of "opt-out" requests, objections and other submissions relating to final approval of the Settlement and Plaintiffs' Counsel's Fee and Expense Application.

The Settlement represents an excellent result for the Settlement Class that readily meets the standard for preliminary approval. The $9.25 million recovery is in line with the median $9.0 million settlement value for securities class actions settled in the Second Circuit in the last decade, *See* L. Bulan & L. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, CORNERSTONE RSCH., at 19, Appendix 3 (2023), available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf; *see also* Lieberman Decl. at ¶4. As further discussed below, the Settlement is also noteworthy considering not only the significant risks of litigation, but also the financial condition of Oatly, whose stock price had fallen to less than 50 cents per ADS at the time that the Settlement was negotiated (compared to its initial public offering ("IPO") price of $17). In sum, there were real risks here that no recovery, or a much smaller recovery, would have resulted had Plaintiffs

continued to pursue litigation. Moreover, the proposed Settlement was negotiated by experienced Plaintiffs' Counsel who had conducted an extensive factual investigation, and it was reached only after arm's-length negotiations conducted under the auspices of a highly respected mediator of securities class actions, the Hon. Layn Phillips (U.S.D.J., ret.) – indeed, the $9.25 Settlement Amount reflects Judge Phillips' "mediator's proposal" for a fair and reasonable global settlement all claims. All of these factors provide further strong support for granting preliminary approval.

Finally, pursuant to Rules 23(a) and (b)(3), the Motion also seeks to certify the proposed Class, to appoint the Named Plaintiffs in the Actions (Mario Bello, Mark D. Hayden, Kai Jochims, and Bruce Hipple) as Class Representatives, and to appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott" or "Lead Counsel") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") (collectively, with Scott+Scott, "Plaintiffs' Counsel") as Class Counsel. For the reasons set forth in §III.B below, class certification for purposes of settlement should also be granted.

## I.    BACKGROUND

### 1.    Summary of Claims, the Complaints, and the Relevant Class Period

Defendant Oatly makes and sells oat milk, a dairy substitute, and related products. Plaintiffs in both the Federal and State Action allege that the Offering Documents for Oatly's May 20, 2021, IPO represented that Oatly had substantially expanded its production to satisfy growing consumer demand in the lead up to the IPO, but misleadingly failed to disclose that it was experiencing declining retail market share and shrinking shelf space in key markets, suffering from major production problems (including plant shutdowns), and facing imminent cost headwinds related to increasing raw materials prices – omissions which in turn rendered its Offering Documents materially misleading in violation of the Securities Act of 1933 ("Securities Act"). The Federal Action also alleges that certain Defendants made additional statements after the IPO,

in violation of the Securities Exchange Act of 1934 ("Exchange Act"), that further misled investors as to Oatly's struggling operations and market share.

In sum, the Federal Action asserts claims under both the Securities and the Exchange Acts on behalf of all Persons (excluding Defendants and their related parties) who purchased or acquired Oatly ADS between May 20, 2021 (the date of Oatly's IPO) and November 15, 2021, inclusive (the "Class Period"), plus Exchange Act claims on behalf of those who purchased call options (or sold put options) on Oatly ADSs during the Class Period, and were damaged thereby. All members of the alleged class in the State Action are also members of the Settlement Class in this Action, and therefore this Court has jurisdiction over all putative Settlement Class members in both Actions.

### 2. The Federal Action

On July 26, 2021, plaintiff Jochim filed the first complaint in this Action. ECF No. 1. Additional complaints were then filed by two other investors. *See Bentley v. Oatly Grp. AB*, No. 21-cv-6485 (AKH) (S.D.N.Y.) and *Kostendt v. Oatly Grp. AB*, No. 21-cv-7904 (AKH) (S.D.N.Y.). Pursuant to Order dated October 26, 2021, Mr. Jochim filed an amended complaint on December 1, 2021. ECF Nos. 29, 31. On December 6, 2021, the Court consolidated the various other related actions that had been filed in this Court, and appointed Mario Bello as lead plaintiff and Scott+Scott as lead counsel in the resulting consolidated Federal Action. ECF No. 37; Lieberman Decl. at ¶5.

On March 4, 2022, Federal Plaintiffs filed their Consolidated Amended Complaint (ECF No. 64) and, after seeking and obtaining leave to file a further pleading, filed their Second Amended Complaint (the "SAC") on August 17, 2022. ECF No. 76. On June 1, 2023, following oral argument on the federal Defendants' motion to dismiss the SAC, the Court dismissed the SAC

with leave to replead (except with respect to Federal Plaintiffs' claims under §12(a)(2) of the Securities Act, which the Court dismissed with prejudice).  ECF No. 87.  On August 11, 2023, Federal Plaintiffs filed their Third Amended Complaint (the "TAC"), which is the operative pleading in the Federal Action.  ECF No. 91; Lieberman Decl. at ¶6.

### 3.     The State Action

On February 15, 2022, plaintiff Hipple, represented by Robbins Geller ("State Counsel"), filed a putative class action in the State Court against certain Defendants alleging violations of the Securities Act on behalf of investors who purchased Oatly ADS pursuant or traceable to the Offering Documents for Oatly's IPO.  NYSCEF No. 1.  On May 19, 2022, the State Court granted Defendants' motion to stay the State Action pending this Court's resolution of the parallel Securities Act claims asserted in this Action.  NYSCEF No. 55; Lieberman Decl. at ¶7.

### 4.     The Mediation Under the Auspices of Judge Phillips (ret.)

In the summer of 2023, Plaintiffs, Oatly, and the Individual Defendants agreed to explore a global resolution of the Actions and retained Layn Phillips (U.S.D.J., ret.), a highly experienced mediator of complex shareholder matters (the "Mediator").  Lieberman Decl. at ¶8; *see also In re Signet Jewelers Ltd. Sec. Litig.,* No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (McMahon, C.J.) (describing Judge Phillips as an "experienced and well-regarded mediator of complex securities cases").[3]  The Court thereafter granted the Parties' requests to extend the existing deadline for briefing Defendants' anticipated renewed motions to dismiss, so as to allow the Parties sufficient time to adequately explore the possibility of a mediated settlement. ECF Nos. 95, 97, 99.

---

[3]     Unless otherwise noted, citations are omitted and emphasis is added.

As part of the mediation process that followed, in September 2023, both Plaintiffs and Oatly prepared and provided to the Mediator (and exchanged with each other) comprehensive confidential mediation statements setting forth their respective positions, and both sides engaged in separate pre-mediation discussions to address particular issues raised by the Mediator. *See* Lieberman Decl. at ¶9. Thereafter, on October 26, 2023, counsel for Plaintiffs and for Oatly attended an all-day, in-person mediation in New York under the auspices of the Mediator. *Id*.

Near the end of this in-person mediation session, and in an effort to bridge the significant gap that still remained between the Parties, Mediator Phillips made a "mediator's proposal" to settle all claims at issue for $9.25 million, subject to resolution of certain remaining non-monetary terms. Lieberman Decl. at ¶10. Shortly thereafter, Plaintiffs and Oatly agreed to accept the Mediator's proposal for a $9.25 million settlement, subject to resolution of certain non-monetary terms. *Id*. Oatly and Plaintiffs signed a binding Memorandum of Understanding ("MOU"), subject to certain board approvals that have since been obtained, that reflected the material terms of the Settlement, with the understanding that such terms would thereafter be embodied in the terms of a customary Stipulation of Settlement (and accompanying exhibits) that would be submitted to this Court for its approval. *Id*. During the negotiation of the MOU, the Plaintiffs suggested that – and all Parties thereafter agreed – that the Underwriter Defendants become parties to the Stipulation (even though all claims against them would, in any event, have been dismissed under the releases agreed to as part of the MOU). *Id*. The Stipulation and exhibits thereto reflect the superseding, final, and binding agreement among all Parties to settle, compromise and resolve *all* of the Released Claims, subject to Court approval. *Id*.

## II.    PLAINTIFFS' INVESTIGATION AND THE BENEFITS OF SETTLEMENT

Lead Counsel represent that they have conducted an extensive investigation of the claims and the underlying events and transactions alleged in the Federal Action, and State Counsel

represent that they have done the same in the State Action.  Among other things, Lead Counsel and State Counsel both represent that they have analyzed extensive public filings, records, analyst reports, news reports, and other materials concerning Oatly and its business, and have researched the applicable law with respect to the claims of Plaintiffs and the Settlement Class against Defendants and the potential defenses thereto.  Lieberman Decl. at ¶11.

Based on their investigation and review, and as further discussed below, Plaintiffs and their counsel in both Actions believe that the proposed $9.25 million Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and propose to settle the claims raised in the Actions pursuant to the terms of the Stipulation, after considering (a) the substantial benefits that Plaintiffs and the Settlement Class will receive from settlement of the Actions; (b) the significant risks, costs, and uncertainties of further litigation; and (c) weighing the pros and cons of the proposed Settlement in light of the Mediator's recommendation and Plaintiffs' Counsel's own experience in the prosecution of similar actions.  Lieberman Decl. at ¶12.

For their part, Defendants deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever; maintain that they have meritorious defenses to all claims alleged in the Actions, and have stated that they have entered into the proposed Settlement solely to eliminate the distraction, burden, and expense of further protracted litigation.  Lieberman Decl. at ¶13.

## III.    ARGUMENT

The proposed Settlement merits preliminary approval because it provides a significant benefit for the Settlement Class in the face of substantial costs and risks associated with continued prosecution of the Actions.

### A.    The Court Should Preliminarily Approve the Proposed Settlement

Rule 23(e)(2) provides that a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate."  As a general matter, the settlement of class action litigation is

favored by public policy and is strongly encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.'").

Judicial approval of a class action settlement nonetheless requires that the Court conduct a two-step process.  *First*, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.  *See* FED. R. CIV. P. 23(e)(1).  *Second*, after notice has been provided to the class and a hearing has been held, the Court decides whether to grant final approval of the settlement.  FED. R. CIV. P. 23(e)(2).

Under Rule 23(e) amendments adopted in 2018, a court should grant *preliminary approval* upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the proposed class for purposes of the settlement.  FED. R. CIV. P. 23(e)(1)(B).  This standard effectively codified prior case law holding that courts should grant preliminary approval "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In considering *final approval* of the Settlement – after notice has been duly issued – Rule 23(e)(2) provides that the Court should then consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).[4]  Because these factors are satisfied here, final approval of the Settlement

and certification of the Settlement Class are both "likely," and preliminary approval is warranted.

> **1.      The Settlement Is the Product of Arm's-Length Negotiations Among Experienced Counsel and Is Based On a "Mediator's Proposal" Made By One of the Country's Leading Mediators of Complex Litigation**

As described above, the Settlement was achieved only after the parties' experienced

counsel – having investigated the claims and litigated a vigorously contested motion to dismiss –

participated in a thorough, arm's-length mediation process held under the auspices of a highly

experienced mediator of complex class actions.  "Where the proposed settlement appears to be the

product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

improperly grant preferential treatment to class representatives or segments of the class and falls

within the range of possible approval, preliminary approval is granted."  *In re NASDAQ Mkt.-*

*Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The Parties and their counsel were also knowledgeable about the strengths and weaknesses

of the case before reaching the agreement to settle.  As noted above, both Plaintiffs' Counsel firms

had conducted their own extensive investigations before filing their Complaints in the respective

Actions, including by collecting and analyzing large numbers of Oatly SEC filings, press releases

---

[4]      In deciding whether to grant final approval of the Settlement, the Court will also be asked to consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors, namely: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also* Rule 23(e)(2) advisory committee note to 2018 amendment (noting that Rule 23(e)(2) factors are not intended to "displace" any prior factors used by courts of appeals).

and conference call transcripts; reviewing numerous analyst reports and news stories about the Company, and also identifying, locating and interviewing various former Oatly employees. Lieberman Decl. at ¶11. In addition, Lead Counsel fully briefed and argued in opposition to Defendants' motions to dismiss, and – after preparing and filing the TAC (which included certain additional misrepresentation theories) – Plaintiffs' Counsel also engaged in further briefing of the relevant facts and law in the context of preparing Plaintiffs' mediation submissions. *Id.* As a result, Plaintiffs were well situated to assess the strength and weaknesses of each side's claims and defenses when they negotiated the Settlement. *Id.*

Plaintiffs' Counsel also respectfully submit that they have extensive experience in litigating securities class actions in this District and across the country, and that accordingly their belief that the proposed Settlement is in the best interests of the Settlement Class also weighs in support of granting preliminary approval. *See e.g. In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

In sum, that the Settlement is the product of arm's-length negotiations, was negotiated by experienced and informed counsel, and is based on the settlement proposal of a highly regarded Mediator, all confirm that the Settlement resulted from a procedurally fair process. *See In re Indep. Energy Holdings PLC Sec. Litig.,* No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29 2003) ("[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

### 2. The Settlement Provides Significant and Certain Benefits

The proposed Settlement creates a cash settlement fund of $9.25 million. As will be shown in greater detail prior to the Settlement Hearing, this recovery represents a meaningful and above-

average recovery in a case involving very substantial litigation risk.  *See* Lieberman Decl. at ¶¶15-22 (explaining risks of further litigation).

**Litigation Risk.**  Given the risks and challenges faced in the case, Plaintiffs and their Counsel believe that the proposed Settlement is in the best interests of the Settlement Class.  With respect to their Securities Act claims, Plaintiffs faced significant risks on the merits in seeking to prove that Defendants made any materially false or misleading statements in the Offering Documents.  Indeed, Defendants argued that most statements at issue were immunized from liability because they were mere puffery, protected "opinions," or inactionable "forward-looking" statements accompanied by meaningful cautionary language and risk warnings – and this Court had already dismissed many of Plaintiffs' Securities Act claims on these same grounds.  And even if Plaintiffs had been able to revive those claims in their re-pled TAC, there could be no assurance that the TAC would survive Defendants' renewed motions to dismiss (let alone summary judgment, trial and inevitable appeals).  Defendants also raised "negative causation" defenses that threatened to substantially reduce recoverable damages, including at least one that the Court found compelling at the motion to dismiss hearing.  Moreover, avoiding dismissal of (let alone proving) Plaintiffs' §10(b) claims under the Exchange Act – which the Court's order granting Defendants' motion to dismiss also largely dismissed – would have been even more difficult given §10(b)'s *scienter* and loss causation requirements.

On the merits, Plaintiffs' claims under the Securities and the Exchange Acts concerned three categories of alleged misleading statements:  (1) Defendants' statements about Oatly's retail market share and shelf space, which Plaintiffs claimed were misleading because they did not adequately disclose that prior to the IPO Oatly had been losing market share and retail shelf space to competitors in the U.S. and European markets; (2) Defendants' statements about their ability to

11

quickly ramp up production of Oatly products, which Plaintiffs' claimed were misleading because they did not disclose certain production problems that Oatly experienced prior to the IPO; and (3) Defendants' statements about having secured sufficient supplies of two key ingredients (oats and rapeseed oil), which Plaintiffs claimed were misleading because they did not disclose the likely adverse impact of rising futures prices for these commodities on Oatly's bottom line.

Plaintiffs would have faced significant challenges in proving the falsity of each of these categories of allegedly false statements. *First*, Defendants argued that Oatly had not suffered any material declines in retail shelf space or market share prior to the IPO, and that the risks of possible future declines were adequately disclosed in their public filings (citing, for example, the Offering Documents' discussion of Oatly's competitors and the specific risk of declining market share and loss of shelf space). Further, Defendants argued that any declines in market share and shelf space were limited to certain markets and Oatly products, and so were immaterial as a matter of law in light of Oatly's overall growth in topline revenues during the Class Period.

*Second*, Defendants argued that they did not make actionable statements about production matters sufficient to trigger an affirmative duty to disclose any alleged production problems – and that any general statements about Oatly's ability to ramp up future production were inactionable either under the Private Securities Litigation Reform Act ("PSLRA") safe harbor or the bespeaks caution doctrine. Defendants also pointed to facts indicating that any shutdowns at Oatly facilities were due to planned maintenance, and were thus inherently immaterial (as investors would expect periodic closures to conduct maintenance).

*Third*, Defendants argued that they had no duty to disclose rising futures prices for oats and rapeseed oil because the prices for these commodities were publicly available and, as such, investors would have understood that Oatly's future raw materials costs would likely increase.

12

*Fourth*, Defendants argued that Plaintiffs could not prove loss causation for their Exchange Act claims (and that Defendants would affirmatively disprove causation as to Plaintiffs' Securities Act claims) because all of the observed declines in Oatly's share price were caused by factors unrelated to the alleged misstatements, including, *e.g.,* COVID-19 pandemic lockdowns, which made it harder to ship Oatly products and kept customers away from coffee shops and other venues where many of its products were sold.

*Fifth*, pleading and proving *scienter* (*i.e.*, fraudulent intent) under Plaintiffs' §10(b) claims raised additional challenges. For example, although the two individual Exchange Act Defendants did sell portions of their personal holdings of Oatly shares during the Class Period, Defendants argued that their sales represented only a relatively small percentage of their total Oatly holdings – possibly undermining Plaintiffs' ability to plead or prove *scienter* on "motive and opportunity" grounds. In short, even if any of Plaintiffs' re-pled §10(b) claims survived dismissal under the PSLRA's heightened pleading standards, proving Defendants' *scienter* would likely have been particularly difficult here.

Further, even if Plaintiffs could show that any part of the Offering Documents was misleading, all Defendants (other than Oatly) would have argued that they were not liable because they conducted reasonable due diligence of the Offering Documents' accuracy and completeness.

**Ability to Pay Issues.** The Settlement is also reasonable in light of Oatly's financial condition as of the time it was negotiated. For example – although the maximum damages that could have theoretically been established at trial assuming Plaintiffs' complete success in establishing Defendants' Securities Act liability was over $500 million – as a practical matter there was no meaningful possibility of recovering that amount given that Oatly's ***total*** market

13

capitalization had fallen to less than $220 million in late October 2023 (when the Settlement was negotiated).  Lieberman Decl. at ¶23.

**The Amount Recovered.**  As discussed above at p.2, objective metrics confirm that the proposed $9.25 million recovery, recommended by the Mediator and obtained despite significant litigation risk, compares favorably to results obtained in other securities class actions in this Circuit.  This further supports a finding that it falls within the requisite "range of reasonableness."

In sum, the proposed $9.25 million Settlement represents a favorable "bird in the hand" in a case that involved both significant litigation and collectability risks, such that the Court should approve the issuance of notice and the scheduling of a final Settlement Hearing.

3.      **The Settlement Treats All Settlement Class Members Fairly**

The Settlement also does not improperly grant preferential treatment to the Plaintiffs.  Rather, all Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund pursuant to a plan of allocation to be approved by the Court.

At the final Settlement Hearing, Plaintiffs will ask the Court to approve the proposed Plan of Allocation (the "POA") as set forth in the Notice.  Lead Counsel developed the POA with their damages expert.  The POA calculates a Recognized Loss Amount for each purchase of Oatly ADSs during the Class Period, based on the statutory measure of damages under §11(e) of the Securities Act, which is appropriate because all those who purchased Oatly ADS during the relatively short Class Period here are able to "trace" their purchased ADS shares to the IPO.  By contrast, Claimants who purchased Oatly call options (or sold Oatly put options) during the Class Period will have their Recognized Loss Amounts on their option trades calculated based on the difference between the artificial inflation in the value of their options on the relevant dates of purchase and sale, consistent with traditional damages methodologies under §10(b) of the Exchange Act (because claims based on options trades can be brought only under §10(b)).  However, Recognized

Loss Amounts calculated on such trades will be discounted by 75% to reflect the inherently greater challenges of pleading and proving §10(b) claims (as compared to §11 claims).

Under the POA, the sum of a claimant's Recognized Loss Amounts shall be the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  The Claims Administrator will calculate claimants' Recognized Loss Amounts using the transaction information provided to it by claimants in their Claim Forms.  Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and wire transfers.  If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost effective. At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), as reflected in the Stipulation and approved by the Court.

The proposed POA is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Settlement Class Members, and merits approval at the Settlement Hearing.

**4.      The Settlement Does Not Excessively Compensate Plaintiffs' Counsel**

The proposed Settlement also does not grant excessive compensation to Plaintiffs' Counsel, and provides that Plaintiffs' Counsel will be compensated solely out of the Settlement Fund as may be approved by the Court after issuance of notice to the Settlement Class.

In connection with their forthcoming Fee and Expense Application, Lead Counsel will seek a fee of no more than 30% of the Settlement Fund for all Plaintiffs' Counsel – an amount that is well within the range that courts in the Second Circuit, including this Court, have approved in securities class actions with comparable recoveries.  *See, e.g.*, Order Awarding Attorneys' Fees and Expenses, *In re Genworth Fin., Inc. Sec Litig*, No. 1:14-cv-02392-AKH, at ¶3 (S.D.N.Y. Nov.

16, 2017) (Hellerstein, J.), ECF No. 178 (awarding 30% of $20 million settlement, plus expenses); Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses, *In re Tal Educ. Grp. Sec. Litig.*, No. 1:18-cv-5480-LAP-KHP, at ¶4 (S.D.N.Y. Nov. 30, 2021), ECF No. 90 (awarding one-third of $7.5 million settlement, plus expenses); Order Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs, *Ferraiori v. Triterras, Inc.*, No. 7:20-cv-10795-CS, at ¶4 (S.D.N.Y. Sept. 8, 2022), ECF No. 82 (awarding one-third of $9 million settlement, plus expenses); Final Judgment and Order of Dismissal, *In re Pareteum Sec. Litig.*, No. 1:19-cv-09767-AKH-GWG, at ¶17 (S.D.N.Y. May 3, 2023) (Hellerstein, J.), ECF No. 293 (awarding 30% of $5.6 million settlement, plus expenses).  Similarly, published analysis of all PSLRA settlements from 1996 through 2023 confirms that the median attorney's fee awarded in securities class actions that settled for between $5 million and $10 million has remained in a consistent range of 30%.  *See* E. Flores & S. Starykh, *Recent Trends In Securities Class Action Litig.: 2023 Full-Year Review,* NERA ECON. CONSULTING at 29, fig. 25 (Jan. 23, 2024), available at https://www.nera.com/content/nera/us/en/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html#download.  Plaintiffs' Counsel will also seek payment of their reasonable litigation expenses incurred in connection with the institution, prosecution, and resolution of the Actions, in an amount not to exceed $135,000.  In addition, pursuant to the PSLRA and practice in this Circuit, Plaintiffs will also seek a reasonable reimbursement for their time and expenses incurred in connection with the Actions, not to exceed $15,000, in total.

Lead Counsel's Fee and Expense Application will be filed with the Court, and, as required by the Preliminary Approval Order, all supporting papers will be posted on a website (the "Settlement Website") where Settlement Class Members can review them.  By granting

preliminary approval, the Court will not in any way pass upon the reasonableness of the Fee or Expense Application, which will be decided *de novo* at the Settlement Hearing.

### B.    The Proposed Settlement Class Satisfies Rule 23

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" grant certification to the proposed Settlement Class for purposes of the Settlement at final approval. FED. R. CIV. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Parties for purposes of this Settlement, consists of:

> (i) all persons who purchased or acquired Oatly American Depositary Shares (Oatly ADS) between May 20, 2021 and November 15, 2021, inclusive (*i.e.*, the Class Period), or otherwise pursuant to Oatly's Offering Documents, and were damaged thereby (the "ADS Class"); and (ii) all Persons who purchased or acquired call options on Oatly ADS or sold put options on Oatly ADS during the Class Period or otherwise pursuant to Oatly's Offering Documents and were damaged thereby (the "Options Class," and with the ADS Class, the "Settlement Class").

Stipulation ¶ 1.40.[5]

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014). Certification of a settlement class "has been recognized throughout the country as the best, most practical way

---

[5]    Excluded from the Settlement Class are: (i) Defendants; (ii) their respective successors and assigns; (iii) the past and current executive officers and directors of Oatly; (iv) Nativus Company Limited (and any of its subsidiaries and affiliates) and China Resources Verlinvest Health Investment Ltd. (and any of its subsidiaries and affiliates); (v) the Underwriter Defendants; (vi) the Immediate Family Members of the Individual Defendants and of Oatly's past and current executive officers and directors; (vii) the legal representatives, heirs, successors, and assigns of any excluded Person or entity; (viii) any entity in which any of the above excluded Persons have or had a controlling interest; and (ix) the legal representatives, heirs, successors-in-interest or assigns of any such excluded Person, provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded from the Settlement Class are any Persons who exclude themselves by submitting a timely request for exclusion in accordance with the requirements set forth in the Notice. Stipulation ¶ 1.40.

to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As shown below, all applicable requirements of Rule 23(a) and Rule 23(b)(3) are met here.

### 1.    The Settlement Class Satisfies the Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of [those] of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *See* FED. R. CIV. P. 23(a).

### a)    Numerosity

In this Circuit, numerosity is presumed when a class consists of 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). To satisfy numerosity, plaintiffs need not provide "a precise calculation of the number of class members," but instead "may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class." *Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000). Accordingly, "courts in this district have certified plaintiff classes based on the volume of outstanding shares." *Pa. Ave. Funds v. Inyx Inc.*, No. 08 Civ. 6857(PKC), 2011 WL 2732544, at *3 (S.D.N.Y. July 5, 2011).

18

Over 84 million Oatly ADS were sold in the IPO, and Oatly ADSs were actively traded on the NASDAQ during the Class Period.  Lieberman Decl. at ¶15.  Numerosity is thus readily established here.  *See, e.g.*, *Inyx*, 2011 WL 2732544, at *3 (certifying class where 27 million shares of common stock were outstanding during class period).

### b) Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  Securities class actions like this one easily satisfy commonality, which is met where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions."  *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see In re Globalstar*, No. 01 Civ. 1748(PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading [and] whether those statements violated the federal securities laws"); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, the common questions of law and fact include:

- Whether the offering materials for Oatly's IPO and post-IPO statements contained false or misleading statements;

- Whether any of alleged misstatements would be material to a reasonable investor;

- Whether Defendants could establish their affirmative defense of "negative causation" by showing that declines in prices of Oatly ADSs resulted from a cause other than the alleged misstatements;

- Whether Defendants other than Oatly could establish a "due diligence" defense; and

- The extent of damage sustained by Settlement Class members and the appropriate measure of damages.

Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### c)      Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  FED. R. CIV. P. 23(a)(3).  Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *accord Pfizer*, 282 F.R.D. at 44; *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304-05 (S.D.N.Y. 2010).  "Typical" does not mean "identical."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).  The critical question is whether the proposed class representatives and the class can point to a common "course of conduct" by defendants to support a claim for relief.  *Id.*  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct."  *Id.*

Here, the alleged injuries to Plaintiffs and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories.  As such, each of the Plaintiffs "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006).  The typicality requirement is, therefore, satisfied.  *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all

class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

### d) Adequacy

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Adequacy of representation is measured by two standards: (i) whether the claims of the proposed class representatives conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at \*15 (S.D.N.Y. Mar. 24, 2014). Both prongs of the adequacy test are met here.

*First*, there is no conflict of interest between Plaintiffs and the proposed Settlement Class. Plaintiffs and Settlement Class Members purchased Oatly ADS or call options (or sold put options on Oatly ADSs) during the Class Period, and were all injured by the same alleged false statements. If Plaintiffs prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Thus, the interests of Plaintiffs and the other members of the Settlement Class are aligned, and they share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *Drexel*, 960 F.2d. at 291); *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 264-65 (S.D.N.Y. 2012) (lead plaintiff adequately represented settlement class of consisting of both (a) purchasers of publicly traded common stock and (b) purchasers of call options and/or sellers of put options).

*Second*, Plaintiffs have shown their commitment to this case by retaining qualified counsel to vigorously litigate it, as both Lead Counsel Scott+Scott and additional Plaintiffs' Counsel Robbins Geller have extensive experience litigating securities class actions. *See* www.scott-scott.com (summarizing Scott+Scott's experience); www.rgrdlaw.com (summarizing Robbins Geller's experience). Accordingly, Rule 23(a)(4)'s adequacy requirements are satisfied.

### 2.       The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The proposed Settlement Class meets these requirements.

#### a)       Predominance

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *Id.* This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem,* 521 U.S. at 625.

Here, the core factual and legal questions in both Actions are common to all Settlement Class Members: "(i) was there an untrue statement or omission?; and (ii) if so, was it objectively material?" *See, e.g.*, *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 238 (S.D.N.Y.

2015); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008) (existence of "alleged misrepresentations and/or omissions [is] susceptible to generalized proof").

<b>b)    Superiority of Class Action to Other Methods of Adjudication</b>

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3).

Here, there is no evidence that putative Settlement Class Members desire to bring separate individual actions, as none have done so, and the Parties are unaware of any individual securities fraud litigation involving the same issues. Furthermore, it is desirable to concentrate the claims in this Court as Oatly's ADS shares traded on the NASDAQ, which is located in this District, this Court is already familiar with the factual and legal issues in the case, and approval of the Settlement here will also resolve all claims in the parallel State Action. Finally, since this is a request for class certification only for purposes of settlement, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with

23

reasonable efforts, as well as posting the Notice and the Claim Form on a website to be developed for the Settlement.[6]  The Claims Administrator will utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.  The Notice will advise Settlement Class Members of: (i) the pendency of the Actions; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses.  The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.  In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *The Wall Street Journal* and transmitted over a national newswire service.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).  The Notice contains all of the specific information required by Rule 23(c)(2)(B), S.D.N.Y. Local Rule 23.1, and the PSLRA, and will "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.  The manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g.*, *City of Providence v. Aeropostale*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *2 (S.D.N,Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*,

---

[6]    Plaintiffs request that the Court approve the retention of Gilardi as the claims administrator for this case.  Gilardi has successfully administered numerous complex securities class action settlements in this District and elsewhere.

607 F. App'x 73 (2d Cir. 2015); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

Accordingly, Plaintiffs respectfully submit that the proposed Notice Plan be approved.

## V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule for Settlement-related events as set forth in Appendix A.  If the Court agrees with the proposed schedule, Plaintiffs request that Court schedule the Settlement Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VI.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement; (ii) certify the Settlement Class for purposes of settlement; (iii) approve the proposed form and manner of notice to putative Settlement Class Members; (iv) appoint Gilardi as the Claims Administrator; and (v) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated:  February 16, 2024

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

By: */s/ William C. Fredericks*
DAVID R. SCOTT
WILLIAM C. FREDERICKS
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Tel:  212/233-6444
Fax:  212/233-6334
david.scott@scott-scott.com
wfredericks@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
JACOB B. LIEBERMAN
156 South Main Street
Colchester, CT  06415
Tel: 860/537-5537
Fax: 860/537-4432
jlieberman@scott-scott.com

*Lead Counsel for Federal Plaintiffs and the Proposed Class*

**ROBINS GELLER RUDMAN & DOWD LLP**
SAMUEL H. RUDMAN
MICHAEL G. CAPECI
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Additional Counsel for Plaintiffs*

26

# Appendix A

## Proposed Schedule of Settlement Events

| **Event** | **Proposed Timing** |
| --- | --- |
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶9) | No later than 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶11) | No later than 10 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 27) | 46 calendar days after the Notice Date |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 15, 16) | 60 calendar days after the Notice Date |
| Deadline for filing reply papers (Preliminary Approval Order ¶18) | 7 calendar days before the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Postmark deadline for submitting Claim Forms (Preliminary Approval Order ¶14(a)) | 90 calendar days after the Notice Date |