**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re OATLY GROUP AB SECURITIES LITIGATION | Consolidated Civil Action No.<br><br>1:21-CV-06360-AKH |

**DECLARATION OF JACOB B. LIEBERMAN IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND**
**APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

1.      I, Jacob B. Lieberman, am a partner in the law firm of Scott+Scott Attorneys at Law LLP ("Scott+Scott").  Scott+Scott is the Court-appointed lead counsel for the Court-appointed lead plaintiff, Mario Bello, in the above-captioned action (the "Federal Action"). Scott+Scott is also counsel for the additional plaintiffs in the Federal Action, Mark D. Hayden, and Kai Jochim.  I have personal knowledge of the matters stated in this declaration based on my active participation in the prosecution and settlement of the Federal Action.

2.      I respectfully submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the proposed $9,250,000 settlement of this class action, pursuant to the Stipulation of Settlement (the "Stipulation"), attached hereto as **Exhibit 1**.  **Exhibit A** to the Stipulation is the [Proposed] Order Granting Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order").  As detailed more fully herein and in Plaintiffs' Memorandum of Law in Support of Plaintiffs Unopposed Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class, attached to the proposed Preliminary Approval Order as **Exhibits 1**, **2** and **3** are, respectively: (1) the proposed Notice of Settlement (the "Notice"), to be mailed to all Settlement Class members and nominees who can be identified and located with reasonable efforts; (2) the proposed Proof of Claim and Release

1

form ("Proof of Claim"), which would also be mailed with the Notice to all class members and nominees; and (3) the proposed Summary Notice ("Summary Notice").[1]

## I.    INTRODUCTION

3.    The Settlement, which has been reached on behalf of a class of investors (the "Settlement Class," as defined in the Stipulation) in the securities of Oatly Group AB ("Oatly") was reached only after arm's-length negotiations conducted under the auspices of a highly experienced mediator, and if approved would settle all claims at issue in both this Action and a related class action, *Hipple v. Oatly Group AB, et al.*, Index No. 151432/2022 (Supr. Ct. N.Y. Cty), that is pending in New York state court state (the "State Action").[2]

4.    The Settlement represents an excellent result for the Settlement Class that readily meets the standard for preliminary approval.  The $9.25 million recovery is in line with the median $9 million settlement for all settled securities class actions in the Second Circuit between 2013 and 2022, *See* L. Bulan & L. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, Cornerstone Research, at 19, Appendix 3 (2023), available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.  As further discussed below, the Settlement is also noteworthy considering not only the significant risks of litigation, but also the financial condition of Oatly, whose stock price had fallen to less than 50 cents per ADS share at the time that the settlement was negotiated (compared to its IPO price of $17).  In sum, there were real risks here that no recovery, or a much smaller recovery, would have resulted had Plaintiffs continued to pursue

---

[1]    All capitalized terms not otherwise defined in this memorandum have the meanings given them in the Stipulation.

[2]    By order of the State Court dated May 19, 2022, proceedings in the State Action (which asserts only claims under the Securities Act) have been stayed pending resolution of the parallel Securities Act claims in this Action.

litigation. Moreover, the proposed Settlement was negotiated by experienced plaintiffs' counsel who had conducted an extensive factual investigation, and it was reached only after arm's-length negotiations conducted under the auspices of a highly respected mediator of securities class actions, the Hon. Layn Phillips (U.S.D.J., ret.) – indeed, the $9.25 Settlement Amount reflects Judge Phillips' "mediator's proposal" for a fair and reasonable global settlement all claims. All of these factors provide further strong support for granting preliminary approval.

## II.    RELEVANT PROCEDURAL HISTORY

### A.    The Federal Action

5.    On July 26, 2021, plaintiff Jochim filed the first complaint in this Action. ECF No. 1. Additional complaints were then filed by two other investors. *See Bentley v. Oatly Group AB*, 21-cv-6485 (AKH) (S.D.N.Y.) and *Kostendt v. Oatly Group AB*, 21-cv-7904 (AKH) (S.D.N.Y.). Pursuant to an Order dated October 26, 2021, Mr. Jochim filed an amended complaint on December 1, 2021. ECF Nos. 29, 31. On December 6, 2021, the Court consolidated the various other related actions that had been filed in this Court, and appointed Mario Bello as lead plaintiff ("Lead Plaintiff") and Scott+Scott as lead counsel ("Lead Counsel") in the resulting consolidated Federal Action. ECF No. 37.

6.    On March 4, 2022, Federal Plaintiffs filed their Consolidated Amended Complaint (ECF No. 64) and, after seeking and obtaining leave to file a further pleading, filed their Second Amended Complaint (the "SAC") on August 17, 2022. ECF No. 76. On June 1, 2023, following oral argument on the federal Defendants' motion to dismiss the SAC, the Court dismissed the SAC with leave to replead (except with respect to Federal Plaintiffs' claims under §12(a)(2) of the Securities Act, which the Court dismissed with prejudice). ECF No. 87. On August 11, 2023, Federal Plaintiffs filed their Third Amended Complaint (the "TAC"), which is the operative pleading in the Federal Action. ECF No. 91.

**B.        The State Action**

7.        On February 15, 2022, plaintiff Hipple, represented by Robbins Geller Rudman & Dowd LLP ("State Counsel," and with Lead Counsel, "Plaintiffs' Counsel"), filed a putative class action in the State Court against certain Defendants alleging violations of the Securities Act on behalf of investors who purchased Oatly ADS pursuant or traceable to the Offering Documents for Oatly's IPO.  NYSCEF No. 1.  On May 19, 2022, the State Court granted Defendants' motion to stay the State Action pending this Court's resolution of the parallel Securities Act claims asserted in this Action.  NYSCEF No. 55.

**C.        The Mediation Under the Auspices of Judge Phillips (ret.)**

8.        In the summer of 2023, Plaintiffs, Oatly, and the Individual Defendants agreed to explore a global resolution of the Actions and retained Layn Phillips (U.S.D.J., ret.), a highly experienced mediator of complex shareholder matters (the "Mediator").  *See also In re Signet Jewelers Ltd. Sec. Litig.,* No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (McMahon, C.J.) (describing Judge Phillips as an "experienced and well-regarded mediator of complex securities cases").  The Court thereafter granted the Parties' requests to extend the existing deadline for briefing Defendants' anticipated renewed motions to dismiss, so as to allow the Parties sufficient time to adequately explore the possibility of a mediated settlement.  ECF Nos. 95, 97, 99.

9.        As part of the mediation process that followed, in September 2023, both Plaintiffs and Oatly prepared and provided to the Mediator (and exchanged with each other) comprehensive confidential mediation statements setting forth their respective positions, and both sides engaged in separate pre-mediation discussions to address particular issues raised by the Mediator.  Thereafter, on October 26, 2023, counsel for Plaintiffs and for Oatly attended an all-day, in-person mediation in New York under the auspices of the Mediator.  *Id.*

10.    Near the end of this in-person mediation session, and in an effort to bridge the significant gap that still remained between the Parties, Mediator Phillips made a "mediator's proposal" to settle all claims at issue for $9.25 million, subject to resolution of certain remaining non-monetary terms.  Shortly thereafter, Plaintiffs and Oatly agreed to accept the Mediator's proposal for a $9.25 million settlement, subject to resolution of certain non-monetary terms.  Oatly and Plaintiffs thereafter signed a binding Memorandum of Understanding ("MOU") on October 26, 2023, subject to certain board approvals that have since been obtained, that reflected the material terms of the Settlement, with the understanding that such terms would thereafter be embodied in the terms of a customary Stipulation of Settlement (and accompanying exhibits) that would be submitted to this Court for its approval.  During the negotiation of the MOU, the Plaintiffs suggested that – and all Parties thereafter agreed – that the Underwriter Defendants become parties to the Stipulation (even though all claims against them would, in any event, have been dismissed under the releases agreed to as part of the MOU).  The Stipulation and exhibits thereto reflect the superseding, final, and binding agreement among all Parties to settle, compromise and resolve all of the Released Claims, subject to Court approval.

## III.    PLAINTIFFS' INVESTIGATION AND THE BENEFITS OF SETTLEMENT

11.    Lead Counsel represents that they have conducted an extensive investigation of the claims and the underlying events and transactions alleged in the Federal Action, and State Counsel represents that they have done the same in the State Action.  Among other things, Lead Counsel and State Counsel both represent that they have analyzed extensive public filings, records, analyst reports, news reports, and other materials concerning Oatly and its business, and have researched the applicable law with respect to the claims of Plaintiffs and the Settlement Class against Defendants and the potential defenses thereto.  This process included collecting and analyzing large numbers of Oatly SEC filings, press releases and conference call transcripts;

reviewing numerous analyst reports and news stories about the Company, and also identifying, locating and interviewing various former Oatly employees.  In addition, Lead Counsel fully briefed and argued in opposition to Defendants' motions to dismiss, and – after preparing and filing the TAC (which included certain additional misrepresentation theories) – Plaintiffs' Counsel also engaged in further briefing of the relevant facts and law in the context of preparing Plaintiffs' mediation submissions.  As a result, Plaintiffs were well situated to assess the strength and weaknesses of each side's claims and defenses when they negotiated the Settlement.

12.    Based on this investigation and review, and as further discussed below, Plaintiffs and their counsel in both Actions believe that the proposed $9.25 million Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and propose to settle the claims raised in the Actions pursuant to the terms of the Stipulation, after considering (a) the substantial and certain benefits that Plaintiffs and the Settlement Class will receive from settlement of the Actions; (b) the significant risks, costs, and uncertainties of further litigation; and (c) weighing the pros and cons of the proposed Settlement in light of the Mediator's recommendation and Plaintiffs' Counsel's own experience in the prosecution of similar actions.

13.    For their part, Defendants deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever; maintain that they have meritorious defenses to all claims alleged in the Actions, and have stated that they have entered into the proposed Settlement solely to eliminate the distraction, burden, and expense of further protracted litigation.

## IV.    THE SETTLEMENT PROVIDES SIGNIFICANT AND CERTAIN BENEFITS

14.    The proposed Settlement creates a cash settlement fund of $9.25 million.  As will be shown in greater detail prior to the Settlement Hearing, this recovery represents a meaningful recovery in a case involving very substantial litigation risk.

**A.      Litigation Risk**

15.      Given the risks and challenges faced in the case, Plaintiffs and their Counsel believe that the proposed Settlement is in the best interests of the Settlement Class.  Under the Securities Act, Plaintiffs faced significant risks on the merits in seeking to prove that Defendants made any materially false or misleading statements in the Offering Documents, which were issued in connection with selling over 84 million Oatly ADS as party of the Company's IPO.[3] Indeed, Defendants argued that most statements at issue were immunized from liability because they were mere puffery, protected "opinions," or inactionable "forward-looking" statements accompanied by meaningful cautionary language and risk warnings – and this Court had already dismissed many of Plaintiffs' Securities Act claims on these same grounds.  And even if Plaintiffs had been able to revive those claims in their re-pled TAC, there could be no assurance that the TAC would survive Defendants' renewed motions to dismiss (let alone summary judgment, trial, and inevitable appeals).  Defendants also raised "negative causation" defenses that threatened to substantially reduce recoverable damages, including at least one that the Court found compelling at the motion to dismiss hearing.  Moreover, avoiding dismissal of (let alone proving) Plaintiffs' §10(b) claims under the Exchange Act – which the Court's order granting Defendants' motion to dismiss also largely dismissed – would have been even more difficult given §10(b)'s *scienter* and loss causation requirements.

16.      On the merits, Plaintiffs' claims under the Securities and the Exchange Acts concerned three categories of alleged misleading statements: (1) Defendants' statements about Oatly's retail market share and shelf space, which Plaintiffs claimed were misleading because they did not adequately disclose that prior to the IPO Oatly had been losing market share and

---

[3]      Oatly ADS were actively traded on the NASDAQ during the Class Period.

retail shelf space to competitors in the U.S. and European markets; (2) Defendants' statements about their ability to quickly ramp up production of Oatly products, which Plaintiffs' claimed were misleading because they did not disclose certain production problems that Oatly experienced prior to the IPO; and (3) Defendants' statements about having secured sufficient supplies of two key ingredients (oats and rapeseed oil), which Plaintiffs claimed were misleading because they did not disclose the likely adverse impact of rising futures prices for these commodities on Oatly's bottom line.

17.    Plaintiffs would have faced significant challenges in proving the falsity of each of these categories of allegedly false statements.  *First*, Defendants argued that Oatly had not suffered any material declines in retail shelf space or market share prior to the IPO, and that the risks of possible future declines were adequately disclosed in their public filings (citing, for example, the Offering Documents' discussion of Oatly's competitors and the specific risk of declining market share and loss of shelf space).  Further, Defendants argued that any declines in market share and shelf space were limited to certain markets and Oatly products, and so were immaterial as a matter of law in light of Oatly's overall growth in topline revenues during the Class Period.

18.    *Second*, Defendants argued that they did not make actionable statements about production matters sufficient to trigger an affirmative duty to disclose any alleged production problems – and that any general statements about Oatly's ability to ramp up future production were inactionable either under the Private Securities Litigation Reform Act ("PSLRA") safe harbor or the bespeaks caution doctrine.  Defendants also pointed to facts indicating that any shutdowns at Oatly facilities were due to planned maintenance, and were thus inherently immaterial (as investors would expect periodic closures to conduct maintenance).

19.    *Third*, Defendants argued that they had no duty to disclose rising futures prices for oats and rapeseed oil because the prices for these commodities were publicly available and, as such, investors would have understood that Oatly's future raw materials costs would likely increase.

20.    *Fourth*, Defendants argued that Plaintiffs could not prove loss causation for their Exchange Act claims (and that Defendants would affirmatively disprove causation as to Plaintiffs' Securities Act claims) because all of the observed declines in Oatly's share price were caused by factors unrelated to the alleged misstatements, including, *e.g.,* COVID-19 pandemic lockdowns, which made it harder to ship Oatly products and kept customers away from coffee shops and other venues where many of its products were sold.

21.    *Fifth*, pleading and proving *scienter* (*i.e.*, fraudulent intent) under Plaintiffs' §10(b) claims raised additional daunting challenges.  For example, although the two individual Exchange Act Defendants did sell portions of their personal holdings of Oatly shares during the Class Period, Defendants argued that their sales represented only a relatively small percentage of their total Oatly holdings – possibly undermining Plaintiffs' ability to plead or prove *scienter* on "motive and opportunity" grounds.  In short, even if any of Plaintiffs' re-pled §10(b) claims survived dismissal under the PSLRA's heightened pleading standards, proving Defendants' *scienter* would likely have been particularly difficult here.

22.    Further, even if Plaintiffs could show that any part of the Offering Documents was misleading, all Defendants (other than Oatly) would have argued that they were not liable because they conducted reasonable due diligence of the Offering Documents' accuracy and completeness.

**B.     Oatly's Ability to Pay**

23.     The Settlement is also reasonable in light of Oatly's financial condition as of the time it was negotiated.   For example, although the maximum damages that could have theoretically been established at trial assuming Plaintiffs' *complete success* in establishing Defendants' Securities Act liability was over $500 million dollars, as a practical matter there was no meaningful possibility of recovering that amount given that Oatly's *total* market capitalization had fallen to less than $220 million in late October 2023 (when the Settlement was negotiated).

I declare under the penalty of perjury that the foregoing is true and correct.

DATED:  February 16, 2024

Jacob B. Lieberman (Atty Bar No. JL-2728)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone: 860-537-5537
Facsimile:  860-537-4432

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                    s/ *Jacob B. Lieberman*
                    Jacob B. Lieberman