UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | x |  |
| In re OATLY GROUP AB SECURITIES LITIGATION | : | Consolidated Civil Action No. |
|  | : | 1:21-cv-06360-AKH |
|  | : |  |
|  | x |  |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
David R. Scott
William C. Fredericks
The Helmsley Building
230 Park Ave, 17th Floor
New York, NY 10169

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Jacob B. Lieberman
156 South Main Street
Colchester, CT  06415

*Lead Counsel for Federal Plaintiffs and the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Samuel H. Rudman
Michael G. Capeci
58 South Service Road, Suite 200
Melville, NY  11747

*Additional Counsel for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.............................................3

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS.....................................................................................................4

        A.      The Law Favors and Encourages Settlements ...........................................4

        B.      The Settlement Meets the Standard of Being "Fair, Reasonable and
                Adequate" ...................................................................................................4

                1.      The Settlement Satisfies the Requirements of Rule 23(e)(2)......................6

                        a.      Plaintiffs and Plaintiffs' Counsel Have Adequately
                                Represented the Settlement Class .....................................6

                        b.      The Proposed Settlement Was Negotiated by Experienced
                                Counsel at Arm's Length Before an Experienced Mediator............7

                        c.      The Proposed Settlement Is Adequate in Light of the
                                Litigation Risks, Costs, and Delays of Trial and Appeal.................8

                                (1)     The Risks of Establishing Liability at Trial........................8

                                (2)     The Risks of Establishing Damages at Trial.......................9

                                (3)     The Settlement Eliminates the Additional Costs and
                                        Delay of Continued Litigation ...........................................10

                        d.      The Proposed Method for Distributing Relief Is Effective............11

                        e.      Plaintiffs' Counsel's Request for Attorneys' Fees Is
                                Reasonable ...............................................................12

                        f.      The Parties Have No Other Agreements Besides Opt-Outs ..........13

                        g.      The Settlement Ensures Settlement Class Members Are
                                Treated Equitably...........................................................13

                2.      The Settlement Satisfies the Remaining *Grinnell* Factors .........................14

                        a.      The Lack of Objections Supports Final Approval .........................14

                        b.      Plaintiffs Had Sufficient Information to Make an Informed
                                Decision Regarding the Settlement...............................................14

        c.      Defendants' Ability to Withstand a Greater Judgment ................... 15

        d.      The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation ............................... 16

IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ........................................ 17

V.      NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS .................................................................................. 18

VI.    CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................4, 10, 17

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................16

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................8

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................10, 15, 16

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)...............................................................................18

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) .......................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................8, 12, 13, 17

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019).........................................................6

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................................................14, 15

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)...................................................................................6

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).....................................................................................7

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...........................................................................1, 4, 5

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) .........................................................................21

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).......................................................10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018).......................................................................... *passim*

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...................................................................8

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...............................................................10

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................6, 8, 16

*In re GSE Bonds Antitrust Litig.*,
  2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...............................................................14

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).................................................................11

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178(S.D.N.Y. 2012) ..............................................................................9, 17

*Martignago v. Merrill Lynch & Co.*,
  2013 WL 12316358 (S.D.N.Y. Oct. 3, 2013).................................................................15

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)....................................................................4

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................................19

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ..............................................................9, 12

*Moses v. New York Times Co.*,
  79 F. 4th 235 (2d Cir.2023) ...........................................................................................6

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)..........................................................................................16

*Padro v. Astrue*,
  2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013)................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................17, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)......................................................................................5

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)..........................................................................4

*Rodriguez v. CPI Aerostructures, Inc.*,
  2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)...................................................................5, 8, 20

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y July 21, 2020) ..................................................................7, 8, 17

*Snyder v. Ocwen Loan Servicing, LLC*,
  2019 WL 2103379 (N.D. Ill. May 14, 2019) ...........................................................................6

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...........................................................................16

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................................................10

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................................10

*Vargas v. Cap. One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014). .............................................................................................19

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)...........................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................................................14, 19

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .......................................................................6, 14

**Rules**

Fed. R. Civ. P. 23(a)(2)....................................................................................................................4

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................18, 20

Fed. R. Civ. P. 23(e) .....................................................................................................................5, 18

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................................18

Fed. R. Civ. P. 23(e)(2)............................................................................................................ *passim*

Fed. R. Civ. P. 23(e)(2)(A) .............................................................................................................6

Fed. R. Civ. P. 23(e)(2)(B) .............................................................................................................7

Fed. R. Civ. P. 23(e)(2)(C)(i)...............................................................................................8, 11

Fed. R. Civ. P. 23(e)(2)(C)(ii)..................................................................................................11

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(iv).................................................................................................13

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................................................13

Fed. R. Civ. P. 23(e)(3)............................................................................................................13

**Other Authority**

*2023 Full-Year Review*, NERA ECON. CONSULTING (Jan. 23, 2024) ................................................3

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this memorandum of law in support of their motion for final approval of (a) the proposed $9,250,000 global Settlement (the "Settlement"), which will settle all claims asserted in both this action and the related State Action, and (b) the Plan of Allocation.[1]

## I.    INTRODUCTION

Plaintiffs' $9.25 million recovery is the result of their hard work and diligence in pursuing the complex securities claims at issue, and was only reached following arm's-length settlement negotiations overseen by a nationally respected mediator.  The Settlement represents a very good result for the Settlement Class in a case involving considerable litigation risk, and merits approval under all relevant approval factors set forth in Rule 23(e)(2) factors and in the Second Circuit's decision in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The gravamen of Plaintiffs' claims was that Defendants misrepresented and omitted material facts in the Registration Statement for Oatly's May 20, 2021 initial public offering ("IPO") and in subsequent public statements related to alleged problems that faced the Company's oatmilk manufacturing efforts, alleged declines in Oatly's market share and shrinking shelf-space at leading retailers, and adverse trends in the prices for its most important raw ingredients.  While Plaintiffs believe in the merits of their claims, Defendants had strong arguments that none of the statements at issue were actionably false or misleading, and were instead inactionable statements of mere opinion or "puffery," or were otherwise immunized from liability by Defendants' risk disclosures.  *See, e.g.*,

---

[1]    All capitalized terms not otherwise defined herein shall have the meanings given them in the Stipulation of Settlement dated February 15, 2024 (the "Stipulation"), which was previously filed in connection with Plaintiffs' motion for preliminary approval of settlement.  ECF No. 103-1.

Joint Decl., ¶¶54-56.[2]  Indeed, the Court's May 2023 MTD Order – which dismissed the Second Amended Complaint in its entirety (albeit with leave to replead) – is an indication that simply getting this case past the motion to dismiss stage was far from assured.  Moreover, even had this case proceeded through discovery, summary judgment and trial, Defendants also had credible arguments that any a fraction of the alleged damages suffered by the Settlement Class were due to any alleged misrepresentation, as opposed to being caused by unrelated COVID and competition-related declines in Oatly's business.  Nor could there be any assurance that – even if Plaintiffs were to succeed in winning a large plaintiffs' verdict after years of litigation – that such a judgment would be collectable against Oatly; indeed, the Company's financial condition has declined significantly, with the price of its ADS shares (which had traded above $20 per ADS during the Class Period) currently trading at little more than $1 dollar per ADS.  *See id.* at ¶¶57-62.

As detailed in the Joint Declaration, Plaintiffs and their counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement.  For example, prior to agreeing to settle, Plaintiffs' Counsel, *inter alia*, conducted a comprehensive factual investigation of the claims; fully briefed Defendants' motion to dismiss the Second Amended Complaint in this Action; prepared and filed a further Third Amended Complaint (following further investigatory work); consulted with their retained damages and loss causation expert; and participated in formal mediation process under the auspices of the Hon. Layn Phillips (U.S.D.J., ret.), which included preparation and exchange of detailed mediation submissions and a full-day in

---

[2]   References to "Joint Declaration" or "Joint Decl." are to the Declaration of Jacob B. Lieberman and Michael G. Capeci in Support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4), submitted herewith.

person mediation session with Judge Phillips.  Further confirming the fairness, reasonableness, and adequacy of the Settlement is the fact that, even though the Court had dismissed the Second Amended Complaint, according to published research the $9.25 million Settlement Amount is in line with the median securities class action settlement for cases that have settled in the past several years. *See, e.g.,* Edward Flores, et al., *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, NERA ECON. CONSULTING, at 20 fig.19 (Jan. 23, 2024), https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html.

Pursuant to the Court's Preliminary Approval Order (ECF No. 109), nearly 33,000 Claims Packets have been sent to potential Class Members and nominees, and publication notice has been made via the *Business Newswire* and *The Wall Street Journal*.  *See* Joint Decl. at Ex. 1, accompanying Declaration of Ross D. Murray ("Murray Decl."), dated May 31, 2024.  Additionally, the Claims Administrator reports that over 97,000 Claims Packets have been, or will be, sent to Settlement Class Members via e-mail.  Although the deadline for filing objections has not yet passed, to date no objections (or even requests for exclusion) have been filed.[3]

In sum, as set forth herein, the $9.25 million Settlement (as well as the accompanying Plan of Allocation) are fair, reasonable and adequate in all respects, and should be approved.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Joint Declaration for a summary of the factual background and procedural history of the Actions.  *See* Joint Decl., ¶¶12-42

---

[3]    Should any objections be received prior to the Fairness Hearing, Plaintiffs will address them in reply papers.

### III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

#### A. The Law Favors and Encourages Settlements

"Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462. *See also Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) (in deciding whether to approve a settlement, courts should not decide the final merits or resolve unsettled legal questions, particularly "in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

#### B. The Settlement Meets the Standard of Being "Fair, Reasonable and Adequate"

Pursuant to Rule 23(a)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

   (i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis"); *Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *28 (E.D.N.Y. Feb. 16, 2023) (same). The revisions to Rule 23(e)(2) were "not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes to 2018 Amendments, Subdivision (e)(2).

For a settlement to be deemed fair, reasonable, and adequate, courts "must consider the four factors outlined in Rule 23(e)(2) holistically." *Moses v. New York Times Co.*, 79 F. 4th 235, 243 (2d Cir.2023). However, "'[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013) (second and third alterations in original); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (Courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching.'"). Moreover, the fact that the Settlement has already passed muster following this Court's prior review of its terms at the preliminary approval stage strongly suggests that the Settlement is fair and reasonable. *See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

### 1. The Settlement Satisfies the Requirements of Rule 23(e)(2)

#### a. Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Settlement Class

The determination of adequacy under Rule 23(e)(2)(A) "typically 'entails inquiry as to whether: 1) [P]laintiff's interests are antagonistic to the interest[s] of other members of the class and 2) [P]laintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Plaintiffs' interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Settlement Class. Plaintiffs, like all other Settlement Class

Members, purchased Oatly ADS and/or purchased call options on Oatly ADS or sold put options on Oatly ADS pursuant to an allegedly false and misleading Registration Statement. Plaintiffs have "claims that are typical of and coextensive with those of other Class Members and ha[ve] no interests antagonistic to those of other Class Members. Like other Class Members, Lead Plaintiff has an interest in obtaining the largest possible recovery from Defendants." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y July 21, 2020). And each Plaintiff has attested to their efforts to try to represent the Settlement Class to the best of their ability. *See* Join Decl. at Exs. 4-7.

Finally, it is respectfully submitted that Plaintiffs' Counsel here – Lead Counsel Scott+Scott Attorneys at Law LLP and additional counsel Robbins Geller Rudman & Dowd LLP – are well-known and highly experienced securities class action counsel, and that their work in this matter (as detailed in the Joint Decl.) is further confirmation of the vigorous representation that Plaintiffs and the Settlement Class had here. *See* Joint Decl., ¶¶15-42; Joint Decl. at Exs. 2-3.

**b.      The Proposed Settlement Was Negotiated by Experienced Counsel at Arm's Length Before an Experienced Mediator**

Plaintiffs also plainly satisfy Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, with no hint of collusion. Joint Decl., ¶¶34-40. Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd sub nom. In re Facebook Inc.*, 822 F. App'x 40 (2d Cir. 2020); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's

involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

### c. The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* Factors overlap, as they address the substantive fairness of the Settlement in light of the risks posed by continuing litigation. *Rodriguez*, 2023 WL 2184496, at *29. As set forth below, these factors weigh in favor of final approval.

### (1) The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459. As a preliminary matter, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval. Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts, . . . "have long recognized that such litigation is notably difficult and notoriously uncertain."'" *Signet*, 2020 WL 4196468, at *4; *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). Although Plaintiffs and Plaintiffs' Counsel firmly believe the claims asserted in the Actions are meritorious, and that they would prevail at trial, further litigation against the Defendants posed risks that made any recovery uncertain.

As set forth above and in the Joint Declaration, at the time of the Settlement, the Second Amended Complaint in the Federal Action had been dismissed without prejudice and Defendants were set to move to dismiss the Third Amended Complaint. As in moving to dismiss the Second Amended Complaint, Defendants vigorously contested their liability and have denied and continue

to deny each and every claim and allegation of wrongdoing. Among other things, Defendants were prepared to argue that the Third Amended Complaint constituted a puzzle pleading. Defendants were further prepared to argue that the statements in the Third Amended Complaint were not actionable because they constitute opinion statements, puffery, or both, and that Plaintiffs failed to adequately allege scienter. Finally, Defendants were prepared to argue that none of the corrective disclosures identified in the Third Amended Complaint suffice to adequately allege loss causation. *See* Joint Decl., ¶¶53-59.

In short, it was far from certain that Plaintiffs would be able to prove liability for the alleged misstatements and omissions from the Registration Statement for Oatly's IPO through motion to dismiss, summary judgment and trial.

### (2)    The Risks of Establishing Damages at Trial

The risks of establishing liability apply with equal force to establishing damages. Here, Defendants argued that Plaintiffs had not adequately alleged (and could not prove) that Plaintiffs or the Settlement Class suffered legally cognizable damages.

Had litigation continued, Plaintiffs would have relied heavily on expert testimony to establish loss causation and damages, likely leading to a battle of the experts at trial and *Daubert* challenges. As courts have long recognized, the substantial uncertainty as to which side's experts' views might be credited by a jury presents a serious litigation risk. *See Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021) ("Both parties would present expert testimony on the issue of damages, which makes it 'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities

class actions often descend into a battle of experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) ("'[i]n this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found'"). If the Court determined that one or more of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove.

Thus, in light of the very significant risks Plaintiffs faced at the time of the Settlement with regard to establishing liability and damages, this factor weighs heavily in favor of final approval.

**(3)      The Settlement Eliminates the Additional Costs and Delay of Continued Litigation**

The anticipated complexity, cost, and duration of continued litigation would be considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"). Securities cases like this one are by their nature complicated, and district courts in this Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). Indeed, if not for the Settlement, the Actions would have continued to Defendants' anticipated motion to dismiss. If any claims survived, subsequent motion(s) for summary judgment, as well as the preparation for what would likely be a multi-week trial, and the inevitable appeals that would follow, would have caused the Actions to persist for years before the class could possibly receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Settlement Class compared to the immediate, certain monetary benefits of the Settlement. *See Strougo v. Bassini*, 258 F. Supp. 2d

254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* Factors, all weigh in favor of final approval.

### d. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Plaintiffs and Plaintiffs' Counsel have taken appropriate steps to ensure that the Settlement Class is notified about the Settlement. Pursuant to the Preliminary Approval Order, nearly 33,000 Claims Packets were mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See* Murray Decl., ¶¶10-11. Notice has also been provided by e-mail, where possible. *Id.*, ¶10. Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶13. And, as instructed by the Court, a link to the Settlement's website has been included on Oatly's investor-relations webpage. Joint Decl., ¶46. Class Members have until June 17, 2024 to object to the Settlement and to request exclusion from the Settlement Class. While the objection and exclusion date has not yet passed, so there are no objections to the adequacy of the Settlement or requests for exclusion.

The proceeds of this Settlement will be distributed with the assistance of an experienced claims administrator. Settlement Class Members have until July 25, 2024, to submit Proofs of

Claim. The claims process is similar to that typically used in securities class action settlements, and provides for straightforward cash payments based on trading information provided by claimants. Settlement Class Members will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each claimant's *pro rata* portion of the Net Settlement Fund. *See* Joint Decl., ¶64-68. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id.*. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*. This claims process will "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Mikhlin*, 2021 WL 1259559, at *6; *see also Christine Asia*, 2019 WL 5257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective"). This factor therefore supports final approval.

### e. Plaintiffs' Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the Notice, and as discussed in Plaintiffs' Counsel's accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Memorandum"), Plaintiffs' Counsel seek an award of attorneys' fees in the amount of 30% of the Settlement Amount, and expenses in the amount of $99,849.14, in addition to interest on both amounts, to be paid at the time of award. As set forth in the accompanying Fee

Memorandum, this request is squarely in line with fee awards in this Circuit in similarly-sized securities class actions, and is both fair and reasonable.

### f. The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). Here, the parties have entered into a supplemental agreement providing that, in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold, Oatly has the option to terminate the Settlement. As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Class. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *See Christine Asia*, 2019 WL 5257534, at \*15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### g. The Settlement Ensures Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether Settlement Class Members are treated equitably. As discussed below in §IV, Plaintiffs' Counsel developed the Plan of Allocation in consultation with their damages consultant to treat Settlement Class Members equitably relative to each other by: (i) taking into account the timing of their Oatly ADS purchases and sales and/or their purchases of call options on Oatly ADS or sales of put options on Oatly ADS; and (ii) providing that each Authorized Claimant shall receive his, her, its, or their *pro rata* share of the Net Settlement Fund based on their recognized losses. Plaintiffs are subject to the same formula for distribution of

- 13 -

the Net Settlement Fund as every other Settlement Class Member.  This factor therefore merits

granting final approval of the Settlement.

Based on the foregoing, Plaintiffs and Plaintiffs' Counsel respectfully submit that each of the

Rule 23(e)(2) factors support granting final approval of the Settlement.

### 2. The Settlement Satisfies the Remaining *Grinnell* Factors

#### a. The Lack of Objections Supports Final Approval

The reaction of the class to the settlement "is considered perhaps 'the most significant factor

to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL

4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "'"absence of objections may itself be taken

as evidencing the fairness of a settlement."'" *City of Providence v. Aeropostale, Inc.*, 2014 WL

1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d

Cir. 2015).  "'A favorable reception by the Class constitutes "strong evidence" that a proposed

settlement is fair.'" *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *2 (S.D.N.Y. June 16,

2020).  "'If only a small number of objections are received, that fact can be viewed as indicative of

the adequacy of the settlement.'" *Wal-Mart*, 396 F.3d at 118.

The deadline to submit objections is June 17, 2024; to date none have been filed.  This

positive reaction of the Settlement Class supports approval of the Settlement.  *See Yuzary*, 2013 WL

5492998, at *6 (the "favorable response" from the class "demonstrates that the class approves of the

settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelmingly

positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

#### b. Plaintiffs Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* Factor, "'the question is whether the parties had adequate

information about their claims such that their counsel can intelligently evaluate the merits of

- 14 -

[P]laintiff['s] claims, the strengths of the defenses asserted by defendants, and the value of [P]laintiff['s] causes of action for purposes of settlement.'" *Bear Stearns*, 909 F. Supp. 2d at 267; *Martignago v. Merrill Lynch & Co.*, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'").

Plaintiffs and Plaintiffs' Counsel had sufficient information to assess the adequacy of the Settlement. As detailed in the Joint Declaration, Plaintiffs and Plaintiffs' Counsel negotiated the Settlement only after conducting over one year of hard-fought litigation against determined adversaries. Plaintiffs' Counsel conducted a robust pre-filing investigation; prepared an initial and several amended complaints; thoroughly opposed Defendants' motion to dismiss the Second Amended Complaint; and participated in arm's-length settlement discussions with Defendants, overseen by an experienced and nationally renowned mediator, which ultimately resulted in the Settlement. *See* Joint Decl., ¶¶15-42 (history of litigation), ¶¶51-63 (risks of litigation).

Accordingly, Plaintiffs and Plaintiffs' Counsel "developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial." *Aeropostale*, 2014 WL 1883494, at *7 (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)).

### c. Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval. Even if Defendants could have withstood a greater judgment, a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9

- 15 -

(courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Here, Oatly's deteriorating financial condition is another factor supporting approval of the Settlement. *See* Joint Decl., ¶62.

### d.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("[T]he certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery.").

Here, "[b]ecause [Plaintiffs face] serious challenges to establishing liability, consideration of Plaintiff['s] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* Factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery"). Here, Defendants were adamant that Plaintiffs had suffered no damages.

Moreover, the $9.25 million Settlement Amount "was agreed upon only after careful consideration, both by competent Lead Counsel and by [a neutral mediator]" – all of whom concluded the Settlement represented a very good recovery for the Settlement Class in light of the substantial litigation risks Plaintiffs faced.  *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiffs' potential recovery," such a recovery is within "the range of reasonableness" where "the risk[s] of a zero – or minimal – recovery scenario are real").  This factor weighs in favor of final approval.

In sum, both the Rule 23(e)(2) factors and the *Grinnell* Factors, individually and collectively, weigh strongly in favor of the Court's approval of the Settlement.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

If the Court approves the proposed Settlement, upon completion of the claims administration process, the Net Settlement Fund will be distributed to Authorized Claimants according to the Plan of Allocation set forth in the Notice.  The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "fair, reasonable, and adequate." *Signet*, 2020 WL 4196468, at *13.  "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.  A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable.  *IMAX*, 283 F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical

precision." *PaineWebber*, 171 F.R.D. at 133.  Courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among . . . class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

Here, as set forth in the Notice and as discussed by Lead Counsel with the Court (ECF No. 107), the Plan of Allocation was prepared with the assistance of Plaintiffs' Counsel's damages consultant and has a rational basis, as it is tied to Plaintiffs' theories of liability and damages.  Joint Decl., ¶¶64-67.  *See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness").  This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that are approved for payment from the Net Settlement Fund under the Plan of Allocation.  The Plan of Allocation treats all Settlement Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise exclude himself, herself, itself, or themselves from the Settlement Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.  *See* Murray Decl., Ex. A (Notice) at 9-12; *see also* Joint Decl., ¶¶64-67.

## V.    NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B).  Notice of a settlement satisfies Rule 23(e) and due process

where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114; *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart*, 396 F.3d at 114).

The method used to disseminate notice to potential Settlement Class Members satisfy these standards. The Court-approved Notice amply informs Settlement Class Members of, among other things: (i) the pendency of the Actions; (ii) the nature of the Actions and the Settlement Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation; (v) Settlement Class Members' rights to request exclusion from the Settlement Class or object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Settlement Class Members; and (vii) information regarding Plaintiffs' Counsel's motion for an award of attorneys' fees and expenses. The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; (ii) requesting exclusion from the Settlement Class; and (iii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation and the request for attorneys' fees and expenses. *See* Murray Decl., Ex. A.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average-per-share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief

statement explaining the reasons why the parties are proposing the Settlement. *See* Murray Decl., Ex. A.

In accordance with the Preliminary Approval Order, Gilardi & Co LLC ("Gilardi"), the Court-approved Claims Administrator (ECF No. 108), commenced the mailing of the Claims Packets by First-Class Mail to potential Settlement Class Members, brokers, and nominees on April 18, 2024. As of May 31, 2024, nearly 33,000 Claims Packets have been mailed, and two institutions have reported to Gilardi that they anticipated sending electronic copies of Claim Packages via e-mail to over 97,000 potential Settlement Class Members. Murray Decl., ¶10. Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *PR Newswire*. *Id.*, ¶11. Additionally, Gilardi posted the Claims Packet, as well as other important documents, on the website established and maintained for the Settlement. *Id.*, ¶13.

The combination of individual First-Class Mail to all potential Settlement Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees, e-mail notice (where available), and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'"). Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions. *E.g.*, *Rodriguez*, 2023 WL 2184496, at *10, *25 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents

was "'the best notice practicable under the circumstances'"); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VI.    CONCLUSION

The $9.25 million Settlement obtained by Plaintiffs and Plaintiffs' Counsel represents a good recovery for the Settlement Class, particularly in light of the significant litigation risks Plaintiffs faced, including the very real risk of the Settlement Class receiving no recovery at all.  For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated:  June 3, 2024                    Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

By: *William C. Fredericks*
DAVID R. SCOTT
WILLIAM C. FREDERICKS
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Tel:  212/233-6444
Fax:  212/233-6334
david.scott@scott-scott.com
wfredericks@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

JACOB B. LIEBERMAN
156 South Main Street
Colchester, CT  06415
Tel: 860/537-5537
Fax: 860/537-4432
jlieberman@scott-scott.com

*Lead Counsel for Federal Plaintiffs and the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**

SAMUEL H. RUDMAN

- 21 -

MICHAEL G. CAPECI
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**

ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Additional Counsel for Plaintiffs*