UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  | | |
|---|---|---|
|  | x | |
| In re OATLY GROUP AB SECURITIES LITIGATION | : | Consolidated Civil Action No. |
| | : | 1:21-cv-06360-AKH |
| | : | |
| | x | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO PLAINTIFFS PURSUANT TO 15 U.S.C. §77z-1(a)(4)

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
David R. Scott
William C. Fredericks
The Helmsley Building
230 Park Ave, 17th Floor
New York, NY 10169

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Jacob B. Lieberman
156 South Main Street
Colchester, CT  06415

*Lead Counsel for Federal Plaintiffs and the
Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Samuel H. Rudman
Michael G. Capeci
58 South Service Road, Suite 200
Melville, NY  11747

*Additional Counsel for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     HISTORY OF THE LITIGATION AND WORK PERFORMED.....................................2

III.    ARGUMENT.......................................................................................................3

        A.      Plaintiffs' Counsel Is Entitled to an Award of Attorneys' Fees and
                Expenses from the Common Fund................................................................3

        B.      The Court Should Award a Reasonable Percentage of the Common Fund.............4

        C.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
                the-Fund Method.....................................................................................5

        D.      The Relevant *Goldberger* Factors Support the Requested Fee...............................7

                1.      The Risks of the Litigation .........................................................7

                        a.      Risks of Establishing Liability.........................................9

                        b.      Risks Related to Discovery, Trial and Post-Judgment
                                Matters ....................................................................10

                        c.      Collectability Risks....................................................11

                2.      The Magnitude and Complexity of the Litigation ...................................11

                3.      The Quality of Representation...................................................11

                4.      Public Policy Considerations...................................................12

                5.      Time and Labor Expended by Counsel........................................13

                6.      The Requested Fee in Relation to the Size of the Settlement....................14

        E.      Application of a "Lodestar Cross-Check" Also Strongly Supports The
                Reasonableness of the Requested Fee...................................................14

IV.     PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF THEIR
        LITIGATION EXPENSES SHOULD BE APPROVED ..................................................17

V.      EACH PLAINTIFF MERITS A MODEST $3,500 AWARD..........................................17

VI.     CONCLUSION...................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ................................................................15

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................................................5

*In re Am. Realty Cap. Props., Inc. Litig.*,
No. 15-MC-40 (AKH) (S.D.N.Y. Jan. 23, 2019).......................................................15

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 4th 74 (2d Cir. 2023).............................................................................................9

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013).........................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985).............................................................................................4, 13

*In re Bayer AG Sec. Litig.*,
2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) .........................................................11

*In re BHP Billiton Ltd. Sec. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019).............................................................6

*In re Bisys*,
2007 WL 2049726 (S.D.N.Y. July 16, 2007)......................................................12, 16

*Blum v. Stenson*,
465 U.S. 886 (1984)...................................................................................................5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................3

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) .........................................................17

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..........................................................11

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015)........................................................18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................................................................................7

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................3, 5, 15

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
2021 WL 2736135 (S.D.N.Y. June 30, 2021) ........................................................18

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................................14

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) .......................................................14

*Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...................................................................................8

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 20, 2011) ......................................................16

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) ..........................................................16

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................................7, 12, 17

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022).........................................................15

*Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir. 2019)........................................................................................3

*In re Genworth Fin., Inc. Sec Litig.*,
No. 1:14-cv-02392-AKH (S.D.N.Y. Nov. 16, 2017)................................................6

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................5

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................. *passim*

*In re GSE Bonds*,
2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...........................................7, 12, 16

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) ................................................................................4

*Hicks v. Stanley*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................................4

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ..................................................................................17

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
   2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ........................................................................6

*Jenkins v. Nat'l Grid USA Serv. Co.*,
   2022 WL 2301668 (E.D.N.Y. June 24, 2022) .........................................................................6

*Kaess v. Deutsche Bank AG*
   No. 09-cv-01714 (GHW) (RWL) (S.D.N.Y. June 11, 2020) .................................................15

*Lopez v. Fashion Nova*,
   2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) .......................................................................16

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...............................................................................5, 13

*In re Marsh ERISA Litig.*,
   265 F.R.D. (S.D.N.Y. 2010) ................................................................................................12

*Micholle v. Ophthotech Corp.*,
   2022 WL 16571095 (S.D.N.Y. Sept. 16, 2022) ......................................................................6

*Nichols v. Noom, Inc.*,
   2022 WL 2705354 (S.D.N.Y. July 12, 2022) ..................................................................4, 5, 6

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009) .........................................................................9

*In re Pareteum Sec. Litig.*,
   No. 1:19-cv-09767-AKH-GWG (S.D.N.Y. May 3, 2023) ......................................................6

*In re Parking Heaters, Antitrust Litig.*,
   2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) ........................................................................4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ....................................................................................5

*In re Perrigo Co. PLC Sec. Litig.*,
   2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ...........................................................................6

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...........................................................................6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) .................................................................................7

*In re Qudian Inc. Sec. Litig.*,
   2021 WL 2328437 (S.D.N.Y. June 8, 2021) ................................................................18

*Tchrs.' Ret. Sys. of Louisiana v. A.C.L.N.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) .............................................................12

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999).........................................................................................5

*Spicer v. Pier Sixty LLC*,
   2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012).............................................................16

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................................................4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007).......................................................................................................4

*In re Vaxart, Inc. Sec. Litig.*,
   No. 3:20-cv-05949-VC, ECF No. 274 (N.D. Cal. Jan. 25, 2023)...............................15

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..................................................... *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................4, 5, 16

## Other Authority

*2023 Full-Year Review*, NERA ECON. CONSULTING, fig.25 (Jan. 23, 2024),
   https://www.nera.com/insights/publications/2024/recent-trends-in-securities-
   class-action-litigation--2023-full-y.html....................................................................7

Plaintiffs' Counsel respectfully submit this memorandum in support of their motion for an award of attorneys' fees and expenses for their work on behalf of the Settlement Class in the above-captioned litigation, and for awards of $3,500 to each of the Plaintiffs for their service to the Class.[1]

## I.    INTRODUCTION

Through their efforts, which were undertaken on a fully contingent basis, Plaintiffs' Counsel have secured a $9.25 million Settlement for the Class that will globally resolve all claims brought against all Defendants both here and in the related State Action.  As further detailed in the accompanying Final Approval Brief, the Settlement represents a good recovery for the Class in a case that involved very significant litigation and collectability risks, and where several of the specific challenges to establishing liability had already been flagged by the Court's earlier MTD Order dismissing the Second Amended Complaint.  And while other counsel might have been discouraged by the Court's MTD Order, Plaintiffs' Counsel diligence in preparing a further expanded Third Amended Complaint was able to bring Oatly and its well-respected counsel to the bargaining table, and to deliver a meaningful settlement on behalf of the Settlement Class.

Based on the work performed and the success achieved in the face of significant risk, Plaintiffs' Counsel respectfully request an award of attorneys' fees equal to 30% of the Settlement Fund.  As set forth below, the requested 30% fee is squarely in the center of the range of percentage-based fees awarded by federal courts in comparably sized securities class action settlements.  The relevant discretionary fee award factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), also strongly support the requested fee.  Significantly, the requested fee (which

---

[1]    All capitalized terms not otherwise defined herein have the meanings given to them in the accompanying Joint Declaration of Jacob Lieberman and Michael Capeci (the "Joint Decl."), or in the Stipulation of Settlement dated February 15, 2024 (the "Stipulation") that was previously filed in connection with Plaintiffs' preliminary approval motion at ECF No. 103-1.

equates to roughly $2.775), if granted in in full, would also result in only a modest lodestar multiplier of 1.26 on the lodestar value of Plaintiffs' Counsel time ($2,197,595.50) incurred on this matter through preliminary approval. Plaintiffs' Counsel also respectfully submit that their request for reimbursement of litigation expenses reasonably incurred in the amount of $99,840.14 should be granted, and that each of the four Plaintiffs merits a relatively modest $3,500 award for their time and effort representing the Settlement Class.[2]

## II.    HISTORY OF THE LITIGATION AND WORK PERFORMED

The claims asserted and counsel's work in prosecuting them is detailed in the accompanying Joint Declaration. *See* Joint Decl. ¶¶12-42. In sum, the work performed by Plaintiffs' Counsel included (1) conducting a thorough investigation of potential claims against Defendants (which involved (a) reviewing and analyzing Oatly's filings with the United States Securities and Exchange Commission ("SEC"); (b) identifying and reviewing copies of Oatly's press releases and statements made to investors on conference calls and at investor conferences; (c) collecting and analyzing Wall Street analyst reports and other publicly available news media reports about Oatly and the industry within which it operated; (c) collecting and analyzing additional investigative materials, which included identifying and contacting former Oatly employees as well as personnel in certain local government offices regarding alleged problems that Oatly faced in connection with its efforts to expand its production facilities in the U.S.; and (d) researching the applicable law with respect to the claims of Plaintiffs and the Settlement Class against Defendants and the potential defenses thereto);

---

[2]    Plaintiffs' Counsel also note that even though as of May 31, 2024, nearly 33,000 copies of the Notice have been mailed to potential Settlement Class Members and nominees – and even though the Notice specifically advised each Settlement Class Member that Plaintiffs' Counsel would seek up to a 30% fee and expenses of up to $135,000 (plus total service awards of $14,000 to Plaintiffs) – to date *no* objections have been received. Joint Decl. ¶¶90, 94, 97. Should any objections be received after the filing of this brief, Plaintiffs' Counsel will address them in reply papers.

(2) preparing and filing detailed complaints in both Actions; (3) researching and preparing (by Lead Counsel) of Plaintiffs' papers in opposition to Defendants' motions to dismiss in the Federal Action; (4) working together (following Lead Counsel's and State Counsel decision to join forces in the summer of 2023) to further research and prepare the Third Amended Complaint in this Action; (5) retaining and consulting with an experienced expert in the areas of causation and damages; (6) preparing detailed mediation statements and related submissions, and participating in the full-day, in person mediation session; (7) negotiating the detailed terms of the Stipulation of Settlement and the numerous exhibits thereto; and (8) obtaining preliminary approval of the Settlement. *See* Joint Decl. ¶¶12-42, 81.

### III.    ARGUMENT

#### A.    Plaintiffs' Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of [a class] is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019). The purpose of this rule is to fairly compensate class counsel for services rendered and ensure that all class members share the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have also recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund will encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, thereby discouraging future alleged misconduct of a similar nature. *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015);

- 3 -

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2. Indeed, the Supreme Court has emphasized that private securities class actions, as here, provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (internal quotes and citation omitted); *accord Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007). In short, fairly compensating counsel for the risks undertaken on a contingent basis in successfully pursuing securities litigation is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.    The Court Should Award a Reasonable Percentage of the Common Fund**

Courts routinely find that awarding attorneys fees' based on a reasonable percentage-of-the-fund is the preferred method to determine such fees because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."); *see also Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) ("'The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (quoting *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019)). This approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system

- 4 -

typically used in the market to compensate attorneys in non-class contingency cases.[3]  *See also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (approving use of common fund doctrine, where "a reasonable fee is based on a percentage of the fund bestowed on the class.").

By contrast, the Second Circuit has noted that use of the alternative lodestar method has "proved vexing" and resulted in "an inevitable waste of judicial resources."  *Goldberger*, 209 F.3d at 48-49 (approving use of percentage-of-the-fund method, although lodestar method may also be used); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").  Unsurprisingly, since *Goldberger,* the Second Circuit has also noted that the "trend in this Circuit is toward the percentage method."  *Wal-Mart Stores*, 396 F.3d at 121; *see also Noom*, 2022 WL 2705354, at *10; *City of Providence*, 2014 WL 1883494, at *11-*12.[4]

Accordingly, the Court should apply the percentage-of-the-fund method here.

**C.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

The requested 30% fee is well within the range of percentage fees awarded by courts within the Second Circuit – including by this Court – in other comparable complex cases.  *See, e.g.*, Order

---

[3]     *See also, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . .  The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel.").

[4]     The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. §77z-1(a)(6).  *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Awarding Attorneys' Fees and Expenses, *In re Genworth Fin., Inc. Sec Litig.*, No. 1:14-cv-02392-AKH, at ¶3 (S.D.N.Y. Nov. 16, 2017) (Hellerstein, J.), ECF No. 178 (awarding 30% of $20 million settlement, plus expenses); *In re Pareteum Sec. Litig.*, No. 1:19-cv-09767-AKH-GWG, at ¶17 (S.D.N.Y. May 3, 2023) (Hellerstein, J.), ECF No. 293 (awarding 30% of $5.6 million settlement, plus expenses); *Micholle v. Ophthotech Corp.*, 2022 WL 16571095, at *1 (S.D.N.Y. Sept. 16, 2022) (awarding 30% of $29 million settlement); *Jenkins v. Nat'l Grid USA Serv. Co.*, 2022 WL 2301668, at *3-*5 (E.D.N.Y. June 24, 2022) (awarding fee of approximately 30% of $38.5 million settlement); *Noom*, 2022 WL 2705354, at *10 (awarding fee of one-third of $56 million settlement fund, finding "fee equal to one-third of a settlement fund is routinely approved in this Circuit"); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (awarding 33-1/3% of $31.9 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *16-*17 (E.D.N.Y. Jan. 21, 2022) (noting a one-third fee "constitutes a proportion routinely approved as reasonable"); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (awarding one-third of $75 million recovery); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x. 17 (2d Cir. 2020), as amended (Mar. 17, 2020) (affirming 30% fee plus expenses on $50 million settlement fund).

Indeed, empirical research confirms that a 30% fee is not merely "within the range" of reasonable fees, but is in fact squarely in the very ***center*** of the range of fees awarded in securities class actions that have settled for comparable amounts. For example, an analysis by NERA Economic Consulting found that a 30% fee was the typical amount awarded in securities class actions during the period 1996 to 2023 where the total settlement amount was between $5 million and $25 million (as it is here). Edward Flores, et al., *Recent Trends in Securities Class Action*

*Litigation: 2023 Full-Year Review*, NERA Econ. Consulting, at 29 fig.25 (Jan. 23, 2024),

https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--

2023-full-y.html.

### D.      The Relevant *Goldberger* Factors Support the Requested Fee

All of the relevant Goldberger factors – which the Second Circuit has held should continue to

be considered in determining appropriate attorneys fees under the percentage-of-the-fund method –

also strongly support the award of a median 30% fee here.  The factors include:  (1) litigation risk;

(2) the magnitude and complexity of the litigation; (3) the quality of the representation; (4) public

policy considerations; (5) the time and labor expended by counsel; and (6) the requested fee in

relation to the settlement amount.  *See Goldberger*, 209 F.3d at 50.

In addition, application of a "lodestar crosscheck" here (which also arguably takes into

account factors (5) and (6) above) further supports the reasonableness of the requested 30% fee.

### 1.      The Risks of the Litigation

The risk undertaken in contingent litigation is often deemed the most important *Goldberger*

factor.  *Id.* at 54; *In re GSE Bonds*, 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020).  As the

Second Circuit has stated:

> No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success.  Nor, particularly in complicated
> cases producing large recoveries, is it just to make a fee depend solely on the
> reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Prudential Sec. Inc. Ltd. P'ships*

*Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the

attorney's contingent fee risk is an important factor in determining the fee award."); *In re FLAG*

*Telecom Holdings, Ltd. Sec. Litg.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award").  This risk encompasses not just the risk of receiving no payment whatever, but also the risk that a recovery, even if obtained, will still be insufficient to cover more than a fraction of the "successful" counsel's lodestar (*i.e.*, underpayment risk).  *See, e.g., Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (discussing need to consider underpayment risk).

From the outset, Plaintiffs' Counsel understood that they were embarking on complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the Actions would require.  Significantly, this was also not a case where Plaintiffs' Counsel could "piggyback" on the work of a government investigation or SEC charges, but rather had to (a) independently undertake the substantial time and expense to develop Plaintiffs' and the Class's claims, and (b) assume the significant obligations of ensuring that sufficient attorney and paraprofessional resources would continue to be dedicated to the case going forward.  Joint Decl. ¶¶82-83.

Plaintiffs' Counsel here undertook to pursue the Actions on a wholly contingent-fee basis, investing substantial time and money to prosecute risky claims with no guarantee of receiving any compensation, or even of recovering their expenses.  *Id.*  Although this matter was ultimately brought to a successful conclusion, such an outcome was far from assured.  As various courts have noted, "[t]here are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *See, e.g., Veeco*, 2007

WL 4115808, *6.[5]  And in this case, the Court's MTD Order that dismissed the Second Amended

Complaint made clear that there was nothing about this case to suggest that it was immune from the

kinds of risks that have frequently torpedoed other securities class actions.

### a.      Risks of Establishing Liability

As detailed in the accompanying Joint Declaration and the Settlement Memorandum,

Defendants raised numerous challenges on liability issues, beginning with their arguments that none

of the statements at issue in this case were false or misleading, and that they were under no duty to

make additional disclosures concerning manufacturing and production problems that they were

allegedly experiencing during the Class Period.  *See* Joint Decl. ¶¶51-59.

In addition, Defendants advanced colorable arguments that number of the challenged

statements in the Registration Statement were inactionable opinion statements or constituted

immaterial puffery.  For example, they contended that Oatly's statements about the demand for the

Company's products were mere opinions and/or insufficiently specific to be objectively verifiable.

As they had done in moving to dismiss the Second Amended Complaint, Defendants would also

have argued that the Third Amended Complaint did not adequately allege that Oatly had a duty to

disclose the extent to which the Company was at risk from rising futures prices for oats and rapeseed

oil (because the prices for these commodities were publicly available), and that the Company's "risk

---

[5]      It is wrong to presume that law firms handling complex contingent cases always win.  There are numerous class actions where counsel expended thousands of hours and yet received no remuneration despite their hard work.  *See, e.g.*, *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 4th 74 (2d Cir. 2023) (class decertified after more than 12 years of litigation and appellate review, where plaintiffs' counsel had incurred nearly $7 million in expenses and worked over 115,000 hours equalling roughly $68 million in uncompensated lodestar time); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (affirming summary judgment for defendants after eight years of litigation, after plaintiff's counsel had incurred over $7 million in expenses roughly $40 million in uncompensated lodestar time).

disclosures" immunized it from claims that it had misrepresented the condition of business (including with respect to allegedly declining retail shelf space or market share).  Further, Defendants argued that any undisclosed declines in Oatly's market share and shelf space were limited to certain markets and products, and were thus immaterial as a matter of law in light of Oatly's overall growth in topline revenues during the Class Period.  Joint Decl. ¶¶53-56.

As further discussed in the Joint Declaration, with respect to the 1934 Act claims asserted Oatly would have also argued that the Third Amended Complaint's *scienter* allegations were not materially different from those in the Second Amended Complaint that the Court had previously dismissed.  And Defendants also raised various causation-related defenses, which threatened to significantly reduce recoverable damages, as Defendants would have had arguments that a material portion of investor losses suffered during the Class Period were attributable not to any misstatements or omissions, but to COVID and unrelated setbacks suffered by Oatly as it tried to compete in highly competitive markets (across three continents) for non-dairy substitutes for milk, ice cream and other food products.  Joint Decl. ¶¶57-58.

**b.      Risks Related to Discovery, Trial and Post-Judgment Matters**

Assuming that Plaintiffs made it past dismissal, discovery would have also involved heightened risks and challenges because Oatly is a foreign-based company, whose production facilities were located on three continents.  While obtaining discovery directly from Oatly under the Federal Rules might not have posed undue problems, obtaining relevant information (in the form of documents and/or testimony) from former employees and relevant third parties (such as Oatly customers) who are located overseas is invariably challenging and often unsuccessful, even after spending much time and money.  Accordingly, Plaintiffs' Counsel faced heightened procedural risks, as compared to purely domestic cases, in trying to obtain access to all relevant evidence that might

have been needed to prevail at summary judgment and trial, assuming that the case survived dismissal. *Id.* at ¶¶60-61.

### c.    Collectability Risks

Finally, even if Plaintiffs were to "run the table" on liability, and also able to prevail on all relevant causation issues so as to obtain a nominally large damages verdict, collectability here was never assured; indeed, as of late May 2024 Oatly ADS shares were trading at barely a $1.00 per ADS, compared to prices of well above $20 per ADS during the Class Period.  Joint Decl. ¶62.

In short, the array of significant litigation risks that Plaintiffs' Counsel faced in achieving the $9.25 million settlement strongly supports the requested fee.

### 2.    The Magnitude and Complexity of the Litigation

It is widely recognized that "shareholder actions are notoriously complex and difficult to prove." *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) (same). This case was no exception.

As discussed immediately above, this case involved numerous complex liability and damages questions, and would have likely involved an overlay of additional significant discovery complexities arising from the fact that Oatly is a foreign-based company and that relevant witnesses and evidence are located on three continents.  In addition, the case would have almost certainly required extensive use of experts on both liability and damages questions, giving rise to inherently challenging "battles of the experts."  Accordingly, this factor also supports the requested 30% fee

### 3.    The Quality of Representation

Plaintiffs' Counsel respectfully submit that the quality of the representation here is best evidenced by the quality of the result achieved, particularly in the face of significant litigation risk.

*See, e.g.*, *FLAG Telecom*, 2010 WL 4537550, at *28; *In re Bisys*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007). In addition, as set forth in their respective firm's declarations, both Scott+Scott and RGRD are nationally-recognized leaders in securities class action and other complex litigation, and have substantial experience litigating and trying securities class actions in courts throughout the country. *See* Joint Decl. ¶¶85-86; Joint Decl. at Ex. 2 ("S+S Fee Decl."), Ex. C; Joint Decl. at Ex. 3 ("RGRD Fee Decl."), Ex. D. Recognizing also that the $9.25 million Settlement is attributable entirely to the diligence, hard work and skill Plaintiffs' Counsel – who researched and developed the claims at issue without the benefit of any parallel government investigations or charges – this factor also strongly supports the requested fee. *See Tchrs.' Ret. Sys. of Louisiana v. A.C.L.N.*, 2004 WL 1087261, at *6 (S.D.N.Y. May 14, 2004).

Finally, courts also recognize that the quality of the opposition faced by plaintiff's counsel is a factor in assessing the quality of counsel's performance. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. at 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a fee award was that defendants were represented by "one of the country's largest law firms"). Here, Oatly was represented by Latham & Watkins LLP, a nationally recognized defense firm. That Plaintiffs' Counsel were able to secure the Settlement in the face of such formidable opposing counsel is a further fact that weighs in favor of the requested fee.

### 4. Public Policy Considerations

Strong public policy considerations also favor rewarding firms for bringing successful securities litigation. *See In re GSE Bonds*, 2020 WL 3250593, at *5 ("Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in

the future."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *see also Bateman Eichler*, 472 U.S. at 310 (citing importance of private securities class actions in providing "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). Accordingly, this factor also supports the requested fee.

### 5. Time and Labor Expended by Counsel

Plaintiffs' Counsel expended substantial effort pursuing the Actions on behalf of the Settlement Class – totaling in excess of 2,400 hours of work with a "lodestar" value of roughly $2,197,595.50 – to develop, litigate and ultimately settle the claims at issue. Joint Decl. ¶81. As detailed in the Joint Declaration, this work included conducting an extensive factual investigation into the underlying facts; drafting a series of successively more detailed initial and subsequent amended complaints; briefing Defendants' motion to dismiss the Second Amended Complaint in the Federal Action; preparing the Third Amended Complaint; preparing for and participating in a thorough arm's-length mediation process (which included the preparation of multiple mediation briefs and related submissions); negotiating and drafting the Stipulation and exhibits thereto; preparing the Plan of Allocation in consultation with their damages experts (and defending certain allocation issues relating to option investors at the preliminary approval stage); and obtaining preliminary approval of the Settlement. *See generally* Joint Decl. ¶¶15-42, 81.

Plaintiffs' Counsel also note that their reported hours and lodestar figures include only time spent through the date the Court issued its preliminary approval order, and therefore do ***not*** include time spent on the preparation of either Plaintiffs' Final Approval Memorandum (or on any matters relating to the preparation of this brief or counsel's supporting fee materials). Moreover, Plaintiffs'

Counsel will necessarily expend additional time assisting Settlement Class Members with completing Claim Forms and supervising the claims administration process.

Accordingly, the "time and labor" factor also supports the requested fee.

### 6.   The Requested Fee in Relation to the Size of the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech., Inc. Sec. Litig.,* 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010). As discussed in Section III.C, *supra*, the requested 30% fee is well within the range of percentage fees that this Court and other courts have awarded in comparably sized securities cases, and is in fact (according to published research) *precisely equal* to the median fee awarded in securities class action cases over recent decades that have settled (as here) for between $5 and $25. Accordingly, the requested 30% fee is plainly reasonable in relation to the size of the Settlement.[6]

### E.   Application of a "Lodestar Cross-Check" Also Strongly Supports The Reasonableness of the Requested Fee

When using the percentage-of-the-fund method, courts also frequently perform a "lodestar cross-check" in order "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). When performing a "cross-check" review, "the hours documented by counsel need not be

---

[6]   Courts also consider the reaction of the class in weighing fee requests. As of May 31, 2024, copies of the Notice have been mailed to over 32,927 potential Settlement Class Members and nominees, which advised them that Plaintiffs' Counsel intended to apply for an award of attorneys' fees of up to 30% of the Settlement Fund (plus expenses). *See* Joint Decl. at Ex. 1 (Declaration of Ross D. Murray). Although the time to object to the fee request does not expire until June 17, 2024, to date no objections to the Fee and Expense Application have been received. Should any ultimately be received prior to the Fairness Hearing, Plaintiffs' Counsel will address them in reply papers.

exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Instead, the court

performs the following basic two-part analysis:

> [F]irst, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work.

*City of Providence*, 2014 WL 1883494, at *13.

Plaintiffs' Counsel have spent, in the aggregate, 2,403 hours on this matter, producing a total

lodestar amount of $2,197,595.50 when multiplied by counsel's billing rates. *See* S+S Fee Decl. ¶4;

RGRD Fee Decl. ¶4.[7] The 30% attorneys' fees requested by counsel here equates to roughly

$2,775,000. When compared to Plaintiffs' Counsel aggregate total lodestar of $2,197,585.50, the

resulting "lodestar multiplier" comes out to only a modest multiplier of 1.26x.

---

[7] Although a court may consider the reasonability of counsel's rates in conducting a lodestar cross-check, in doing so it should take into account the attorneys' professional reputation and experience, as well as rates charged by other practitioners in the field. Here, Plaintiffs' Counsel are experienced securities practitioners with a track record of success, and the reasonableness of their billing rates is confirmed by their having been accepted for lodestar cross-check purposes in other contingent class action cases, including by this Court. *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) ("The Court finds [] billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); Hr'g Tr. at 160:22-24, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40 (AKH) (S.D.N.Y. Jan. 23, 2019) (Hellerstein, J.) ("I find your lodestar reasonable, the rates appropriate and, in relationship to the work that you did, reasonable.") (relevant portions are attached as Ex. 8 to the Joint Declaration); Hr'g Tr. at 25:12-16, *Kaess v. Deutsche Bank AG*, No. 09-cv-01714 (GHW) (RWL) (S.D.N.Y. June 11, 2020) ("I find that these billable rates based on the timekeeper's title, specific years of experience, and market rates for similar professionals in its fields . . . to be reasonable in this context.") (relevant portions are attached as Ex. 9 to the Joint Declaration); *In re Vaxart, Inc. Sec. Litig.*, No. 3:20-cv-05949-VC, ECF No. 274 (N.D. Cal. Jan. 25, 2023) (approving fee award with Scott+Scott's rates ranging from $795 to $1,395 for partners or senior counsel, from $595 to $750 for associates, and roughly $395 for paralegals); *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *15 (N.D. Cal. Nov. 6, 2023) (approving fee award with Scott+Scott's rates ranging from $1,095 to $1,595 for partners or senior counsel, from $625 to $795 for associates, and $395 to $675 for paralegals and professional support staff (investigators)).

In securities class actions, materially higher multipliers in the range of 2 to 4 are common, and indeed courts in this District have noted that in contingent litigation "lodestar multipl[iers] of over 4 are routinely awarded by courts." *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (quoting *Telik*, 576 F. Supp. 2d at 590); *see also Lopez v. Fashion Nova*, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, [c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers") (alteration in original); *In re GSE Bonds*, 2020 WL 3250593, at *5  (multiplier of 4.09 is "within the range of what has [been] considered reasonable by courts"); *In re Bisys*, 2007 WL 2049726, at *3 (multiplier of 2.99 "falls well within the parameters set in this district and elsewhere"); *Wal-Mart Stores*, 396 F.3d at 123 (affirming 3.5 multiplier); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding multiplier of 5.65); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (awarding 4.7 multiplier); *Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172, 185(W.D.N.Y. 2011) (finding 5.3 multiplier "not atypical").

In sum, the requested 30% fee would result in an objectively modest lodestar multiplier of only 1.26 – a figure that is decidedly at the *low* end of the range of multipliers that are routinely awarded in contingent securities class action cases such as this.  Moreover, as discussed above, it is respectfully submitted that all of the other *Goldberger* factors also strongly support the requested 30% fee, especially where (as here) a 30% fee award is the median percentage awarded in securities cases that have settled for comparable amounts.[8]

---

[8]    For the reasons stated at §III.B *supra*, the Court should use the percentage-of-the-recovery method in determining its attorneys' fees award.  However, even if the Court were to apply a traditional and in-depth lodestar analysis, Plaintiffs' Counsel respectfully submit that their requested fee would still be fair and reasonable – particularly in light of the modest size of the 1.26x multiplier in a case where (it is respectfully submitted) the *Goldberger* factors would support application of an even larger multiplier.

## IV.    PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF THEIR LITIGATION EXPENSES SHOULD BE APPROVED

Plaintiffs' Counsel also respectfully request an award of $99,840.14 in expenses, which were reasonably incurred and necessary to prosecute the Actions.  Plaintiffs' Counsel have submitted declarations regarding these expenses, which are properly recovered by counsel.  *See* S+S Fee Decl. ¶5; RGRD Fee Decl. ¶5; *see also In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Plaintiffs' Counsel's expenses include the costs of their experts, Plaintiffs' share of mediation fees, online fact and legal research costs, and filing and transcript fees.  A complete breakdown by category of the expenses incurred is set forth in the accompanying declarations, and it is respectfully submitted that all of these expenses were reasonable necessary to the prosecution and settlement of the Actions and are of a type that are routinely reimbursed by courts in other securities cases. Plaintiffs' Counsel therefore respectfully request $99,840.14 for payment of these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.    EACH PLAINTIFF MERITS A MODEST $3,500 AWARD

Finally, each Plaintiff seeks an award of $3,500 for their time and expenses incurred in representing the Settlement Class.  The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party

serving on behalf of a class." 15 U.S.C. §77z-1(a)(4).  Many courts have approved reasonable awards to compensate class representatives for the time and effort they spent on behalf of the class. *See, e.g.*, *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding plaintiff $6,286); *Monster Worldwide*, 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 25, 2008) (awarding plaintiff $7,300); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding plaintiff $12,500); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding $16,800 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class").

Plaintiffs' Counsel also note that during the February 21, 2024 preliminary approval hearing in this matter, the Court indicated that it viewed a payment of $3500 to each Plaintiff as presumptively reasonable.  ECF No. 105 at 5:13-16.  The accompanying declarations of each Plaintiff also attest to their efforts on behalf of the Class. *See* Joint Decl., at Exs. 4-7.  Accordingly, these requested awards should also be approved,

## VI.    CONCLUSION

Based on the foregoing and the entire record herein, it is respectfully requested that the Court (a) award Plaintiffs' Counsel attorneys' fees of 30% of the Settlement Fund; (b) award them reimbursement of their litigation expenses in the amount of $99,840.14 (plus interest thereon at the same rate as has been earned by the Settlement Fund); and (c) award each Plaintiff $3,500 for their time and effort on behalf of the Class.

Dated:  June 3, 2024                                    Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

By: *William C. Fredericks*
DAVID R. SCOTT
WILLIAM C. FREDERICKS
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: 212/233-6444
Fax: 212/233-6334
david.scott@scott-scott.com
wfredericks@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

JACOB B. LIEBERMAN
156 South Main Street
Colchester, CT 06415
Tel: 860/537-5537
Fax: 860/537-4432
jlieberman@scott-scott.com

*Lead Counsel for Federal Plaintiffs and the
Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**

SAMUEL H. RUDMAN
MICHAEL G. CAPECI
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**

ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Additional Counsel for Plaintiffs*

- 19 -