UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
|  | x |  |
| In re OATLY GROUP AB SECURITIES LITIGATION | : | Consolidated Civil Action No. |
|  | : | 1:21-cv-06360-AKH |
|  | : |  |
|  | x |  |

**JOINT DECLARATION OF JACOB B. LIEBERMAN AND MICHAEL G. CAPECI IN SUPPORT OF (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO PLAINTIFFS PURSUANT TO 15 U.S.C. §77z-1(a)(4)**

**TABLE OF EXHIBITS**

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| Ex. 1 | Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, dated May 31, 2024. |
| Ex. 2 | Declaration of Daryl F. Scott on Behalf of Scott+Scott Attorneys at Law LLP in Support of Application for Award of Attorneys' Fees and Expenses |
| Ex. 3 | Declaration of Michael G. Capeci Filed on Behalf of Robbins Geller Rudman & Dowd LLP In Support of Application for Award of Attorney's Fees and Expenses |
| Ex. 4 | Declaration of Lead Plaintiff Mario Bello |
| Ex. 5 | Declaration of Plaintiff Mark D. Hayden |
| Ex. 6 | Declaration of Plaintiff Kai Jochims |
| Ex. 7 | Declaration of Plaintiff Bruce Hipple |
| Ex. 8 | Excerpts from Final Settlement Approval Hearing Transcript in *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40 (AKH) (S.D.N.Y. Jan. 23, 2019) |
| Ex. 9 | Excerpts from Final Settlement Approval Hearing Transcript in *Kaess v. Deutsche Bank AG*, No. 09-cv-01714 (GHW) (RWL) (S.D.N.Y. June 11, 2020) |

We, Jacob B. Lieberman and Michael G. Capeci, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1.      Jacob B. Lieberman is a partner in the law firm of Scott+Scott Attorneys at Law LLP ("Scott+Scott" or "Lead Counsel"),[1] and is duly admitted to practice law in New York State and before this Court.  Scott+Scott is the Lead Counsel in the Federal Action.  Michael G. Capeci is a partner in the law firm of Robbins Geller Rudman & Dowd LLP ("RGRD"), counsel for plaintiffs in the State Action ("State Counsel"), and is duly admitted to practice law in New York State and before this Court.  We have personal knowledge of the matters set forth herein with respect to our respective cases, and, if called upon, we could and would competently testify hereto.

2.      We submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  The Court preliminarily approved the Settlement by its Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, dated March 28, 2024 (the "Preliminary Approval Order").  ECF No. 109.  The Settlement will globally resolve all claims asserted in both Actions on behalf of the Settlement Class, which is defined as "(i) all Persons who purchased or acquired Oatly American Depositary Shares ('ADS') between May 20, 2021 and November 15, 2021, inclusive (the 'Class Period'), or otherwise pursuant to Oatly's Offering Documents, and were damaged thereby (the 'ADS Class'); and (ii) all Persons who purchased or acquired call options on Oatly ADS or sold put options on Oatly ADS during the Class Period, or

---

[1]   Unless otherwise indicated here, capitalized terms have the same definitions as in the Stipulation of Settlement (the "Stipulation").  ECF No. 103-1.

otherwise pursuant to Oatly's Offering Documents, and were damaged thereby (the 'Options Class,' and with the ADS Class, the 'Settlement Class')."[2] *Id.* at 2.

3.      This declaration is also submitted in support of approval of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4).

4.      For the reasons set forth below and in the accompanying memoranda,[3] Plaintiffs and Plaintiffs' Counsel respectfully submit that: (i) the terms of the Settlement are fair, reasonable and adequate in all respects and should be approved by the Court; (ii) the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and (iii) the request for attorneys' fees, expenses, and an award to Plaintiffs is supported by the facts and the law and should be granted in all respects.

## I.      THE RECOVERY ACHIEVED

5.      The Settlement provides a significant, all-cash recovery of nine million, two hundred fifty thousand dollars ($9,250,000.00) to resolve the Actions against Defendants, as

---

[2]   Excluded from the Settlement Class are: (i) Defendants; (ii) their respective successors and assigns; (iii) the past and current executive officers and directors of Oatly; (iv) Nativus Company Limited (and any of its subsidiaries and affiliates) and China Resources Verlinvest Health Investment Ltd. (and any of its subsidiaries and affiliates); (v) the Underwriter Defendants; (vi) the Immediate Family Members of the Individual Defendants and of Oatly's past and current executive officers and directors; (vii) the legal representatives, heirs, successors, and assigns of any excluded Person or entity; (viii) any entity in which any of the above excluded Persons have or had a controlling interest; and (ix) the legal representatives, heirs, successors-in-interest or assigns of any such excluded Person, provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded from the Settlement Class are any Persons who exclude themselves by submitting a timely request for exclusion in accordance with the requirements set forth in the Notice.

[3]   In conjunction with this Declaration, Plaintiffs and Plaintiffs' Counsel are also submitting (i) the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Memorandum") and (ii) the Memorandum of Law in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) (the "Fee Memorandum").

memorialized in the Stipulation.  The Settlement is the result of vigorously contested litigation and was reached only after an arm's-length mediation process conducted under the auspices of an experienced mediator, Judge Layn R. Phillips (Ret.) of Phillips ADR Enterprises.

6.       Before agreeing to the Settlement, Plaintiffs' Counsel diligently litigated the Actions by, among other things, (i) conducting a thorough investigation of potential claims against Defendants; (ii) reviewing and analyzing Oatly's filings with the United States Securities and Exchange Commission ("SEC"); (iii) identifying and reviewing copies of Oatly's press releases and statements made to investors on conference calls and at investor conferences; (iv) collecting and analyzing Wall Street analyst reports and other publicly available news media reports about Oatly and the industry within which it operated; (v) collecting and analyzing additional investigative materials, which included (*inter alia*) identifying and contacting former Oatly employees as well as personnel in certain local government offices regarding alleged problems that Oatly faced in connection with its efforts to expand its production facilities in the U.S.; and (vi) researching the applicable law with respect to the claims of Plaintiffs and the Settlement Class against Defendants and the potential defenses thereto.  In addition to the foregoing investigative work which was used to prepare and file detailed complaints in both Actions, Lead Counsel thoroughly briefed and opposed Defendants' motions to dismiss in the Federal Action, and thereafter joined with State Counsel in preparing a further amended and expanded Third Amended Complaint against Defendants in this Action.  Lead Counsel and State Counsel similarly joined forces in preparing for the mediation and negotiating the global settlement that is now before the Court – a process that involved (i) retaining and consulting with an experienced expert in the areas of  causation and damages; (ii) preparing (and exchanging with Defendants) detailed mediation statements and related submissions; (iii) responding to various pre-mediation questions posed by

the mediator; and (iv) participating in a full-day, in person mediation session in New York. Accordingly, by the time the Settlement was reached, Plaintiffs' Counsel had developed a solid understanding of the strengths and weaknesses of the Actions.

7.      Although the Parties were able to reach a successful settlement-in-principle at the in-person mediation session (subject to the resolution of certain non-monetary terms), Plaintiffs' Counsel spent additional time over the following months negotiating all of the final terms of the Settlement of Stipulation and related exhibits, and in working with their retained damages expert to develop the terms of a fair, reasonable and appropriate Plan of Allocation (which included having to deal with the additional complexities arising from the inclusion of purchasers of Oatly call options and sellers of Oatly put options in the global Settlement Class).

8.      As summarized below, Plaintiffs obtained this substantial $9.25 million recovery for the Settlement Class despite the significant risks inherent in complex securities class actions generally – and the significant case-specific risks in prosecuting the Actions here.  The extensive pre-complaint investigation, legal research, and the Parties' mediation and settlement negotiations informed Plaintiffs and Plaintiffs' Counsel that, while they believed that they had a meritorious bases for pursuing the Actions against Defendants, continuing to pursue litigation would necessarily involve significant risk.  Indeed, this Court's June 1, 2023 ruling on Defendants' Motion to Dismiss the Second Amended Complaint (the "MTD Order") highlighted a number of these risks, as that decision and order dismissed ***all*** claims asserted in that pleading, albeit with leave to replead most claims.

9.      In short – although Plaintiffs and their Counsel respectfully submit that they believed that their further amended complaint filed on August 11, 2023, was sufficient to cure the majority of defects that this Court identified in its 2023 MTD Order – there could be no guarantee

4

that the claims asserted would withstand Defendants' renewed motions to dismiss – let alone any assurance (assuming the case were not dismissed again) that discovery would yield sufficient evidence to prevail at summary judgment, at trial, and after any inevitable appeals. And discovery here would have posed its own special challenges and uncertainties, given that Oatly is a Swedish company, and the claims at issue involved matters related to Oatly's operations in not just the U.S., but also in numerous countries located in Europe and Asia.

10. Plaintiffs' Counsel therefore respectfully submit that the $9.25 million Settlement is a good result for the Settlement Class, and represents a meaningful "bird in the hand" when weighed against the risks of a much smaller recovery – or no recovery at all. Further, the fact that the Company is located in Sweden – and has also struggled financially since this Action was brought (its stock has traded down to roughly $1 per ADS as of late May, 2024) – further illustrates the difficulty Plaintiffs would likely encounter in ultimately enforcing a judgment, even if they were to roll the dice on trying to ultimately obtain a Plaintiff's verdict. As set forth in the accompanying Declarations of Lead Plaintiff Mario Bello and additional plaintiffs Kai Jochims, Mark D. Hayden, and Bruce Hipple in support of the Settlement and the Fee and Expense Application (the "Plaintiffs' Declarations," attached hereto as Exhibits 4-7), each of the Plaintiffs also supports the Settlement.

11. For all of the reasons set forth herein, including the favorable $9.25 million result obtained in the face of very significant litigation risks, we respectfully submit that the terms of Settlement (as well as the Plan of Allocation) are "fair, reasonable and adequate" in all respects and should be approved. Based on the work performed and results achieved, we also respectfully submit that Plaintiffs' Counsel work merits a 30% percentage-based attorneys' fee award (and

5

reimbursement of their expenses), and that each of the four Plaintiffs should be granted a relatively modest $3,500 award (for a total of $14,000) for their work on behalf of the Class.

## II.    SUMMARY OF THE CLAIMS ASSERTED

12.    Plaintiffs allege that Defendants violated the Securities Act of 1933 by making materially false and misleading statements, as well as failing to disclose material information that was required to be disclosed, in Oatly's Registration Statement for its IPO.  The Federal Plaintiffs additionally alleged that defendants Oatly, Toni Petersson, and Christian Hanke violated the Securities Exchange Act of 1934 by making materially false and misleading statements (including by failing to disclose material information that was required to be disclosed), in statements they made to investors in the months after the IPO.

13.    Specifically, Plaintiffs alleged that Defendants failed to disclose material information regarding (i) Oatly's pre-IPO decline in retail shelf space and market share; (ii) Oatly's pre-IPO production problems in the facilities that the Company used to manufacture oatmilk; and (iii) the significant pre-IPO increase in futures prices for Oatly's key raw ingredients for oatmilk and oat base.

14.    Plaintiffs allege that as a direct and proximate cause of Defendants' alleged material misrepresentations and omissions, Plaintiffs and the Settlement Class suffered damages in connection with their purchases of publicly traded Oatly American Depository Shares ("ADS" or "shares") sold in the IPO and throughout the Class Period, and/or their purchases of call options on Oatly ADS or sales of put options on Oatly ADS during the Class Period.

## III.    PROCEDURAL HISTORY OF THE ACTIONS

### A.    The Federal Action

15.    Plaintiff Kai Jochims commenced this Action by filing his complaint on July 26, 2021.  ECF No. 1.

16.     Two other Oatly investors filed additional complaints shortly thereafter. *See Bentley v. Oatly Group AB*, 21-cv-6485 (AKH) (S.D.N.Y.) and *Kostendt v. Oatly Group AB*, 21-cv-7904 (AKH) (S.D.N.Y.).

17.     Pursuant to the Court's Order dated October 26, 2021, plaintiff Jochims filed an amended complaint on December 1, 2021.  ECF Nos. 29, 31.

18.     On December 6, 2021, the Court consolidated the various federal complaints, and appointed Mario Bello as Lead Plaintiff and Scott+Scott as Lead Counsel.  ECF No. 37.

19.     Lead Counsel's pre-filing investigation included, among other things, reviewing and analyzing (i) Oatly's public filings with the SEC; (ii) press releases, news articles, and other public statements issued by or concerning Oatly, including copies of Oatly's quarterly earnings conference calls; (iii) research reports issued by financial analysts concerning the Company; and (iv) the applicable law governing the claims and potential defenses.  In addition, Plaintiffs' Counsel (v) identified, located and interviewed various confidential witnesses who were former Oatly employees, and (vi) contacted certain local government offices in the U.S. to obtain further information regarding certain alleged problems that Oatly was encountering in connection with its efforts to expand certain production facilities located in the U.S.

20.     Lead Counsel also retained consulting experts in accounting to analyze Oatly's financial statements and accounting practices to assist in developing certain of the claims that would ultimately be asserted against Defendants.

21.     On March 4, 2022, the Federal Plaintiffs filed their Consolidated Amended Complaint in the Federal Action (ECF No. 64) and, after seeking and receiving leave to file a further pleading, filed their Second Amended Complaint on August 17, 2022.  ECF No. 76.

22.     On October 3, 2022, Defendants filed their motion to dismiss the Second Amended Complaint, together with a supporting declaration and exhibits. ECF Nos. 77-79.

23.     On November 9, 2022, the Federal Plaintiffs filed their brief in opposition to Defendants' motion to dismiss the Second Amended Complaint. ECF No. 82. Defendants filed their reply brief in support of their motion on December 5, 2022. ECF No. 83.

24.     On May 31, 2023, the Court heard oral argument on Defendants' motion to dismiss the Second Amended Complaint.

25.     On June 1, 2023, the Court issued its MTD Order dismissing the Second Amended Complaint with leave to replead (except with respect to the Federal Plaintiffs' claim pursuant to Section 12(a)(2) of the Securities Act, which the Court dismissed with prejudice). ECF No. 87.

26.     Thereafter, Lead Counsel carefully reviewed the MTD Order, worked to identify all aspects of that Order where Lead Counsel believed that additional relevant facts could be pled or potentially developed after further investigative efforts. Lead Counsel also consulted with State Counsel (whose related State Action had by this time been stayed, *see infra*) to determine whether the interests of all Class members would be advanced by trying to work together, under the leadership of Lead Counsel, and combine their collective investigative efforts to produce a further improved complaint that would maximize the prospects of defeating the inevitable renewed efforts of Defendants to dismiss any further amended pleading. On August 11, 2023, the Federal Plaintiffs filed their Third Amended Complaint, which is the operative pleading in the Federal Action. ECF No. 91.

27.     Defendants' motion to dismiss the Third Amended Complaint was not yet due at the time the Parties mediated the Actions. ECF No. 92.

**B.** **The State Action**

28. On February 15, 2022, State Plaintiff, represented by State Counsel, filed a putative class action in the Supreme Court of the State of New York (the "State Action") against Defendants alleging violations of §§11 and 15 of the Securities Act on behalf of all purchasers of Oatly ADS pursuant and/or traceable to the Registration Statement issued in connection with the IPO. NYSCEF No. 1.

29. The State Action names the same Defendants as the Federal Action, plus two of Oatly's incoming directors at the time of the IPO, two of Oatly's controlling shareholders at the time of the IPO, and the underwriters of the IPO.

30. State Counsel's independent pre-filing investigation included, among other things, their own detailed review and analysis of (i) Oatly's public filings with the SEC; (ii) other publicly available information, including press releases, news articles, and other public statements issued by or concerning Oatly; (iii) analyst reports issued about Oatly; and (iv) the applicable law governing the claims and potential defenses.

31. On March 9, 2022, Defendants filed a motion to stay the State Action pursuant to CPLR §2201, citing the pendency of this Federal Action (and noting that all members of the putative class in the State Action were also included within the putative class alleged in this Federal Action). NYSCEF Nos. 7-15.

32. On April 29, 2022, State Plaintiff opposed Defendants' motion to stay the State Action, supported by twelve exhibits. NYSCEF Nos. 38-51.

33. On May 19, 2022, the State granted Court Defendants' motion to stay pursuant to CPLR §2201. NYSCEF No. 55.

**C.      The September 2023 Mediation and Negotiation of the Stipulation of Settlement**

34.     In the late summer of 2023, all Plaintiffs and Oatly agreed to explore a global resolution of the Actions and engaged the services of Judge Layn R. Phillips (Ret.), a nationally recognized mediator experienced in complex shareholder litigation.

35.     As noted above, in connection with the mediation, both Plaintiffs and defendant Oatly prepared detailed initial confidential mediation statements setting forth their respective positions on the issues of liability, causation, and damages.  Plaintiffs and Oatly provided these materials to Judge Phillips (and exchanged them with each other) on September 29, 2023.

36.     Two weeks later, Plaintiffs and Oatly also prepared and exchanged detailed reply mediation statements that responded to their adversaries' respective opening mediation statements.

37.     On October 26, 2023, Plaintiffs' Counsel and counsel for Oatly attended the in-person, all-day mediation in New York, NY, with Judge Phillips.

38.     Towards the end of the in-person mediation session, the Mediator made a "mediator's proposal" to settle all claims at issue for $9.25 million, subject to resolution of certain remaining non-monetary terms.

39.     Shortly thereafter, Plaintiffs and Oatly agreed to accept the Mediator's proposal for a $9.25 million proposed settlement as reflected in the terms of a negotiated Memorandum of Understanding, but continued to negotiate certain non-monetary settlement terms. Following further negotiations, the settling parties also decided to propose, and the Underwriter Defendants thereafter agreed, that the latter also become parties to the Stipulation of Settlement that is pending before the Court.

40.     As negotiations of the final terms of the Settlement and related exhibits thereto were concluding, Plaintiffs' Counsel also began to draft their motion for preliminary approval of the

settlement; for approval of the proposed forms of notice and proof-of-claim form; and for dissemination of notice.

41.    On February 16, 2024, Plaintiffs filed their motion for preliminary approval, together with relevant supporting papers (including the Stipulation).  ECF Nos. 101-103.

42.    At an initial hearing on preliminary approval on February 21, 2024 (*see* ECF No. 106), the Court requested further information regarding the proposed Plan of Allocation, and directed that the Parties make certain revisions to the proposed forms of Preliminary Approval Order and the Notice.  Plaintiffs, after further consulting with their retained damages expert, thereafter worked with their expert to prepare a declaration in further support of the proposed Plan of Allocation (particularly as it relates to those who transacted in Oatly options), and also prepared revised texts of the proposed Preliminary Approval Order and Notice.  These materials were filed with the Court on March 15, 2024.  Following a further hearing on March 27, 2024, the Court entered the Parties' revised agreed form of Preliminary Approval Order, and set July 17, 2014 as the date for the final Settlement Fairness Hearing.  ECF No. 109.

**IV.    NOTICE OF THE SETTLEMENT AND SETTLEMENT FAIRNESS HEARING HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN CONFORMITY WITH THE COURT'S PRELIMINARY APPROVAL ORDER**

43.    On April 18, 2024, in accordance with the Preliminary Approval Order, the Court-appointed claims administrator Gilardi & Co LLC ("Gilardi") (ECF No. 108) began mailing the Notice of Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release form ("Claim Form" and, together with the Notice, the "Notice Packet") to potential Settlement Class Members and nominees.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date (the "Mailing Declaration") ¶¶5-7, attached as Exhibit 1 hereto.

11

44.     On April 26, 2024, pursuant to the Preliminary Approval Order, Gilardi caused the Summary Notice to be published both in *The Wall Street Journal* and over the *Business Wire*. *Id.* at ¶11.

45.     On April 13, 2024, Gilardi activated a public access website for the Actions, (https://www.oatlysecuritiessettlement.com), publishing significant documents online, including the Notice Packet, Stipulation, and Complaint. *Id.* at ¶13.

46.     According to the Preliminary Approval Order, Oatly was required to post a link to the public access website established by Gilardi on April 27, 2024.  Plaintiffs' Counsel have confirmed that the following information has appeared on Oatly's website since April 27, 2024:

Investors who (i) purchased or acquired Oatly American Depositary Shares between May 20, 2021 and November 15, 2021, or otherwise pursuant to Oatly's IPO Offering Documents, or (ii) purchased or acquired call options or sold put options on Oatly American Depositary Shares during that period, may be eligible for compensation as part of a settlement to resolve securities class action lawsuits brought in the United States.  For more information, please see: https://www.oatlysecuritiessettlement.com/.

https://investors.oatly.com (last accessed June 2, 2024).

47.     As of May 31, 2024, a total of 32,927 Claim Packages have been mailed or emailed by Gilardi to potential Settlement Class Members and their nominees.  Mailing Declaration, at ¶10.  Additionally, two institutions have reported to Gilardi that they anticipated sending electronic copies of Claim Packages via e-mail to 97,745 potential Settlement Class Members.  *Id.*

48.     The Court-approved Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit a valid and timely Proof of Claim, pursuant to the proposed Plan of Allocation included in the Notice and subject to Court approval.  *See generally*, Mailing Declaration, at Ex. A.  Further, the Notice informed Settlement Class Members of the nature of the Actions, the reasons for settling the Actions, and the maximum attorneys' fees and expenses that would be sought.  *Id.* at Ex. A.  The

Notice further details: (i) the procedure and deadline for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; (ii) the procedure and deadline for requesting exclusion from the Settlement Class; and (iii) the date, time, and location of the Settlement Fairness Hearing. *Id.*

49.     Pursuant to the Preliminary Approval Order (and as explained in the Notice), Settlement Class Members who wish to opt out of the Settlement Class must do so no later than June 17, 2024. *Id*. at ¶14; *id.* at Ex A, p.2.  Any objections to the to the Settlement, the Plan of Allocation, or the Request for Attorneys' Fees and Expenses must be made no later than June 17, 2024.

50.     To date, neither Plaintiffs' Counsel nor Gilardi have received any requests for exclusion.  *Id.* at ¶15. Nor have any objections been filed or received.  If any objections are received, Plaintiffs' Counsel will respond to them in a reply brief, which is due on July 10, 2024.

## V.     THE SETTLEMENT IS A FAVORABLE RESULT FOR THE CLASS IN LIGHT OF THE RISKS OF CONTINUING LITIGATION

51.     Based upon Plaintiffs' Counsel's investigation, coupled with our review and understanding of the claims alleged in the Actions, we believe Plaintiffs' claims have merit. Nonetheless, Plaintiffs and their Counsel appreciate the significant risks of continued prosecution against Defendants, all of whom have denied any liability throughout.

52.     Among the most significant litigation risks informing Plaintiffs' decision to settle the Action were the risks of obtaining an unfavorable ruling on the forthcoming motion to dismiss the Third Amended Complaint in the Federal Action.  Moreover, even assuming that the re-pled claims would survive dismissal, there could be no assurance that discovery would yield sufficient evidence to prevail at summary judgment, at trial, and on appeal – nor any guarantee that a large

verdict for Plaintiffs could be collected on behalf of the Settlement Class, even if Plaintiffs'

succeeded on the merits at all stages of any further litigation.

### A.    Risks Related to Proving Defendants' Liability

53.    Defendants' motion to dismiss briefing on the Second Amended Complaint (and their arguments during the mediation) provided Plaintiffs with a preview of the arguments against liability and the affirmative defenses that Defendants would undoubtedly have raised again in moving to dismiss the Third Amended Complaint, and at summary judgment, and trial should their renewed motion to dismiss be unsuccessful.

54.    Likewise, Defendants were prepared to strongly dispute that they made any material misrepresentations or omissions as alleged in the Third Amended Complaint, arguing that the Registration Statement did not contain any false or misleading statements based on the facts that existed at the time, and that Defendants were under no duty to make additional disclosures about Oatly's manufacturing or production of oatmilk during the Settlement Class Period.

55.    Specifically, Defendants were prepared to assert that a number of the challenged statements in the Registration Statement were opinion statements, puffery, or both, which Defendants would maintain are non-actionable.  For example, Defendants argued that their statements about demand for Oatly's products and its market share were merely opinions and so not objectively verifiable and thus non-actionable.

56.    Defendants would also have argued that Plaintiffs' allegations in the Third Amended Complaint regarding risk disclosures and Defendants' duty to disclose were mischaracterized and do not amount to violations of the Securities Exchange Act or Securities Act. For example, Defendants argued that they had no duty to disclose rising futures prices for oats and rapeseed oil because the prices for these commodities were publicly available and, as such, investors would have understood that Oatly's future raw materials costs would likely increase.

14

Similarly, Defendants argued that Oatly had not suffered any material declines in retail shelf space or market share prior to the IPO, and that the risks of possible future declines were adequately disclosed in their public filings (citing, for example, the Offering Documents' discussion of Oatly's competitors and the specific risk of declining market share and loss of shelf space). Further, Defendants argued that any declines in market share and shelf space were limited to certain markets and Oatly products, and so were immaterial as a matter of law in light of Oatly's overall growth in topline revenues during the Class Period.

57.     Further, Defendants would have argued, with respect to the 1934 Act claims, that the Third Amended Complaint did not adequately allege scienter, and that its *scienter* allegations were not materially different from those in the Second Amended Complaint that the Court previously dismissed without prejudice. And even if adequately pled, *scienter* is almost always a challenge to prove at summary judgment and trial.

58.     In addition, Defendants also raised various causation-related defenses, which threatened to significantly reduce recoverable damages. Indeed, the Court already expressed skepticism about one of Plaintiffs' putative corrective disclosure dates as pled in the Second Amended Complaint, and Defendants would have predictably argued (and been able to adduce at least some evidence in discovery) that at least some further material portion of investor losses was attributable not to any misstatements or fraud, but to COVID and unrelated declines suffered by Oatly due to unrelated difficulties that Oatly faced in trying to compete in a highly competitive market for non-dairy substitutes for milk, ice cream and other food products.

59.     While Plaintiffs' Counsel believe that they had meritorious response to such arguments, as the Court's MTD Order made clear Defendants also had credible arguments to advance with respect to each of these liability issues.

15

    **B.      Risks Related to Discovery, Trial and Post-Judgment Matters**

60. Assuming that Plaintiffs made it past dismissal, this case would have entered into discovery. And here, discovery would almost certainly have been complicated by the fact that Oatly is a foreign-based company, whose production facilities were located on three continents. While obtaining discovery directly from Oatly under the Federal Rules might not have posed undue problems, obtaining relevant testimony from former employees and relevant third parties (such as Oatly customers) who are located overseas is invariably time-consuming and expensive – and often proves to be unsuccessful even after spending much time and money. Accordingly, this case involved significantly heightened risk, as compared to cases involving defendants with operations and personnel located exclusively in the United States.

61. For the same reasons, this case also involved substantial risks that Plaintiffs would be unable to prevail at summary judgment, and at trial – and even a Plaintiffs' verdict would have almost certainly been subject to further attacks on post-trial motions and appeals. The Settlement, by contrast, offers a meaningful $9.25 million recovery now, rather than the highly uncertain prospect of a possible larger judgment many years down the road.

62. Finally, it should be stressed that even if Plaintiffs were to "run the table" on liability, and also able to prevail on all relevant causation issues so as to obtain a nominally large damages verdict, this is far from a case where ultimate collectability might be assured. To the contrary, although Oatly ADSs traded into the high $20's shortly after its 2021 IPO, as of late May 2024 those same shares are trading at roughly $1.00. In short, while Plaintiffs cannot rule out the possibility that they might have ultimately succeeded in winning a tremendous judgment against

Oatly, there was also no assurance that there would have been assets to collect against following years of otherwise successful litigation.[4]

63.       In sum, the $9.25 million Settlement is a significant "bird in the hand" in a case involving plainly significant liability and collectability risks.

## VI.       THE PLAN OF ALLOCATION

64.       Pursuant to the Preliminary Approval Order (ECF No. 109 at ¶13), and as set forth in the Notice, all eligible Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund (*i.e.*, the Settlement Fund less (i) any Taxes and Tax Expenses, (ii) any Notice and Administration Costs, (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) must submit a valid Proof of Claim (together with all required supporting information and documentation) to Gilardi (the Court-approved Claims Administrator) so that it is postmarked on or received no later than July 25, 2024.

65.       If approved by the Court, the proposed Plan of Allocation set forth in the Notice and on the settlement website will govern how the Net Settlement Fund will be distributed among Authorized Claimants.[5]

66.       The Plan of Allocation is designed to equitably distribute the Settlement proceeds among Settlement Class Members who were allegedly injured by Defendants' alleged misrepresentations and omissions, and who submit valid Claim Forms that are approved for payment.  The Plan of Allocation provides for the calculation of a "Recognized Loss" for each

---

[4]     Although we do not believe there would have been collectability risks against the Underwriter Defendants, the Underwriter Defendants were not charged with any violations of the 1934 Act, and would have also asserted vigorous "due diligence" defenses – which are not available to Oatly – to the claims brought against them under the 1933 Act.

[5]     As defined in the Stipulation, an "Authorized Claimant" means a Settlement Class Member who or which submits a timely and valid Proof of Claim form to the Claims Administrator.  ECF No. 103-1 at 6.

properly documented purchase or acquisition of Oatly ADS, or purchase or acquisition of call options on Oatly ADS or sale of put options on Oatly ADS, during the Settlement Class Period. A claimant's total Recognized Loss will depend on, among other things, when their Oatly ADS and/or options on Oatly ADS were purchased and/or sold during the Settlement Class Period in relation to the disclosure dates alleged in the Actions, whether and how long the Oatly ADS and/or options on Oatly ADS were held or sold, and the value of the Oatly ADS and/or options on Oatly ADS when they were held or sold.

67.    The Recognized Loss formulas are tied to Plaintiffs' theories of liability and damages. *See generally* ECF No. 107-1.  In developing the Plan of Allocation, Plaintiffs' damages expert considered, consistent with Plaintiffs' damages theories under the Securities Act and the Securities Exchange Act, the amount of artificial inflation allegedly present in Oatly ADS and/or options on Oatly ADS throughout the Settlement Class Period that was purportedly caused by the alleged misstatements and/or omissions. *Id.*  An inflation table was created and is included in the Plan of Allocation and will be utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants. The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms. The Claims Administrator will then determine each eligible claimant's pro rata share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.   In sum, the proposed Plan of Allocation, developed in consultation with Plaintiffs' consulting expert, is designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants.

68.    No objections to the Plan of Allocation have been filed to date.

18

69.     Accordingly, Plaintiffs' Counsel respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

## VII.  PLAINTIFFS' COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

70.     The Preliminary Approval Order directed that Notice be disseminated to the Settlement Class, set the deadline for Settlement Class Members to submit requests for exclusion from the Settlement Class or objections to the Settlement, the Plan of Allocation and/or the Fee and Expense Application by June 17, 2024, and set a Settlement Fairness Hearing date of July 17, 2024.

71.     The Court authorized Plaintiffs' Counsel to retain Gilardi as the Claims Administrator in the Actions.  ECF No. 108.

72.     The Preliminary Approval Order required the mailing of the Court-approved Notice Packet to potential Settlement Class Members within 21 calendar days after the entry of the Preliminary Approval Order (*i.e.*, by April 18, 2024, the "Notice Date"), posting of the Notice, Claim Form, and Summary Notice on the website designated for the Actions, www.oatlysecuritiessettlement.com, on or before the Notice Date, and publishing of the Summary Notice once in the national edition of *The Wall Street Journal* and over the *Business Wire* no later than ten (10) calendar days after the Notice Date (*i.e.*, by April 26, 2024).

73.     A description of the terms of the Settlement and the proposed Plan of Allocation are set forth in the Notice, which also provides potential Settlement Class Members with, among other things, a description of their right to opt out of the Settlement Class or object to any aspect of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsel's request for an award of attorneys' fees and Expenses, and an award to Plaintiffs, and the manner and deadline for submitting a Proof of Claim in order to be eligible to receive a payment from the Settlement.  The

Notice informs Settlement Class Members of Plaintiffs' Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund (which amount includes interest), for payment of Expenses paid or incurred in connection with the prosecution and resolution of the Actions in an amount not to exceed $135,000.00, and for payments to the Plaintiffs pursuant to 15 U.S.C. §77z-1(a)(4) in connection with their representation of the Settlement Class in an amount not to exceed $14,000.00 in total.

74. As set forth in the Murray Declaration, starting on April 18, 2024, Gilardi disseminated copies of the Claim Packages to potential Settlement Class Members and nominees by first-class mail and electronically. Mailing Declaration, ¶¶5-9. As of May 31, 2024, a total of 32,927 Claim Packages have been mailed to potential Settlement Class Members and their nominees. *Id*. ¶10.

75. On April 26, 2024, in advance of the deadline set by the Preliminary Approval Order, Gilardi caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted once over the *Business Wire*. *Id.* ¶11.

76. The Court-ordered deadline for Settlement Class Members to file objections to the Settlement, the Plan of Allocation and/or the Fee and Expense Application is June 17, 2024. To date, no objections have been received. The deadline to request exclusion from the Class is also June 17, 2024. To date, Gilardi has received no requests for exclusion from the Class. *Id*. ¶15.

## VIII. PLAINTIFFS' COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS FAIR AND REASONABLE

77. Based on the time expended on behalf of the Settlement Class, the favorable result achieved in the face of considerable litigation risk, and the fully contingent nature of their representation, we also respectfully submit that Plaintiffs' Counsel's request for an award of attorneys' fees equal to 30% of the Settlement Fund is fair and reasonable, and should be approved.

78.     As further detailed in the accompanying Fee Memorandum, the requested 30% fee is reasonable under either the "percentage of the fund" or the less-commonly applied lodestar method.  Indeed, the requested 30% fee award is not only well within the range of percentage fees awarded in similarly-sized securities cases, but is squarely in the very *center* of that range based on published analysis of attorneys' fees in securities class actions.  *See, e.g.,* Edward Flores, et al., *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, NERA ECON. CONSULTING, at 29 fig.25 (Jan. 23, 2024), https://www.nera.com/ insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html. Moreover, the requested fee would also be reasonable under the lodestar methodology, given that the requested 30% fee (equal to slightly over $2.775 million) would equate to only a very modest 1.26 multiple on the "lodestar" value (of $2,197,595.50) of the more than 2,400 hours that Plaintiffs' Counsel have dedicated to the investigation, prosecution, and resolution of the claims against Defendants.  *See* the respective Declarations of Daryl F. Scott and Michael G. Capeci in Support of Plaintiffs' Fee and Expense Application (attached hereto as Exhibits 2-3) .

79.     True and correct copies of Plaintiffs' Counsel's time and lodestar reports are attached as Exhibits 2 and 3.  These reports were prepared from contemporaneous time records regularly prepared and maintained by Plaintiffs' Counsel.  Exs. 2-3.  The hourly rates for the attorneys and professional support staff included in the schedule are commensurate with the hourly rates submitted by our respective firms to Courts in connection with fee applications that we have submitted (and that Courts have approved) in other fully-contingent securities class action cases.

80.     The legal authorities supporting the requested fees and expenses are set forth in the accompanying Fee Memorandum. The primary factual bases for the requested fees and expenses under the Second Circuit's *Goldberger* factors are briefly summarized below.

21

**1.   The Considerable Time and Labor Expended by Lead Counsel**

81.    As detailed above, the Actions were settled only after Plaintiffs' Counsel had (a) conducted an extensive pre-filing investigation (which involved collecting and reviewing hundreds of SEC filings, press releases, analyst reports and other publicly available documents regarding Oatly and the industry within which it operates – as well as identifying, locating and interviewing former Oatly employees): (b) researching the applicable law; (c) preparing initial and consolidated amended complaints; (d) fully briefing and arguing, in the Federal Action, Defendants' motion to dismiss the Second Amended Complaint; (e) renewing their investigative efforts and preparing a further Third Amended Complaint in the Federal Action following this Court's dismissal (without prejudice) of the Second Amended Complaint; (f) engaging in a thorough mediation process (which included preparing detailed mediation statements, addressing mediator questions in subsequent phone calls, and participating in a full day mediation session); (g) negotiating and drafting a binding MOU; (h) negotiating and drafting the comprehensive Stipulation of Settlement and all related exhibits; (i) working with their expert to develop a fair and appropriate Plan of Allocation; and (j) securing preliminary approval.  As set forth in the Scott and Capeci Declarations, Plaintiffs' Counsel have devoted a combined total of over 2,400 hours of work on this matter through preliminary approval, with a combined total lodestar value of $2,197,595.50.[6]

---

[6]    These total hour and total lodestar figures include only time incurred through March 28, 2024, the date the Court filed the Preliminary Approval Order.  The additional time that Plaintiffs' Counsel have spent preparing the papers in support of final approval and their fee and expense application – as well as all the additional time that Plaintiffs' Counsel expect to incur in connection with supervising the administration of the settlement going forward – are all therefore ***excluded*** from Counsel's time and lodestar calculations.

## 2. Litigation Risks

82.     The Actions were undertaken by Plaintiffs' Counsel on a wholly contingent basis. From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the Actions would require.  In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Actions and that funds were available to compensate staff and pay the considerable expenses that cases such as this entail.  Indeed, because of the nature of a contingent practice where cases are predominantly complex and last several years, not only do contingent-litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation.  With a lag time of many years for these cases to typically conclude, the financial burden on contingent counsel is far greater than that on a firm which is paid on an ongoing basis.  Here, Plaintiffs' Counsel have received no compensation (or even any reimbursement of expenses) to date in prosecuting the Actions for the benefit of the Settlement Class.

83.     Plaintiffs' Counsel also bore the substantial risk that no recovery would be achieved.  *See generally* §V.A-B *supra* (discussion of specific litigation risks associated with this case).  In this regard, we further note that there have been many hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by plaintiffs' counsel produced no recovery, and hence no attorneys' fees whatsoever.  Indeed, the Second Amended Complaint in the Federal Action was dismissed (albeit with leave to replead) by the Court, and there were no assurances that the Court would not dismiss the Third Amended Complaint (and this time with prejudice).

84.    Given these general and specific litigation risks, Plaintiffs' Counsel's hard work and success in achieving such a favorable result in the face of such challenges and risks merits the requested 30% fee.

### 3.    Quality of Representation

85.    Plaintiffs' Counsel are highly experienced in prosecuting complex litigation, particularly securities class actions, and worked diligently and efficiently in prosecuting the Actions. As demonstrated by Plaintiffs' Counsel's firm resumes, attached to Exhibits 2-3, Plaintiffs' Counsel are among the most experienced and skilled firms in the securities litigation field, and have long and successful track records in securities cases throughout the country.

86.    Moreover, it should be noted that the results achieved were solely due to counsel's skill and hard work.  For example, this was decidedly not a case where Plaintiffs' Counsel were able to "piggyback" on the work of a prior government investigation – rather, counsel had to build their case from the ground up.

### 4.    Awards in Similar Cases

87.    The Settlement of $9.25 million resulted from Plaintiffs' Counsel's litigation efforts and contentious settlement negotiations, as detailed herein. The Settlement is a favorable recovery to the Settlement Class, especially in light of the difficulty of obtaining discovery and collecting settlement funds from a foreign defendant.

88.    As detailed in the Fee Memorandum, the requested fee award is also consistent with the attorney's fees awarded for other class action settlements that were comparable in size in this Circuit.

89.    Further, as a result of this Settlement, Settlement Class Members potentially will be eligible to benefit and receive some compensation for their losses and avoid the substantial risk of recovering nothing in the absence of this Settlement.

24

### 5. The Reaction of the Settlement Class

90.     As noted above, the deadline set by the Court for Settlement Class Members to object to the attorneys' fees and expenses has not yet passed; however, to date, Plaintiffs' Counsel are not aware of any objections.  If any objections are timely received, Plaintiffs' Counsel will address them in their reply papers to be filed with the Court on July 10, 2024.

### IX.   PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF THEIR LITIGATION EXPENSES IS FAIR AND REASONABLE

91.     Plaintiffs' Counsel also seek reimbursement of their reasonable litigation expenses in the amount of $99,849.14 (plus interest on such amount at the same rate as has been earned by the Settlement Fund).  The expenses for which reimbursement is sought are reflected in the books and records of Plaintiffs' Counsel which are maintained in the ordinary course of business, and prepared from expense vouchers, invoices, checking account ledgers and similar documents that are accurate records of the expenses incurred. *See* Exs. 2-3.

92.     All of the expenses for which reimbursement is sought were reasonably necessary to the prosecution and resolution of the Actions, and are all of a type that counsel typically incur in securities litigation of this type (and that, in our experience, courts award in class action cases). The largest single expense items for which reimbursement is sought are summarized below:

a.   *Expert Fees:* Plaintiffs' Counsel retained an experienced forensic economics and damages expert to analyze and advise on issues of causation and damages, who also worked with Plaintiffs' Counsel to assist in: (i) developing the claims asserted; (ii) assessing the strengths and weaknesses of Plaintiffs' claims and Defendants' causation and damages arguments; (iii) estimating class-wide damages for settlement negotiation purposes; and (iv) developing the Plan of Allocation.  Lead Counsel also retained an experienced accounting firm to review Oatly's financial

statements and accounting practices in order to analyze Plaintiffs' potential claims. These expert fees totaled $40,501.31.

b. ***Mediation Fees:*** Plaintiffs' Counsel were responsible for one-half of the mediator's fees, which included the mediator's review of the Parties' mediation submissions; a pre-mediation one-on-one question session; his conducting of the full-day mediation session in New York; and related telephonic and written communications following the mediation. These mediation fees totaled $37,500.

c. ***Computerized Legal Research:*** Plaintiffs' Counsel utilized digital research services (such as Westlaw) in connection with their legal and factual research, which was used both in the course of developing the facts underlying the claims asserted and in researching relevant law relevant to the motions brought in the respective Actions during the last two years. These charges total $9,092.66.

93. The remaining expenses relate primarily to filing and process fees ($6,932.28), travel to attend Court ($2,853.62), and fees from publication of PSLRA notice ($1,800).

94. The Notice advises potential Settlement Class Members that Plaintiffs' Counsel would seek an award of expenses not to exceed $135,000 – which is more than what Plaintiffs' Counsel are now actually seeking. As noted above, there have also been no objections to the expense reimbursement request.

## X.  THE FOUR INDIVIDUAL PLAINTIFFS' REQUEST FOR AN AWARD FOR THEIR WORK ON BEHALF OF THE CLASS

95. The Notice also informed Settlement Class Members that Plaintiffs would apply for "no more than $14,000 in the aggregate for their time and expenses directly relating to their representation of the Settlement Class." Mailing Declaration, at Ex. A at 2.

26

96.    As set forth in their respective Declarations, each Plaintiff (Mario Bello, Kai Jochims, Mark D. Hayden, and Bruce Hipple) spent time reviewing pleadings, reading other litigation and mediation materials, and communicating with their counsel.  *See generally* Exs. 4-7.  We can also attest to our respective clients' willingness to step forward here to participate in the relevant Actions for the benefit of the Class.

97.    Each of the four Plaintiffs requests an award of $3,500 for the time and effort they spent on this matter.  For the reasons set forth in the accompanying Fee Brief, we respectfully submit that the requested $3,500 awards ($14,000 in the aggregate) are modest, and fully merited based on Plaintiffs work here for the benefit of the Settlement Class.  We also note that no objections to these $3,500 award requests have been submitted.

## XI.    CONCLUSION

98.    For all the reasons detailed above, we respectfully request that the Court (a) approve the Stipulation and Plan of Allocation, and enter the Parties' agreed form of Final Judgment and Dismissal; (b) approve in full Plaintiffs' Counsel's request for attorneys' fees and expenses; and (c) award each of the four Plaintiffs $3,500 pursuant to 15 U.S.C. §77z-1(a)(4).

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed June 3, 2024 in Colchester, CT        /s/ Jacob B. Lieberman
                                               Jacob B. Lieberman

Executed June 3, 2024 in Melville, NY          /s/ Michael G. Capeci
                                               Michael G. Capeci

27